**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES CODY, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-2707 |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL AND REQUEST FOR SANCTIONS**

Plaintiffs file this Memorandum in support of their Motion for Sanctions and to Compel.

**INTRODUCTION**

Plaintiffs filed this lawsuit in November 2017 alleging inhumane conditions at the City's jail facility, the Medium Security Institution, commonly known as "The Workhouse." Nearly all of the people incarcerated at the Workhouse are awaiting trial. Most inmates cannot leave the Workhouse solely because they cannot afford bond. The essential points of Plaintiffs' motion can be summarized as follows:

- After Plaintiffs served their first requests for documents and interrogatories upon the City, the City missed deadlines and asked for multiple extensions. Plaintiffs cooperated in good faith and extended the deadlines.

- Plaintiffs' claims against the City of St. Louis are based on documentation that is almost entirely in the City's control or possession.

- The City has missed numerous other deadlines regarding discovery.

- In May or early June, 2018, after Plaintiffs served the City with requests to produce, the City moved more than 400 boxes of purportedly once-organized jail records into a shipping container on the Workhouse parking lot.

- The records are now in shambles. The City has admitted in deposition that the Custodian of Records was instructed to move the records by the City's Corrections Commissioner, that it chose to move its records shortly after

receiving Plaintiffs first set of written discovery, and that it "lost intellectual control" of its own records.

• On July 20, 2018, when Plaintiffs sought to meet and confer about the City's continued failure to produce documents and disclose witnesses, the City told Plaintiffs that the documents sought by Plaintiffs and information pertaining to the identities of witnesses were all somewhere in an enormous shipping container baking in the hot sun on the parking lot in front of the Workhouse.

• Instead of producing records as stored in the ordinary course of business and instead of providing documents categorized in response to Plaintiffs' specific requests for production, the City told Plaintiffs' counsel that they would need to clamber through twelve tons of paper haphazardly stored in the hot shipping container on the Workhouse parking lot.

• The City refused to permit Plaintiffs' expert witness Eldon Vail from performing a complete on-site inspection of the Workhouse, by denying him access to certain areas of the facility, described as the locations with the worst conditions by individuals in the jail.

Because of Defendant's discovery misconduct, the discovery schedule had to be extended; Plaintiffs cannot develop any meaningfully plan to depose the City's witnesses (whether known or unknown); Plaintiffs' experts do not have the proper documents to prepare their reports before the rapidly-approaching Oct. 25 designation deadline; Plaintiffs still do not have responsive documents to most of their discovery requests; and it is impossible for Plaintiffs to meaningfully prepare any motion for class certification.

Plaintiffs have worked diligently to move the case forward in a timely way in order to respect the urgency of the issues before this court, and Defendants have failed to meaningfully comply with discovery. For these reasons, Plaintiffs seek the relief set forth in their *Motion for Sanctions and to Compel.*

## FACTUAL BACKGROUND

1.      Plaintiffs filed this lawsuit on November 13, 2017, and attended a Scheduling Conference on February 28, 2018, where this Court ordered that all parties take discovery

deadlines seriously and that counsel for each party diligently ascertain every possible source and custodian of information relevant to the claims and disclose them.

2.      Plaintiffs served their Initial Disclosures to Defendant on March 30, 2018, the deadline for initial disclosures in the Case Management Order issued by this court, via electronic mail to their counsel of record. Defendant confirmed receipt one week later, on April 6, and served its Initial Disclosures to Plaintiffs via electronic mail to their counsel of record. *See* Pl. Initial Disclosures, Mar. 30, 2018, attached as Ex. E. The City's written disclosures listed only five witnesses, and was accompanied by 4000-plus pages of disorganized, un-indexed documents. Defendant's production was nearly identical to documents produced to another Plaintiff in a suit filed months earlier against the City regarding different issues at the Workhouse. Plaintiffs immediately identified the deficiencies in Defendant's production.

3.      Plaintiffs served their First Requests for Production, First Interrogatories, and Request for Property Inspection to Defendant on May 2, 2018. *See* Pl. First RFPs; Pl. First ROGs; Pl. Req. for Inspection, May 2, 2018, attached as Ex. A, B, C.

4.      Plaintiffs served their Second Requests for Production to Defendant on May 29. *See* Pl. Second RFP, May 29, 2018, attached as Ex. G.

5.      After Defendant missed the June 1 deadline to respond to Plaintiffs' First Requests for Production, First Interrogatories, and Request for Property Inspection without requesting any deadline extension, Plaintiffs' counsel sent Defendant's counsel a letter on June 4 addressing Defendant's missed deadlines. *See* Ltr. Regarding Outstanding Discovery Owed, June 4, 2018, attached as Ex. H.

6.      When Defendant's counsel called in response to the letter, Plaintiffs agreed to extend Defendant's deadline to serve objections to Plaintiffs' First Requests for Production and

First Interrogatories to June 22, and to extend Defendant's deadline to produce documents and provide answers and responses to Plaintiffs' First Requests for Production and First Interrogatories to July 2. *See* Ltr. Extending RFP Response, June 4, 2018, attached as Ex. I.

7.      Plaintiffs served their Third Requests for Production to Defendant on June 11. *See* Pl. Third RFP, June 11, 2018, attached as Ex. J.

8.      On June 18, 2018, out of concern for Defendant's lack of forthrightness related to the existence and location of records, Plaintiffs' counsel wrote to Defendant's counsel with a proposed Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) for a designated custodian of records regarding the City of St. Louis Division of Corrections' record retention policies and information storage, topics which Defendant should have addressed in its Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(A)(ii). Plaintiffs requested that Defendant provide their availability to produce a corporate designee, offering multiple times to discuss the scheduling of the deposition. Defendant's counsel responded stating they had not reviewed the Notice and that they would reply "within the next week with dates and/or objections." *See* Emails Scheduling Deposition, June 18, 2018, attached as Ex. K. Defendant failed to send any reply by June 27.

9.      On June 22, Defendant responded to Plaintiffs' First Requests for Production and First Interrogatories by objecting to all 22 of Plaintiffs' Interrogatories and all but 4 of Plaintiffs' Requests for Production. *See* Opp. Response to First RFP, June 22, 2018, attached as Ex. L.

10.     On the June 28 deadline to respond to Plaintiffs' Second Requests for Production, Defendant requested an extension of time to respond and then filed a motion before Plaintiffs' counsel could reply, requesting that the Court extend the deadline to respond until July 31, once again delaying the discovery process. *See* Emails Consenting to Extension, June 29, 2018, attached as Ex. M.

11.    Despite Plaintiffs' good faith agreement to extend Defendant's deadline to respond to Plaintiffs' First Requests for Production and First Interrogatories, Defendant did not respond by July 2.

12.    On July 3, counsel for the parties conferred over the phone to discuss Plaintiffs' Notice of Deposition and Defendant's failure to supplement its responses to Plaintiffs' First Requests for Production and First Interrogatories. Defendant's counsel stated that they had obtained several boxes of inmate complaints and grievances but that they had not yet reviewed, copied, or scanned them. Plaintiffs' counsel agreed to a *third* extension for Defendant to supplement responses to Plaintiffs' First Requests for Production and Interrogatories by July 18.

