UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CODY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-2707-AGF |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of non-party Movant Corizon Health, Inc. ("Corizon") to partially quash the subpoena duces tecum served by Plaintiffs seeking production of certain documents. ECF No. 33. For the reasons set forth below, the motion will be denied in part and granted in part.

## BACKGROUND

Plaintiffs filed this action on behalf of themselves and all others similarly situated against the City of St. Louis, Missouri alleging various dangerous, unsanitary, and inhumane conditions inside the St. Louis City Medium Security Institution ("MSI"). Plaintiffs, who were all held at MSI at various times in 2017, claim that detainees at MSI are subjected to insufficient ventilation and extreme heat; unsanitary and unhealthy conditions including rodent and insect infestation, overflowing sewage, and black mold; inadequate medical care; and overcrowding, inadequate staffing, violence, and retaliation from staff.

Plaintiffs served Corizon, the contracted medical care and treatment provider for City of St. Louis detainees confined to the MSI, with a subpoena seeking various documents relating to medical care and treatment at MSI. ECF No. 33-1. Corizon opposes the production of documents as requested in certain paragraphs of the subpoena. According to Corizon, the documents sought by Plaintiffs in the following paragraphs seek disclosure of medical information of inmates other than that of Plaintiffs, which is confidential and protected information pursuant to regulations under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"):

> 8. For the relevant period, a list of appointments, meaning a scheduled time for inmates to be seen by medical staff. The list should be formatted by day and include notes from each appointment. If available, the information should contain each inmate's name, housing location, inmate number, date of birth, reason for service, diagnosis, date scheduled and date completed or reason for no show.
> 9. All Infirmary tracking logs during the Relevant Period. The information should include each inmate's name, inmate number, DOB, date of admission, reason for admission, and date of discharge.
> 10. Tracking logs or list of patients sent to the emergency department/hospitalized during the Relevant Period. The information should include inmate name, inmate number, DOB, reason for visit or hospitalization, date of admission and date of discharge.
> 11. A current caseload list of all inmates on the male and female transitional units and acute care units listed by name, inmate number and DOB.
> 12. For the Relevant Period, the sick call request logs, triage lists, and/or other records documenting all requests for medical care by inmates, including but not limited to "Health Services Request Forms."
> 13. For the Relevant Period, any documents showing or related to complaints that incarcerated people made about general building conditions or conditions impacting health (e.g., mold, rats, temperature, food, insects) including documents placed in what may be colloquial be known as the "sick box."
> 14. For the Relevant Period, a list of all inmates by name and

inmate number, who were hospitalized outside of MSI, including the date of hospitalization, date of discharge, and the reason for hospitalization.

    15. For the Relevant Period, a log of each of the following conditions and/or symptoms reported by inmates or correctional staff:
- a. Ear/Nose/Throat irritation;
- b. Neurasthenic symptoms (headaches, dizziness, fatigue, and nausea);
- c. Skin irritation or infections;
- d. and/or hypersensitivity reactions (allergy-like or asthma-like symptoms); and
- e. Sensory issues (unpleasant odors and/or tastes).

…

    17. Please provide any documentation related to suicide monitoring during the Relevant Period, including but not limited to any policies or written procedures and directives.

    18. The log for requests for mental health services or "Mental Health Referral" forms during the Relevant Period with inmate name, inmate number, the date of the request, and whether services were provided as a result of the request.

…

    20. For the Relevant Period, all Medication Administration records and/or Practitioner's Orders listing the prescriptions issued and medication administered to inmates in the Medium Security Institute.

ECF No. 33-1.

Corizon contends that this information should be quashed based on Rule 45(d)(3)(A)(iii), Fed. R. Civ. P., which requires quashing or modifying a subpoena when it seeks disclosure of privileged or other protected matter, if no exception or waiver applies.

Corizon also opposes the production of certain documents as being unduly burdensome and too expensive for it to comply with the subpoena under Rule 45(d)(3)(A)(iv), Fed. R. Civ. P. These are documents are sought in paragraphs 8, 10-14, and 20 above, but also those requested in:

    1. A complete copy of all policy manuals, procedures, protocols, guidelines, and any other materials in any form concerning the providing of

medical care at the Medium Security Institution. This request should include instructional memoranda or documents issued to Corizon by other companies or organizations to assist with treating medical hazards found in the Medium Security Institution.
ECF No. 33-1.

## **DISCUSSION**

Federal Rule of Civil Procedure 26 provides that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Although the federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). Relevant information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit." *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003).