13.    During the same July 3 call, Defendant also expressed confusion about Plaintiffs' proposed Notice of Deposition and requested Plaintiffs amend their Notice. The parties agreed that Plaintiffs would send an amended Notice of Deposition listing the categories of information that Plaintiffs believe to be in Defendant's possession, despite Defendant's own pre-existing obligation to provide such information at the outset under Fed. R. Civ. P. 26(a)(1)(A)(ii).

14.    On July 9, Plaintiffs' counsel wrote to Defendant's counsel to confirm the extended deadline for Defendants' supplements to its responses to Plaintiffs' First Requests for Production and to request a time to confer regarding Defendant's objections to Plaintiffs' First Requests for Production and First Interrogatories. Defendant's counsel did not reply. *See* Pl. Email confirming meet and confer, July 9, 2018, attached as Ex. BB.

15.    One day later, Plaintiffs' counsel again wrote to Defendant's counsel to follow up on the July 3 meet and confer and to request Defendant's consent to a 60-day extension to the deadline to Disclose Expert Witnesses given the extensive delays in the discovery process.

Again, Defendant's counsel did not reply. *See* Pl. Email confirming meet and confer, July 10, 2018, attached as Ex. O.

16.     On July 11, Defendant's counsel served objections to every one of Plaintiffs' Third Requests for Production. *See* Opp. Objections to 3rd RFPs, attached as Ex. T.

17.     On July 13, Plaintiffs' counsel sent a third email to Defendant's counsel in a good faith effort to: (1) schedule a time to confer regarding Defendant's objections to Plaintiffs' First Interrogatories and First and Third Requests for Production, (2) obtain Defendant's consent to extend the deadline to Disclose Expert Witnesses, and (3) provide Defendant with the opportunity to supplement its Initial Disclosures by July 20. Defendant's counsel responded, agreeing to confer on July 20. *See* Pl. Email confirming meet and confer, July 13, 2018, attached as Ex. P.

18.     Counsel for the parties continued to correspond via electronic mail over the next few days but Defendant's counsel did not acknowledge Plaintiff's request for supplementing Defendant's Initial Disclosures and asked Plaintiffs' counsel to propose dates for the extension of the expert witness deadline, even though Plaintiffs' counsel had already done so in their July 10 email. *See* Pl. Email confirming meet and confer, July 10, 2018, attached as Ex. O.

19.     Counsel then met and conferred on July 20 by phone to resolve Defendant's objections to Plaintiffs' First and Third Requests for Production. During the meeting, Defendant's counsel revealed the existence of a shipping container on the Workhouse parking containing years' worth of paper records from the Workhouse. Defendant's counsel indicated that it did not know what records were in the container or whether they were all labeled, and stated that most of the responsive documents and information was likely contained therein.

20.     When Plaintiffs' counsel asked whether it would be possible to move the shipping container to a different location to facilitate the review process, Defendant's counsel responded that doing so would cause boxes in the container to fall over during travel and cause further disorganization. Defendant's counsel instead suggested that Plaintiffs' counsel set up a second shipping container in the parking lot and conduct all document review there.

21.     On July 23, Plaintiffs' counsel wrote to Defendant's counsel to request a time to view the shipping container.

22.     On the morning of July 24, Plaintiffs' counsel again wrote to Defendant's counsel to confirm, as agreed during the July 20 meet and confer, that: (1) by August 10, Defendant would supplement its responses to Plaintiffs' First and Third Requests for Production; (2) also by August 10, Defendant would produce a number of documents for attorneys' eyes only; (3) by August 3, Defendant would produce additional documents that were not included in Defendant's Initial Disclosures; and (4) by July 27, Defendant would produce in electronic format all inmate complaints that had been scanned or digitized to date. Plaintiffs' counsel also asked to begin reviewing inmate complaints, asked for Defendant's counsel to share the names of custodians of records with information about documents relevant to the case, and again asked to do a preliminary viewing of the shipping container. Defendant did not respond to this email. *See* Email about Inv'n of Shipping Container, July 24, 2018, attached as Ex. FF.

23.     In the late afternoon of July 24, Defendant's counsel responded to Plaintiffs' July 23 email and agreed to Plaintiffs' request to view the shipping container.

24.     On July 25, Plaintiffs' counsel visited the Workhouse and viewed the shipping container, which contained over 400 boxes of records from both the City Justice Center and the Workhouse, an estimated 1.2 million pages of documents.

25.     Counsel for Plaintiffs took photos of the chaos inside the shipping container, attached hereto and below. *See* Photo of Shipping Container, Aug. 2018, attached as Ex. W; Photo of Inside of Shipping Container, Aug. 2018, attached as Ex. V.

**Image of the Outside of the Shipping Container, taken by Arch City Defenders Attorneys on August 20, 2018 (Exhibit V)**



**Image From Inside the Shipping Container, taken by Arch City Defenders Attorneys on August 20, 2018 (Exhibit W).**



26.     Most, but not all, of the boxes were labeled with a general description of the category and date range of their contents and the facility from which they originated. *See* Photos of Shipping Container, Aug. 2018, attached as Ex. GG and Ex. HH. They were not stacked in any order and there was no index or organizational system to clarify where any certain box might be located within the container. Only the box atop of each stack was easily openable, and of the three or four rows of boxes piled at the rear, only the boxes on top of the front row were accessible. *See* Photo of Shipping Container, Aug. 2018, attached as Ex. W. Some boxes were cardboard, some were metal and padlocked, and six were plastic. Those six plastic boxes did not have any label indicating their contents, date of creation, or place of origin, but were labeled in

permanent marker with the phrase "Moldy Records." *See* Photos of Moldy Records in Shipping Container, attached as Ex. II and Ex. JJ.

**Image of the Moldy Records from Inside the Shipping Container, taken by Arch City Defenders Attorneys on August 20, 2018 (Exhibit II).**



27.     Upon opening one plastic box labeled "Moldy Records," Plaintiffs' counsel saw a black trash bag and a piece of paper stating, "BLACK MOLD PRESENT." Defendant's counsel informed Plaintiffs' counsel that they had been instructed not to open any of the boxes labeled "Moldy Records" because they contained bio-hazardous material.

28.     Defendant did not produce in electronic format all inmate complaints that had been scanned or digitized to date despite the agreed-upon deadline of July 27. Thus, on that day, Plaintiffs' counsel and several interns visited Defendant's counsel's office and reviewed and scanned inmate complaints from two full boxes containing thousands of pages documents, one page at a time. Some portions were organized chronologically, others by inmate name, but there was no way to determine what kinds of complaints were—and were *not*—included, and no index was provided. In fact, Plaintiffs later learned that one box of complaints had not been produced to Plaintiffs for scanning.