Rule 45 provides the rules governing subpoenas directed at non-parties, and authorizes a district court to quash or modify a subpoena when the subpoena requires

disclosure of privileged or other protected matter, or when it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A) (iii)-(iv). The court has wide latitude in deciding whether to quash a subpoena issued to a non-party. *Swann v. Calahan*, No. 4:11CV00369(JCH), 2011 WL 3608056, at *1 (E.D. Mo. Aug. 15, 2011). A "party seeking to quash a subpoena bears the burden to demonstrate that compliance would be unreasonable or oppressive." *Enviropak Corp. v. Zenfinity Capital*, LLC, No. 4:14CV00754 ERW, 2014 WL 4715384, at *3 (E.D. Mo. Sept. 22, 2014). If the party seeking the information can easily obtain the same information without burdening the non-party, the court will quash the subpoena. *See In re Cantrell v. U.S. Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011 (W.D. Mo. Apr. 21, 2009).

First, Corizon contends that the information requested in paragraphs 8-15, 17, 18, and 20 should be quashed for seeking disclosure of confidential, privileged, or other protected matter under HIPAA, based on Rule 45(d)(3)(A)(iii), Fed. R. Civ. P. Corizon admits that HIPAA allows for disclosure when a Protective Order is in place, as it is here (ECF No. 29). However, Corizon argues that the Court should use its discretion to bar the release of these records of a "very sensitive nature." ECF No. 34 at 6. Corizon also argues that the mental health information requested should require an increased level of privacy and confidentiality, and that the release of this information should be barred by psychotherapist-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (recognizing a federal common law psychotherapist-patient privilege and holding that confidential communications between a licensed psychotherapist and her patients are

5

protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence).

Plaintiffs oppose a partial quash of the subpoena, arguing that the Protective Order in place in this case adequately protects HIPAA information from public release. Plaintiffs also point out that Corizon does not argue that the Protective Order is inadequate, nor does it cite any case law in support of its "sensitive nature" argument.

Second, Corizon contends that the information requested in paragraphs 1, 8, 10-14, and 20 should be quashed because compliance with the subpoena would create an undue burden and expense for Corizon, based on Rule 45(d)(3)(A)(iv), Fed. R. Civ. P. According to Corizon, providing the requested information would involve conducting a manual search of each patient chart during the twelve-month time period at issue and the time and expense of such a search would be unduly burdensome. Corizon relies on *In re Cantrell v. U.S. Bioservices Corp.* where the court found a subpoena served on a non-party physician was unduly burdensome, in part because the requested documents could first be sought from the party defendants.[1] No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009).

In response, Plaintiffs argue that they have already limited the scope of their subpoena to just one year of medical records (May 2017 to April 2018), even though their

---

[1] As part of Corizon's undue burden objection, it also argues that some of the document requests are not limited to MSI but also require the production of documents related to inmates confined at the St. Louis City Justice Center (where Corizon also provides contracted medical care and treatment). However, this is a nonissue since "[p]laintiffs concede that they only seek information limited to the City of St. Louis's Medium Security Institution." ECF No. 36 at 5 n.1.

purported class of Plaintiffs would include MSI detainees for over a five-year period. This limitation was an attempt to minimize the burden and expense on Corizon. Regardless, Plaintiffs contend that Corizon has failed to provide any evidence to meet its burden to demonstrate that compliance with the subpoena would be unreasonable or oppressive. Plaintiffs state that these documents are necessary to their case, and it is Corizon that regularly maintains and possesses them.

The Court granted Corizon leave to file a reply brief in support of its motion out of time. In that reply, Corizon argues, for the first time, that the information requested by Plaintiffs is not relevant to their complaint and that they are required to make a compelling show of relevance. Because this argument was only raised in reply, Plaintiffs did not have an opportunity to respond directly. However, Plaintiffs' opposition brief does state that "[b]ecause Plaintiffs allege Defendant City operates [MSI] with certain policies and hazardous conditions affecting the overall health and wellbeing of those caged within, Plaintiffs sought certain medical records related to those purported health hazards from the City's contract healthcare provider, non-party Corizon." ECF No. 36 at 1. It is undisputed that the basis of Plaintiffs' complaint is that the conditions of MSI are unhealthy and unsanitary, thereby causing health problems. Undoubtedly, medical care and treatment records are relevant to proving this claim.