29.     On July 31, the extended deadline to respond to Plaintiffs' Second Requests for

Production, Defendant replied with objections to every request and produced limited additional

documents "subject to and without waiving" their objections. *See* Opp. Response to 3rd RFP,

attached as Ex. T.

**<u>Defendant's Record Custodian Jamie Lambing Testifies about the Shipping Container</u>**

30.     Plaintiffs deposed the Workhouse's Custodian of Records, Jamie Lambing,

pursuant to Fed. R. Civ. P. 30(b)(6) on August 14, 2018. Defendant designated Ms. Lambing to

testify about the manner in which Defendant maintains many of its records regarding the

Workhouse. *See* Lambing Deposition, 037:22-0:38:02, Aug. 14, 2018, attached as Ex. KK.

31.     Ms. Lambing testified that prior to June 2018, Defendant had "tons" of records in

its possession stored in a section of jail cells at the Criminal Justice Center (on Tucker Ave.)

called "5 Charlie Pod."[1] In June 2018, after Plaintiffs served Defendant with discovery in this

case, Defendant decided to move the 12 to 14 tons of records to a shipping container located

outside of the Workhouse.[2] Ms. Lambing testified that Defendant could not keep the records in

order during the move.[3]

32.     Defendant admits it "lost intellectual control" of its records when they were

moved to the shipping container.[4] This means Defendant no longer has a way to efficiently find

its records.[5]

---

[1] Ex. KK. Lambing Dep. 020:19-021:09.
[2] *Id.*, Lambing Dep. 037:22-038:02.
[3] *Id.*, Lambing Dep. 020:19-021:09.
[4] *Id.*, Lambing Dep. 018:13-018:17.
[5] *Id.*, Lambing Dep. 019:23-020:17; This court should note the recent decision out of the Fifth Circuit chastising Harris County for failure to properly keep its records during the duration of a constitutional suit around bail conditions. *See* O'Donnell v. Harris County, 4:16-cv-01414.

33.     The paperwork that the City is in such an incredibly sad state of entropy that the City's Custodian of Records testified that it would "easily" take "two or three months" to simply separate Workhouse records from the other records. "It would take a very long time."[6]

34.     Ms. Lambing testified that not every box in that shipping container had an index: "Some did, some didn't, and some were internal, some were external. Some were in the boxes, some were outside the box"[7] and admitted that a shipping container is not an ideal place to store jail records.[8]  Some of the boxes of records have a "crude inventory."[9] If not indexed, one had to look in the box to see what is inside.[10] If there is no index inside of a box, a person would need to look at each piece of paper in the box.[11] Defendant is unable to tell what records in some boxes of records are from its Criminal Justice Center (on Tucker) versus the MSI ("The Workhouse") without looking inside boxes.[12] Some of the records are maintained in plastic tubs with a handwritten note "moldy records." The records inside are covered with black mold.

35.     Defendant does not know what types of its records were not moved into the shipping container (other than complaints by inmates).[13]

36.     Since moving documents to the shipping container, the workers at MSI currently hold onto their records or send them to Maintenance, which does not really have any place to store their records.[14] Ms. Lambing testified that many files are "being placed in a Maintenance

---

[6] *Id.*, Lambing Dep. 062:25-063:23.
[7] *Id.*, Lambing Dep. 062:25-063:23.
[8] *Id.*, Lambing Dep. 062:25-063:23
[9] *Id.*, Lambing Dep. 032:05-033:11.
[10] *Id.*, Lambing Dep. 024:10-024:25.
[11] *Id.*, Lambing Dep. 024:10-024:25.
[12] *Id.*, Lambing Dep. 031:02-031:14.
[13] *Id.*, Lambing Dep. 053:10-053:19.
[14] *Id.*, Lambing Dep. 014:21-016:24.

Office in a corner or in a pile" where "[t]hey put them—they stack them in a corner."[15] They

have been looking for a place to store MSI records since June 2018.[16] Defendant is "spotty on

[where logs of environmental or safety rounds are]" because Defendant is "busy."[17]

**Expert Inspection of the Workhouse Premises**

37.     Defendant also impeded a proper inspection of the jail that took place on August

28, 2018. Plaintiff served initial notice of an inspection on May 2, 2018 and an Amended Notice

of Inspection. *See* Amended NOD of Jamie Lambing 30(b)(6) to City of St Louis, July 30, 2018,

attached as Ex. LL. During the inspection itself, Defendant imposed restrictions on the visit,

restricting entry into many locations of the jail necessary for the expert's report, including some

of the dormitory Housing Units and Pods 1 and 2. *See* Vail Aff. ¶¶ 7, attached as Ex. S.

Plaintiffs' expert was only allowed to view Pods 1 and 2 from outside the Pods, "which meant

that [they] could not inspect key parts of those cells and living conditions, including the toilets,

showers, and sinks which detained individuals have specifically complained about." Vail Aff. ¶

7, Ex. S. In addition, Plaintiffs' expert was not allowed to speak with incarcerated individuals,

despite the fact that in his dozens of prison and jail inspections around the country he has always

been allowed to speak with individuals during inspections. Vail Aff. ¶ 8, Ex. S. Mr. Vail

concluded that "the limitations placed by Defendant's Counsel in this inspection impeded a full

and proper inspection of the jail." Vail Aff. ¶ 10, Ex. S.

38.     The current deadline for Plaintiffs' expert reports is October 24, 2018. *See*

Amended CMO, ECF No. 32.

---

[15] *Id.*, Lambing Dep. 064:06-064:16.
[16] *Id.*, Lambing Dep. 014:21-016:24.
[17] *Id.*, Lambing Dep. 055:14-055:16; 056:24-057:09.

**Defendant's Discovery Failures**

39.    Defendant failed to adequately answer Plaintiff's Interrogatories, objecting in vague terms. Most significantly, Defendant failed to specifically provide: (1) the names of employees at MSI; (2) the Log books of visitors to MSI; and (3) Names of third-party contractors. *See* Opp. Response to Pl. First ROG, attached as Ex. L.

40.    To date, Defendant has not supplemented its deficient Initial Disclosures with any additional named witnesses or additional documents, other than by providing Plaintiffs access to a literal truckload of over 400 unorganized and un-indexed boxes.

41.    Defendant possesses a number of relevant documents and committed to produce them during the July 20, 2018 meet and confer call, but has failed or refused to produce them to this date, including: relevant corrections policies, maintenance orders and inspections, schematics of the jail, unit inspections, documentation related to the kitchen, temperature logs, environmental and safety round reports, inmate complaints, investigations into records related to deaths at the Workhouse, incident reports and internal affairs documents, and all Electronically Stored Information (E.S.I.).