Corizon, as the party seeking to quash the subpoena, bears the burden of demonstrating that compliance would be unreasonable or oppressive. As Corizon concedes, HIPAA allows disclosure of confidential medical information under a Court's

7

protective order. *See Cantrell*, 2009 WL 1066011, at *1. Corizon makes no argument, nor does the Court have reason to believe, that the Agreed Stipulated Protective Order (ECF No. 29) in place in this case is inadequate to protect the confidential records subpoenaed by Plaintiffs. Nor is the Court persuaded by Corizon's argument for a bar based on psychotherapist-patient privilege under *Jaffee v. Redmond*, 518 U.S. 1 (1996). No testimony is being compelled against privilege and Corizon has stated that medical records will be redacted to insure patient privacy. Corizon's motion to quash as to paragraphs 8-15, 17, 18, and 20 under Rule 45(d)(3)(A)(iii), Fed. R. Civ. P., will be denied.

As for Corizon's undue burden argument, Plaintiffs state that they have tried to minimize the burden on Corizon by limiting the time period for requested documents to one year. According to numbers provided by Plaintiffs in their complaint, MSI averaged around 710 detainees a month over a four-month period in 2017. ECF No. 22 ¶ 117. Corizon argues that since the medical records of every detainee will be subject to HIPAA, it will have to go through each page of the records to redact information that is not responsive to the Plaintiffs' request and to insure the privacy of the patients treated. Although not all detainees are seen regularly for medical care, Corizon states that every person who enters MSI receives two initial assessments by medical professionals. ECF No. 38-1 at 4. At an average of 710 detainees a month, over a twelve-month period, such record review could require a significant time and expense for non-party Corizon. On the other hand, Corizon is the only entity that can provide these necessary, relevant

8

documents to Plaintiffs.  Corizon is the City of St. Louis's retained medical services provider and part of those services includes maintaining medical records in the regular course of business.  Plaintiffs cannot obtain this information without burdening non-party Corizon.

To protect a non-party from undue burden or expense, the Court can modify a subpoena's scope.  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2459 (3d ed. 2008).  Such a modification is generally preferred to outright quashing.  *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996).  As this Court has wide latitude and discretion in deciding whether to quash or modify a subpoena to a non-party, the Court will attempt to balance Corizon's burden with Plaintiffs' need for this relevant information by limiting the subpoena at issue.  *See Bonutti v. Lehman Bros.*, No. 05 C 4409, 2005 WL 2848441, at *3 (N.D. Ill. Oct. 27, 2005) (modified scope of subpoena's time frame for requested documents from fourteen years to two years).

The seven named Plaintiffs were detainees at MSI at varying time periods during the nine-month period of January 3, 2017, to October 3, 2017.  In their subpoena, Plaintiffs request documents from Corizon for the one-year period of May 1, 2017, through April 30, 2018.  The six-month time period of May 1, 2017 to October 31, 2017 is approximately the overlapping time period between the named Plaintiffs' detentions at MSI and the subpoena's time period.  Corizon shall produce the requested documents for this narrower time period to Plaintiffs, except as to documents requested in paragraph 20 as discussed below.  If the documents produced from this time period demonstrate that

9

additional materials beyond this period are discoverable and necessary, Plaintiffs can move for production of such documents.

As for Plaintiffs' paragraph 20 document request, seeking "all Medication Administration records and/or Practitioner's Orders listing the prescriptions issued and medication administered," the Court finds this request unduly burdensome for Corizon. This overbroad request will require the production of many medication records and prescriptions that are not relevant to the issues of this case. If Plaintiffs can sufficiently tailor this request to be proportional to the needs of this case after production of the other requested documents by Corizon, Plaintiffs can seek production of such documents at that time.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that non-party Corizon Health, Inc.'s Motion to Partially Quash Subpoena Duces Tecum (ECF No. 33) is **GRANTED in part and DENIED in part**. "Exhibit A: Documents to be Produced" of the Subpoena served by Plaintiffs on Corizon requiring production of documents on August 3, 2018 at 11:00 a.m. (ECF No. 33-1) is modified as follows: (1) "Relevant Period" as defined in paragraph 10 of the 'Definitions' section is now defined as May 1, 2017 to October 31, 2017; (2) paragraph 20 under 'Documents Requested' is struck and Corizon need not produce documents in response to this paragraph; and (3) all document requests in the subpoena are limited to documents from the City of St. Louis Medium Security

Institution. Corizon Health, Inc. shall produce documents responsive to the subpoena as modified above by **November 23, 2018**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of October, 2018.