42.    Defendants provided a few pages of some categories of documents in its Initial Disclosures but failed to provide all responsive documents similar to those from the designated period. The deficient disclosures include the following evidence of incomplete production:

   a.    **CITY000001-000051: Selected Division of Corrections Policies** does not include all of the Division of Corrections Policies relevant to Plaintiffs' Claims.

   b.    **CITY000052-001338: MSI Maintenance Orders and related documentation** does not include any maintenance orders earlier than March 1, 2016, despite the fact that maintenance done at the Medium Security Institution after 2012 and prior to that date is relevant to Plaintiffs' claims.

   c.    **CITY003047-003168: Unit Inspections from 2017 and 2018** contains records of weekly inspections only from March 16, 2017 to February 28, 2018, not the full

calendar years. Moreover, unit inspections from any other calendar year after 2012 are absent but are relevant to Plaintiffs' claims

    d.  **<u>CITY003262-003312: Memoranda and documentation related to cleanliness and maintenance inspections</u>** contains records of only two inspections, one on November 12, 2015, and one on December 21, 2015. There are no records of any other cleanliness and maintenance inspections. Assuming that such inspections are done periodically at the Medium Security Institution, any records thereof conducted after 2012 are relevant to Plaintiffs' claims.

    e.  **<u>CITY003911-003928: MSI Bakery Permit and documentation related to bakery</u>** contains records relating to the establishment of the foodservice establishment at the Medium Security Institution in 2015, including the health permits required to operate such an establishment and a sample of menus for four weeks' worth of meals for all detainees. There is no reference to a bakery or information regarding the food services provided to detainees at the Medium Security Institution after 2012 and before 2015, though such information is relevant to Plaintiffs' claims.

    f.  **<u>CITY003929-003950: MSI Temperature Logs, produced electronically in 22 separate Microsoft Excel files, each with a separate bates number</u>** contains select temperature logs for dates in 2016 and 2017. However, almost none of the temperature logs provided by Defendant contain complete readings for both floors of the Medium Security Institution and two of the temperature logs, recorded in August 2017, provide only hallway readings and no readings for the living areas, kitchen, or other parts of the facility. Moreover, while Defendant has provided logs for temperatures from May 21 to August 12, 2017, the only temperature logs provided for 2016 are for July 20 through 30. Complete temperature logs for May, June, July, and August of 2016 are relevant to Plaintiffs' claims.

    g.  Environmental and safety round reports.

    h.  Reports by third-parties related to conditions at M.S.I.

43.    Defendant has also failed or refused to disclose or produce other clearly relevant documents and ESI in its possession from the designated period, including:

    a.  Use of force reports and any videos related to the use of force;

    b.  Security check logs;

    c.  Recreation schedules and all records showing when individuals had access to recreation;

    d.  Minutes from Inmate Council meetings;

    e.  Any investigation, video or other records related to deaths at the Workhouse, including all records, video, and investigations into the deaths of Louis Lynn

Payton (08/2018); Andre Jones (05/2018); Justin Ratcliff (12/2016); Amy Pollock (09/2016); Ronald Pullum (08/2012); Willie Woodberry (03/2012);

    f.   Classification records for inmates in administrative segregation;

    g.   Hearing records from inmates placed in administrative segregation;

    h.   Samples of custody staffing analysis;

    i.   Samples of the shift roster (1 full week from March to August 2018);

    j.   Samples of supervisor shift reports (1 full week's reports from March to August 2018);

    k.   Unit log books (1 full week from March to August 2018);

    l.   ILMS or Daily Activity Log (1 full week from March to August 2018);

    m.   Sample of caseworker inmate contact sheets;

    n.   Sample of inmate medical screening sheets;

    o.   Any records on compilation of grievance trends;

    p.   Incident report logs and all incident reports, including related video; and

    q.   Unit Inspection records.

**Defendant Possesses Information Owed in Initial Disclosures and Requested by Plaintiffs**

44.    Due to Defendant's deficient production, Plaintiff's Counsel has independently attempted to obtain many of the City's own records. This search has resulted in finding documents that Defendant City possesses, but has failed or refused to produce. For example, Plaintiff received many policies related to the operation of the Workhouse from a community organization's, Telegram, Sunshine request to the City of St. Louis.

45.    Defendant's Counsel also stated that many of these documents existed and could be produced during the July 20, 2018 meet and confer, and yet no additional documents have been provided to Plaintiff.

**Defendant's Actions Continue to Prejudice Plaintiffs and Inhibit Meaningful Discovery**

46.     Defendant's lack of compliance continues to delay discovery and expert witness activities, requiring the parties to file a Joint Motion to Amend the Original Case Management Order. *See* ECF No.

47.     Additionally, Plaintiffs cannot proceed with depositions of fact witnesses because the City failed or refuses to supplement their initial disclosures with names and contact information for those witnesses, and further has failed or refused to answer interrogatories requesting that same information.

48.     Further, *even if* the City immediately disclosed a comprehensive list of witnesses, Plaintiffs' ability to meaningfully depose many witnesses would be hindered so long as the City is permitted to leave their records in a haphazard mess inside the shipping container.

<u>**ARGUMENT**</u>

Defendant's refusal to comply with the Federal Rules of Civil Procedure governing discovery is unjustified and is causing significant prejudice to Plaintiffs. Plaintiffs have offered Defendant repeated opportunities to supplement their Initial Disclosures and to completely respond to Plaintiffs various Requests for Production and Interrogatories. Plaintiffs have reached out in good faith to clarify the requests and to resolve Defendant's myriad, unsupported objections. In return, Defendant has responded with very limited production or no response at all. Eventually Defendant offered Plaintiffs twelve tons of disorganized paperwork in a shipping container. This is not a way to produce records. Rather, it is a way to *hide* records.

Deadlines for disclosing expert witness reports and filing a Motion for Class Certification

quickly approach and Defendant's conduct prevents Plaintiffs from meeting these deadlines.

## I. DEFENDANT MUST BE COMPELLED TO SUPPLEMENT INITIAL DISCLOSURES.

### a. Plaintiff's Motion to Compel is Timely

The Case Management Order issued by this Court requires that Motions to Compel be pursued in a "diligent and timely" manner, but in no event filed more than eleven (11) days after the revised discovery deadline of February 28, 2019. *See* Case Management Order, Feb. 27, 2018, attached as Ex. Q; *See* Order Granting Motion to Amend CMO, July 25, 2018, ECF. 32. Plaintiffs file this Motion over three months after the original deadline for both parties' Initial Disclosures and over two months after Defendant's first deadline to respond to Plaintiffs' First Requests for Production and First Interrogatories. In the interim, Plaintiffs have agreed to multiple deadline extensions and diligently conferred with Defendant multiple times in an effort to resolve the parties' discovery disputes. Notably, these failures include Defendant's refusal to identify numerous of witnesses and provide copies or location of documents known to be in its possession, as well as failing to provide copies of electronically stored information. This Motion is therefore timely.

### b. Defendant's Initial Written Disclosures are Woefully Inadequate

Clear obligations are articulated in the Federal Rules of Civil Procedure regarding Initial Disclosure obligations:

> A party must, without awaiting a discovery request, provide to the parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Rule 26(a)(1)(A)(i). Further, Rule 26(a)(1)(A)(ii) requires a party to disclose:

> a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Rule 26(a)(1)(A)(ii). A party "is not excused from making its disclosures because it has not fully investigated the case." F.R.C.P. 26(a)(1)(C). Rule 26 is intended to "accelerate the exchange of basic information about the case" and "eliminate the paper work involved in requesting such information." *Lyon v. Bankers Life & Cas. Co.*, No. CIV. 09-5070-JLV, U.S. Dist. LEXIS 4702, at *12 (D.S.D. Jan. 14, 2011). "Litigants should not indulge in gamesmanship with respect to the disclosure obligations." Fed. R. Civ. P. 26(a)(1) advisory committee's notes (1993 Am.).

In requiring a party to disclose the identity of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, Rule 26(a)(1)(A)(i) necessitates that each party "make a good faith effort to obtain particularized address and telephone information for individuals relevant to the litigation." *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008).

Incredibly, Defendant's Initial Disclosures identify only *five* individuals as likely to have discoverable information about conditions and practices that have continued for over six years and have affected thousands of detainees and employees at the Workhouse. *See* Pl. Initial Disclosures, Mar. 30, 2018, attached as Ex. E. For starters, Defendant has failed to provide Plaintiffs with a list of all employees employed by the City of St. Louis at the Workhouse. Defendant has also failed to provide a list of all individuals and companies with whom the City enters contracts related to the Workhouse. There must be hundreds of witnesses to the conditions at the Workhouse and the City certainly knows who most of these people are. The City's failure to identify and disclose employees and other witnesses prevents Plaintiffs from beginning to take depositions, given that Plaintiffs are limited to only 15 depositions per this Court's CMO.

Defendant pretends to remedy this (non)disclosure by "listing" as witnesses "all individuals identified in any of the documents produced in this matter, including the documents produced herewith bates labeled 'CITYSTL 000001' through 'CITYSTL 004343.'" *See* Ex. E, Def.'s Init. Discl. at 2. The City's reference to vague classes of people is wholly inadequate because there is "no reference to the subject areas of their testimony" the City's response represents bad faith per Rule 26(a)(1)(A)(i). *See Lyon v. Bankers Life & Cas. Co.*, U.S. Dist. LEXIS 4702, at *15. Such a (non)disclosure "defeat[s] the automatic disclosure intent of the Rule and impair[s] the ability of the other party to prepare appropriate interrogatories to develop testimony of those potential witnesses." *Id*. Defendant's produced documents make mention of hundreds of people, often only via illegible signature or reference. *See, e.g.,* CITY003311 (containing the signature of an otherwise un-identified Medium Security Institution staff member), CITY003361 (copying Lieutenant Jermanda Adams, Division Safety Coordinator, who is named in multiple documents with no address, phone number, or reference to the subject matter about which they may have information). This fails to meet the requirements of Rule 26(a)(1). The City is obfuscating, not disclosing, and thumbing its nose at this Court's Scheduling Order in the process.

  **c. Defendant's Initial Document Disclosures are Deficient because they Omit Documents Readily Available to the City.**

Defendant's Initial Disclosures do not meet the requirements of Rule 26(a)(1)(A)(ii), which requires a party to produce "a copy—or a description by category and location—of all documents and tangible evidence... that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). While Defendant has produced over 4000 pages of documents, the quantity of its Initial Disclosures does not excuse their topical and chronological deficiencies, as set out above. This court should

compel the immediate production of the City's deficient disclosures, including compelling proper disclosure of documents and tangible evidence that is currently in the shipping container.

Defendant is required to supplement initial disclosures "in a timely manner" (Rule 26(e)). While Rule 26(e) does not define the phrase "in a timely manner," the rule is construed and applied "against the backdrop of the very specific requirements" of Rule 26(a)(1) and a case's particular facts and circumstances. *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015). A party must supplement their disclosures "in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case." *Id.*, quoting *United States v. Guidant Corp.,* No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009).

Defendant made Initial Disclosures in early April 2018, over four months ago, and has failed to update them since. These "Disclosures" are not deficient because the City lacks or is unaware of relevant information. Rather, the City has refused to cooperate with the discovery process in a patterned[18] and dilatory strategy to obstruct their opponents.

### d. Simply Granting Plaintiffs Access to the Overfilled, Unorganized Shipping Container does not Remedy Defendant's Deficient Disclosures.

Defendant fails to comply with their disclosure obligations by pointing to the 400-plus un-indexed boxes in the shipping container and by a blanket statement to find names hidden within over 4,000 unorganized pages the City dumped on Plaintiffs at the outset.

Further, a shipping container full of paper files does not constitute the universe of information and documentation available to the City in this litigation. Electronically-stored information is included in the list of discoverable materials under the Federal Rules. *See* Fed. R.

---

[18] The City of St. Louis has, in recent history, forced numerous litigants to seek this very Court's intervention to compel the City to perform its basic discovery obligations. *See, e.g.*, *O'Rourke v. King et al.*, 4:16-cv-01795-AGF.

Civ. P. 34. Yet Defendants have failed to conduct a search of electronically-stored information, including email communications, in providing responses to Plaintiff's Requests for Production of Documents. "A party is entitled to discovery 'regarding any matter not privileged, that is relevant to the claim or defense of any party.'" *Weatherford,* 2011 U.S. Dist. LEXIS 59036, *10, *quoting* Fed. R. Civ. P 26(b)(2)(B) (granting plaintiff's motion to compel production of electronically stored information where defendant could not show undue burden or cost).

## II. DEFENDANT MUST BE COMPELLED TO FULLY PARTICIPTE IN DISCOVERY.

### a. Plaintiffs Motion is Timely and Plaintiffs Have Made Good Faith Efforts to Resolve These Disputes

The Case Management Order issued by this Court requires that Motions to Compel be pursued in a "diligent and timely" manner, but in no event filed more than eleven (11) days after the revised discovery deadline of February 28, 2019. *See* Case Management Order, ECF No. 16; Amended CMO, ECF No. 32. Plaintiffs file this Motion over two months after Defendant's first deadline to respond to Plaintiffs' First Requests for Production and First Interrogatories. Normally, "a motion to compel should be filed in advance of the deadline for completion of discovery." *Weatherford U.S., L.P. v. Chance Innis & Boble Casing, Inc*., No. 4:09-cv-061, 2011 U.S. Dist. LEXIS 59036, at *9-10 (D.N.D. June 2, 2011). This Motion is therefore timely.

A party moving to compel discovery and seeking sanctions against another party must first show that it has made a good faith effort to obtain the discovery without court action. Fed. R. Civ. P. 37(a)(1); *see also Black Hills Molding v. Brandom Holdings*, 295 F.R.D. 403, 409-10 (D. S.D. 2013) (holding that several attempts to contact and collaborate with opposing counsel satisfied Fed. R. Civ. P 37's good-faith effort requirement).

As shown by the attached Exhibits, Plaintiff has, on numerous separate occasions and

through varying means, sought to resolve this dispute with Defendants in good faith, each time reminding Defendant of its obligations to participate in discovery. In response, Defendant has missed deadlines, ignored Plaintiffs' counsel's emails, failed to read and consider Plaintiffs' communications in a timely and professional manner (for example, *see* emails from Plaintiffs' Counsel to Defendant's Counsel, attached as Exhibits K, O, P, Z, AA, BB, CC, DD, EE, FF, and generally undermined the purpose of discovery. Plaintiff's counsel has satisfied its Rule 37 obligation to make good faith efforts to resolve discovery disputes, and the instant motion to compel should succeed.

> **b. Defendants should be Compelled to Provide Discovery Responsive to Plaintiff's Requests for Production for Relevant Documents.**

Federal Rule of Civil Procedure 34 allows a party to request documents, electronically stored information, or tangible things from another party. Fed. R. Civ. P. 34(a). The party being served document requests or interrogatories has 30 days to object to or comply with the requests. Fed. R. Civ. P. 34(b). If "a party fails to produce documents . . . as requested under Rule 34," the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

> **i. Plaintiffs have made a threshold showing of relevance.**

Plaintiffs' discovery requests enumerated in Paragraphs 42 and 43 seek records essential to their efforts to establish a complete and accurate account of the conditions they endured while detained at the Workhouse, the maintenance and repair of facilities relevant to the scope and during of incidents of disrepair at the Workhouse, the City's policies and practices relevant to Plaintiffs' *Monell* claim, and the individuals that may be part of the Plaintiffs' putative class or may be witnesses to the claims brought by Plaintiffs. Plaintiffs have therefore made a threshold showing of relevance.

ii. **Defendants improperly objected to Plaintiffs' Requests for Production by failing to state the grounds for objecting to Plaintiffs' Requests for Production.**

The Federal Rules of Civil Procedure require parties to state the grounds for objecting to an Interrogatory or Request for Production with specificity. Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(2)(b). "Routine, '[b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure.'" *Azarax, Inc. v. Wireless Communs. Venture, LLC*, No. 16-cv-3228 (JRT/LIB), 2017 U.S. Dist. LEXIS 217372, *17 (quoting *In re: RFC and ResCap Liquidating Tr. Litig.*, 2015 WL 12778780, *6 (D. Minn. June 8, 2015)). In light of this requirement, the mere statement by a party that a RFP was overly broad, is not adequate to voice a successful objection. *See Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, No. 12-cv-2692 (JRT/LIB), 2014 U.S. Dist. LEXIS 192860, *7 (D. Minn. 2014).

Defendant consistently relies on boilerplate objections to Plaintiffs' Interrogatories and Requests for Production. The fact that Defendant objects to all 22 of Plaintiffs' Interrogatories, and all but 4 of Plaintiffs' Requests for Production in highly general and broadly similar terms demonstrates bad faith that undermines the purpose of discovery. *See* Opp. Response to First RFP, June 22, 2018, attached as Ex. L. Defendant's blanket refusal even to attempt to provide responsive answers to Plaintiffs' discovery requests is plainly deficient. The court should therefore overrule all of the City's objections and compel the City to answer and provide all responsive documents.

iii. **Defendants fail to show that Plaintiffs' Interrogatories and Requests for Production are unduly burdensome, and thus should be compelled to respond fully to Plaintiffs' Interrogatories.**

"An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectionable." *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370, 2004 U.S. Dist. LEXIS 27630, *83–84; *see also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) ("Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production"). It is not sufficient for a party simply to state that the discovery is overly broad and unduly burdensome, "nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing "huge volumes of documents and information" a sufficient factual basis for sustaining the objection." *Carlson v. Freightliner LLC*, 226 F.R.D. 343 at *84–85 (quoting *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 611 (D.C. Neb. 2001)).

Defendant fails to support the objection that answering Plaintiffs' Interrogatories 3, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and Requests for Production 1, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33 and 36 would be unduly burdensome. Instead, Defendant makes conclusory statements about about the time and effort it would take to provide responsive answers.

For example, Plaintiffs' Request for Production 6 seeks documents in which inmates communicated any observation, suggestion, concern, complaint or grievance regarding any of the Purported Conditions. Defendant objects "this request is unduly burdensome in that it would require individual examination and assessment of every informal resolution request, grievance, letter, email, or other writing submitted over the course of almost five years to determine if it complains of a 'Purported Condition.'" This objection amounts to nothing more than a claim that answering Plaintiffs' requests will require time and effort.

In *Carlson*, the Freightliner trucking company stated that a printout responsive to Plaintiffs' discovery requests seeking information concerning the shipment of replacement parts within a ten-year period was the best they could do without spending a great deal of time and effort researching ten years of files. *Id.* at *22. The court found this objection unpersuasive. *Id.* Likewise, Defendant's objection in response to Plaintiffs' Interrogatory 21, for example, that it would be "unduly burdensome to require City to "describe" every policy in this regard" is unpersuasive. Unfortunately this response is also typical of Defendant's posture toward the discovery process.

If "a party fails to answer an interrogatory submitted under Rule 33," the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court should reject Defendant's blanket assertions that Plaintiffs' discovery requests are unduly burdensome, and Defendant should be required to provide responsive answers.

### iv. Defendants cannot show good cause for their deficiencies and should be compelled to produce the documents requested.

Defendant cannot show any good cause to excuse its lack of response to Plaintiffs' discovery requests. Defendant received Plaintiffs' First Interrogatories and Requests for Production on May 2, 2018. When Defendant ignored this request and failed to respond by the June 1, 2018 deadline, Plaintiffs' counsel issued a letter on June 4, 2018 addressing the deficiencies in Defendant's production and later voluntarily offered to extend the deadline for presenting responses and objections to June 22, 2018. *See* Ltr. Regarding Outstanding Discovery Owed, June 4, 2018, attached as Ex. H. Plaintiffs' counsel has also conferred with Defendant's counsel over the phone on July 3, 2018 and again on July 20, 2018 in an effort to clarify and

resolve any outstanding issues. Defendant cannot claim ignorance or lack of notice, and they have not offered any satisfying reason or justification for their deficient production.

      **c. Defendant's production of a shipping container of 500 unorganized boxes of records does not meet Defendant's discovery obligations and Defendant should be Compelled to Provide Discovery Documents Specifically Responsive to Plaintiff's Requests for Production for Relevant Documents.**

In a Meet and Confer on July 20, Defendant states that documents responsive to Plaintiffs' First and Third Requests for Production are *likely* in the Workhouse's shipping container where approximately 400 boxes of records (approximately 1.2 million pages of documentation) were moved to after the start of litigation. The timing of this move is highly suspicious. This court should note the recent decision out of the Fifth Circuit chastising Harris County for failure to properly keep its records during the duration of a constitutional suit around bail conditions. *See* O'Donnell v. Harris County, 4:16-cv-01414. Further, the City failed to put in place a system for indexing or locating these records. Nor is Defendant's Counsel aware of what responsive documents are in the shipping container. Defendant's Counsel offered access to the shipping container to Plaintiffs, putting the burden of searching for responsive documents on Plaintiffs. This behavior constitutes a failure to comply with Rule 34(b)(2)(E)(i) and Defendant should be compelled to bear the costs of production responsive documents.

      **a. Defendant has failed to organize and label its document production in any way that would correspond to the categories in Plaintiffs' requests.**

A party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). The rule thus provides a responding party with two ways to produce responding documents, either in the traditional format, organized to correspond with the party's requests, or

alternatively as such documents are "customarily maintained." To supplement its Initial Disclosures and responses to Plaintiffs' Requests for Production, Defendant has directed Plaintiffs toward an estimated 1.2 million pages of documentation (¶ 29). Defendant has not indicated which of these documents may be relevant, has not organized them in a way responsive to Plaintiffs' requests, and has instead suggested that Plaintiffs should take on the burden of organizing and sorting through its documents. Defendant has clearly failed to organize and label its supplemental document production in any way that might correspond with Plaintiffs' requests. Therefore, in order for Defendant's document production to comply with Rule 34, production of records must be done as such documents are kept in the usual course of business.

**b. Defendant has failed to meet the burden of demonstrating that it has produced documents as they are kept in the usual course of business.**

A party which opts for the alternative method of production bears the burden of demonstrating that the documents made available have in fact been produced consistent with the usual course of business. *Pass & Seymour, Inc.*, 255 F.R.D. at 334; *Cardenas,* 230 F.R.D. at 618. To carry this burden, a party must do more than merely assert to the court and the requesting party that the documents have been produced as they are maintained. *Pass & Seymour, Inc.*, 255 F.R.D. at 334. *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540-41 (D. Kan. 2006) and *Cardenas,* 230 F.R.D. at 618 (both holding that the mere assertion that documents were produced as kept in the ordinary course of business is insufficient to fulfill requirements of Rule 34).

The producing party must provide the court and the other party with some information as to their method of organizing the documents. *Pass & Seymour, Inc.*, 255 F.R.D. at, 335. *See, e.g., CooperVision, Inc. v. Ciba Vision Corp.*, No. CIV A 206CV149, 2007 WL 2264848, at *5 (E.D. Tex. Aug. 6, 2007) ("[S]imply placing documents in boxes and making them available does not

conform to the rule."); *Johnson,* 236 F.R.D. at 541 (where a producing party provided no information as to the manner in which documents were produced, including where they were maintained, the identity of the custodian, and whether they were from a single source or multiple sources of files, the producing party failed to meet the burden of showing that the documents were produced as they were maintained); *Stiller v. Arnold,* 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b)."); *Scripps Clinic & Research Found. v. Baxter Travenol Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at *3–4 (D. Del. June 21, 1988) (production of 45,000 documents "arranged in bundles within each of the fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the file, the name of the file, or whether the bundle contained documents from multiple files" deemed insufficient to satisfy the requirements of Rule 34(b)).

Defendant has not provided any proof that the 500 boxes in the shipping container have been produced as they are kept in the usual course of business. Given that the most recent records in the shipping container appear to date back to 2014, Defendant has clearly altered any existing record retention system and no longer uses the shipping container for document storage. Defendant's method of document production therefore does not conform with the usual course of storage for records for the Medium Security Institution and does not comply with the requirements of Rule 34(b)(2)(E)(i).

Even if Defendant asserts that it has produced documents as they are kept in the usual course of business, its unorganized mass document production lacks any index or organizational system that would merit finding compliance with Rule 34. A responding party arguing that it has produced documents as kept in the ordinary course of business generally may not direct the

requesting party toward an unorganized repository of documents and successfully claim compliance with Rule 34. *See Wagner v. Dryvit Sys., Inc.* 208 F.R.D. 606 (D. Neb. 2001) (After the *Wagner* plaintiffs served the defendant with requests for production and interrogatories, the defendant responded with numerous objections, including many claiming that the "discovery was overly broad, unduly burdensome, vague and ambiguous." *Id*. at 608. The defendant then indicated that information generally responsive to the plaintiffs' requests was available in a repository of over 145,000 documents that the defendant had previously used in other class action litigation. *Id*. at 609. The plaintiffs' counsel traveled to the repository but were provided no index or assistance in finding truly responsive documents in the repository, which was not organized by date, subject matter, or in any other way. *Id.* In response to the plaintiffs' Motion to Compel, the court held that, "to the contrary, producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34." *Id*. at 610–11, citing *Stiller,* 167 F.R.D. at 70–71 and *T.N. Taube Corp. v. Marine Midland Mort. Corp.,* 136 F.R.D. 449, 456 (W.D.N.C. 1991)). "An unwieldy record keeping system which requires [a party] to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *Id.* at 611, citing *Caruso v. Coleman Corp.,* 157 F.R.D. 344, 349 (E.D. Pa. 1994), *Snowden v. Connaught Laboratories, Inc.,* 137 F.R.D. 325, 332–33 (D. Kan. 1991), *Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101, 105 (S.D. Ohio 1982), and *Kozlowski v. Sears, Roebuck,* 73 F.R.D. 73 (D. Mass. 1976).

The shipping container is not organized departmentally, chronologically, or topically. It contains documents related to both the Medium Security Institution and City Justice Center, as well as unidentified, moldy documents that could be hazardous to Plaintiffs' Counsel's health. Defendant has offered no organizational system or an actual index that could potentially render

the shipping container an acceptable means of document production. Defendant therefore fails to comply with Rule 34. *See* Lambing Deposition, 037:22-0:38:02, Aug. 14, 2018, attached as Ex. KK.

### III. THIS COURT SHOULD SANCTION DEFENDANTS FOR FAILURE TO COMPLY WITH INITIAL DISCLOSURE REQUIREMENTS AND ORDER DEFENDANTS TO NOT USE EVIDENCE THEY FAILED TO DISCLOSE TO PLAINTIFFS, PAY PLAINTIFFS' REASONABLE ATTORNEYS FEES AND EXPENSES, AND FULLY INDEX AND PRODUCE RELEVANT DOCUMENTS IN THEIR POSSESSION.

This court should sanction Defendants and order that they may not use any evidence to support their defenses from information in their possession not provided to Plaintiffs. In Rule 37, the Federal Rules of Civil Procedure outline clear sanctions where a party fails to provide information or identify witnesses as required by Rule 26(a) or (e). Where "a party fails to provide information or identify a witness as required…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1).

As described above, The City's failure to supply this information was not justified. The City clearly has a list of Workhouse employees and third-party subcontractors in its possession. In addition, the City made the decision to move its files into the shipping container after the filing of this lawsuit and did not properly fulfill its record-keeping obligations by keeping documents without any indexing system. Defendants have also failed to produce any E.S.I.. The lacking disclosures are clearly not harmless to Plaintiffs' ability to find evidence in support of their claims.

Plaintiffs' ask this court to also order the payment of Plaintiffs' reasonable expenses and attorney's fees caused by Defendant's failure to comply with disclosure obligations. *See* Rule

37(c)(1) ("In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard, (a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (b) may inform the jury of the party's failure, and (c) may impose other appropriate sanctions"). Plaintiffs have already spent dozens of hours due to Defendants failure to disclose key information, thirty hours scanning and producing Defendant's documents and may be forced to redo inspections and expend much more on expert fees due to inadequate record production from Defendants.

The F.R.C.P. allows this court to also order other appropriate sanctions, including an order that the City properly index records related to the Workhouse and find and produce relevant records related to Plaintiffs' conditions related claims. Alternatively, Defendants could agree to pay the costs of Plaintiffs scanning all documents in the shipping containing in order to find any relevant documents. The expenses associated with this search are in excess of $100,000. *See* Ex. MM.

## IV. THIS COURT SHOULD SANCTION DEFENDANTS FOR THEIR FAILURE TO COMPLY WITH DISCOVERY OBLIGATIONS, INCLUDING STRIKING PLEADINGS, WAIVING OBJECTIONS, AND AWARDING PLAINTIFFS' REASONABLE ATTORNEYS' FEES.

Plaintiffs persisted in good faith to remedy Defendants' noncompliance. This Court has already issued a direct order that there will be no further extensions. Neither of these has proven effective in compelling Defendants to perform simple searches for the above-listed documents and evidence. Defendants' outright and unjustified refusal to comply with requirements of Initial Disclosures and Discovery obligations as mandated by the Federal Rules of Civil Procedure governing discovery has caused Plaintiffs undue prejudice in pursuing their claims against the City of St. Louis, and necessitates sanctions from this Court. A District Court may impose sanctions for discovery violations pursuant to the Federal Rule of Civil Procedure 37 or pursuant

to its "inherent authority to fashion an appropriate sanction for conduct which abuses the judicial process." *Duranseau v. Portfolio Recovery Assocs.,* 644 F. App'x 702, 707 (8th Cir. 2016).

This Court "has broad discretion to impose the various sanctions set forth in Fed. R. Civ. P. 37(b)(2) for failure to comply with a prior court order." *See Kropp v. Ziebarth*, 557 F.2d 142, 146 (8th Cir. 1977); *Roadway v. Piper*, 447 U.S. 752, 764 (1980) (upholding award for attorney's fees as sanctions for failure to comply with discovery); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-21 (8th Cir. 1999) (finding a party's pattern of discovery misconduct warranted "extreme sanction" of striking that party's pleadings); *and Comstock v. UPS Ground Freight*, 775 F.3d 990, 992 (8th Cir. 2014) (party's intentional failure to comply with court order warranted dismissal of its claims).

In order for the Court to award sanctions, it must first ensure that any sanction is "just." *See, e.g.*, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (holding that sanctions against nonmoving party were "just" where nonmovant continuously refused to comply with discovery requests). Whether a sanction is "just" is determined in part by the existence of prejudice against the moving party. *See, e.g., Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986). "The materiality of the issue on which discovery is withheld and the difficulty posed to the opponent by withholding are certainly relevant factors in assessing the 'justice.'" *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) (holding that the discovery requests made were material and refusal to comply unduly prejudiced the moving party). "In the context of Rule 37(b)(2) motions, 'prejudice' exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim." *Id.* at 559.

Defendants' repeated refusal to collect and produce the aforementioned documents and information continues to prejudice Plaintiffs by "impair[ing] [his] ability to determine the factual merits of [his] claim." *See Avionic Co.*, 957 F.2d at 559. The Defendants' own testimony shows that all of the policies, communications, physical evidence, and records Plaintiff requested were previously maintained, controlled, and readily-accessible by the City.

Defendant's conduct leaves Plaintiffs shut out from the fact-finding process, having expended significant time and resources to force Defendants and their counsel to comply with basic obligations and with this Court's own orders.

For these reasons, Plaintiffs' ask this Court to enter an order striking Defendants' pleadings, indexing and producing relevant and necessary records, granting Plaintiffs' attorneys fees for their additional discovery efforts, and ordering other sanctions this court sees as just.

## <u>CONCLUSION</u>

Plaintiffs respectfully pray this Court grant their Motion to Compel and Request for Sanctions by providing the following relief:

A. Entry of an Order compelling Defendant to supplement its Rule 26 disclosures with the names and contact information for all possible witnesses with information relevant to Plaintiffs' claims;

B. Entry of an Order compelling Defendant to produce all documents, Electronically Stored Information, and tangible evidence relevant to Plaintiffs' claims or Defendant's defenses;

C. Entry of an Order compelling Defendant to fully answer Plaintiffs' First Set of Interrogatories;

D. Entry of an Order compelling Defendant to produce all documents requested in Plaintiffs' First and Third Requests for Production, including locating and producing any documents that are currently in the City's shipping container filled with approximately 400 boxes of un-indexed records;

E. Entry of an Order compelling Defendant to produce documents requested in Plaintiffs' Fourth Request for Production;

F. Entry of an Order sanctioning Defendant for their dilatory conduct of moving previously-organized records into a disorganized state inside a shipping container, and for their deficient initial disclosures, by ordering that Defendant not use any evidence that they failed to disclose to Plaintiffs, pay Plaintiffs' reasonable attorneys fees and expenses, and fully index and produce any relevant documents in their possession that are currently stored in the shipping container;

G. Entry of an Order sanctioning Defendant for their failure to comply with discovery obligations by striking their pleadings, waiving objections to interrogatories and Plaintiff's Fourth Request for Production, and awarding Plaintiffs' reasonable attorneys' fees to be submitted; and

H. For such other and further relief as this Court deems just and proper under the circumstances, including granting any additional sanctions or other form of relief that this Court deems just and proper under the circumstances. set forth in Plaintiffs' motion, to include striking Defendants' pleadings and entering Orders compelling Defendant to produce the above-stated discovery. Plaintiff further asks this Court to consider amending the schedule of this case in order to allow Plaintiffs to have a fair opportunity to obtain and review all of the information Defendant should have provided months ago, as well as resetting the deadlines for filing expert designations and a motion for class certification. Plaintiffs further ask this Court to enter any further Orders justified in light of these extraordinary circumstances.

Dated: September 6, 2018

**ARCHCITY DEFENDERS, INC.**

By: */s/ Sima Atri*
Blake A. Strode (MBE #68422MO)
Michael-John Voss (MBE #61742MO)
Jacki Langum (MBE #58881MO)
Nathaniel R. Carroll (MBE #67988MO)
Sima Atri (MBE #70489MO)
John M. Waldron (MBE #70401MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63103
Tel: (855) 724-2489
Fax: (314) 925-1307
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jlangum@archcitydefenders.org
ncarroll@archcitydefenders.org
satri@archcitydefenders.org

jwaldron@archcitydefenders.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that notice of the foregoing and a copy of the same was distributed via this Court's ECF/PACER electronic filing notification system to all counsel of record on this 6th day of September, 2018.

*/s/ Sima Atri*