# Exhibit 3

Excerpts from the Expert Report of Eldon Vail

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CODY, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 4:17-cv-2707-AGF |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
|     Defendant. | ) |

**EXPERT REPORT OF ELDON VAIL PURSUANT TO RULE 26(A)(2)**

I, Eldon Vail, state as follows:

1. This report has been prepared at the request of Plaintiffs' counsel. Plaintiffs' counsel has retained me to analyze and opine on: the policies practices and performance of the City of St. Louis Medium Security Institution (MSI); whether those policies, practices and performance conform to modern correctional standards; and whether those policies, practices and performance create dangerous conditions for its inmate population.

**I.  Summary of Qualifications**

2. I am a former correctional administrator with 35 years of experience working in and administering adult institutions. I held various line and supervisory level positions in a number of adult prisons and juvenile facilities in the State of Washington before becoming a corrections administrator. I have served as the Superintendent (Warden) of three adult institutions, including facilities that housed maximum, medium and minimum-security prisoners. Two of those facilities housed men and one housed women.

1

3. I served for seven years as the Deputy Secretary for the Washington State Department of Corrections (WDOC), responsible for the operation of prisons and community corrections throughout the state. I briefly retired, but was asked by former Governor of Washington, Chris Gregoire, to come out of retirement to serve as the Secretary of the Department of Corrections in the fall of 2007. I served as the Secretary for four years, until I again retired in 2011. In sum, I served for a total of eleven years in the top one or two positions over the agency.

4. As a Superintendent, Assistant Director of Prisons, Assistant Deputy Secretary, Deputy Secretary, and Secretary, I was progressively responsible for the safe and secure operations of adult prisons in the State of Washington, a jurisdiction that saw and continues to see a significant downward trend in prison violence. In the last fifteen years in the WDOC, violent incidents have decreased over 30%, due in part to improved treatment of the mentally ill and reduced use of segregation. When I became Secretary the rate of violent infractions throughout the prison system was 1.23 events per 100 prisoners. When I left it was 0.66 per 100 prisoners, a 46% reduction in 4 years.

5. My opinions are based upon my substantial experience running correctional institutions and presiding over a statewide prison system for more than a decade. In my thirty-five years of work in corrections as a practitioner, I spent considerable time working to provide for the proper custody and care for all people sentenced to prison. This included the challenges of managing a diverse mixture of prisoners, many of whom were gang affiliated as well as a focus on the

2

mentally ill as a growing portion of the prisoner population during my career. I am experienced in sound correctional practice.

6.  Since my retirement I have served as an expert witness and/or correctional consultant for cases and disputes over 50 times in multiple jurisdictions—state, local and federal. I have been retained to evaluate and offer my opinions on a variety of issues in the correctional environment.

7.  Specifically, over the last few years, I have testified in the following cases:

*Coleman, et al. v. Brown, et al.*
        No. 2:90-cv-0520 LKK JMP P
        United State District Court, Eastern District of
        California,
        Testified, October 1, 2, 17 and 18, 2013

*Graves v. Arpaio*
        No. CV-77-00479-PHX-NVW,
        United States District Court of Arizona
        Testified, March 5, 2014

*Corbett v. Branker*
        No. 5:13 CT-3201-BO
        United States District Court, Eastern District of North
        Carolina, Western District
        Special Master appointment November 18, 2013
        Testified, March 21, 2014

*C.B., et al. v. Walnut Grove Correctional Authority, et al.*
        No. 3:10-cv-663 DPS-FKB,
        United States District Court for the Southern District
        of Mississippi, Jackson Division
        Testified, April 1, 2 and 27, 2015

*Fontano v. Godinez*
>No. 3:12-cv-3042
>United States District Court, Central District of Illinois,
>Springfield Division
>Testified June 29, 2016

*Doe v. Kelly*
>Case 4:15-cv-00250-DCB
>United States District Court for the District of Arizona
>Testified, November 14, 2016

*Braggs, et al. v. Dunn, et al.*
>No. 2:14-cv-00601-WKW-TFM
>United States District Court, Middle District of Alabama
>Testified, December 22, 2016, January 4, 2017, February 21, 2017 and December 5, 2017

*Wright v. Annucci, et al.*
>No. 13-CV-0564 (MAD)(ATB)
>United States District Court, Northern District of New York
>Testified, February 13, 2017

*Padilla v. Beard, et al.*
>Case 2:14- at-00575
>United States District Court, Eastern District of California,
>Sacramento Division
>Testified April 19, 2017

*Cole v. Livingston*
>Civil Action No. 4:14-cv-1698
>United States District Court, Southern District of Texas,
>Houston Division
>Testified, June 20, 2017

*Holbron v. Espinda*
>Civil No. 16-1-0692-04 RAN
>Circuit Court of the First Circuit, State of Hawai'i
>Testified, December 20, 2017

4

*Dockery v. Hall*
>No. 3:13-cv-326 TSL JMR
>United States District Court for the Southern District
>of Mississippi, Jackson Division
>Testified March 5-7, 2018

8.  Several of these cases involved issues similar to the current *Cody* litigation, specifically conditions of confinement, use of force and the disciplinary process. These cases are *Braggs v. Dunn* (Alabama); *Coleman v. Brown* (California); *C.B v. Walnut Grove* and *Dockery v. Hall* (Mississippi); *Graves v. Arpaio* (Maricopa County, Arizona); *Corbett v. Branker* (North Carolina) and *Cole v. Livingston* (Texas).

9.  Other cases[1] relevant to *Cody* from my prior expert and consulting work focused on conditions and issues in city and county jails where most of the prisoner population were pre-trial detainees. Some of these cases are *Graves v. Arpaio* and *Atencio v. Arpaio* (Maricopa County, Arizona); *Ananachescu v. County of Clark* (Washington); *Larry Heggem v. Snohomish County* and *Williams v. Snohomish County* (Washington); *Commonwealth of Virginia v. Reginald Cornelius Latson* (County of Stafford, Virginia); *C-Pod Inmates of Middlesex County Adult Correction Center, et al. v. Middlesex County* and *P.D. v. Middlesex County* (New Jersey); *Johnson v. Mason County* and *Dahl v. Mason County*

---

[1] Some of these cases involved trial testimony, others involved expert or consultant reports.

5

(Washington); *Fant v. City of Ferguson* (Missouri); and *Carruthers v. Israel* (Broward County, Florida).

10. Related consulting work has been performed for Sacramento County in California on behalf of the county sheriff and in Georgia for the United States Department of Justice.

11. A complete copy of my resume, detailing my work experience as a practitioner is attached as **Exhibit 1**. My compensation for work on this case is $175 per hour.

12. I previously authored an affidavit in this case focusing on the limitations placed on me during my inspection of the MSI on August 27, 2018 where I opined, "The limitations placed by Defendant's Counsel in this inspection impeded a full and proper inspection of the jail".[2] Despite those limitations, which included my request for private interviews with prisoners, I was able to witness and participate in attorney/client interviews with eight prisoners confined in the jail the day I inspected.

## II. Foundation for My Opinions

13. I have reviewed a large variety of documents in preparation for this report. Those documents include multiple MSI policies, the declarations of prisoners who have been confined in MSI, the files of the named plaintiffs, minutes of Inmate Council meetings, various inspections of the jails, use of force

---

[2] Vail Affidavit, August 30, 2018, page 5, #10

6

reports (UOF) and some surveillance videos of UOF events, incident reports and disciplinary records of multiple prisoners, grievances filed by prisoners as well as a number of other documents. A complete list of the materials I reviewed is attached to this report as **Exhibit 2**.

14. I also rely on my own substantial experience as a correctional administrator, including presiding over a statewide prison system for more than a decade, and my knowledge of other prison and jail systems that I gained during my career in corrections and as a consultant and expert witness.

15. My work on this matter is ongoing and my opinions are partial and preliminary, based on the available information I have reviewed to date. It is my understanding that additional documents and information may be forthcoming during the course of this litigation.

16. Based on the information I have reviewed, I am confident in the opinions contained in this declaration. I anticipate however that these opinions may be further developed and supplemented if more information becomes available.

17. Although I filed an affidavit describing the limitations of my inspection of the jail in August of 2018, I am confident from what I could see on that inspection and the extensive, although often incomplete, records produced in discovery in this case, I am confident in the accuracy of the opinions I have reached.

### III. Summary of Opinions

18. It is my opinion that MSI's policies, practices and performance create a substantial risk of harm to all MSI prisoners. The risk of harm is common to all MSI prisoners, and can be remedied by system-wide changes to their policies and in the way MSI manages its institutions.

19. The MSI policy regarding the use of force (UOF) is deficient and results in unnecessary and excessive use of force in approximately 40% of the incidents I have reviewed.

20. Like in UOF situations, in disciplinary hearings the MSI policy and practice also fails to account for the impact and prevalence of the mentally ill in their jail. The result is that force is sometimes used unnecessarily and prisoners are sometimes punished for exhibiting symptoms of their mental illness.

21. The MSI fails to meet national and international standards for the required opportunity for exercise.

22. The physical plant of the MSI has been in a serious state of disrepair, frequently resulting in the prevalence of insects and rodents, broken fixtures and inadequate heating and cooling systems. It appears that there are insufficient toilets, sinks and showers to accommodate the number of prisoners in some housing units.

23. Record keeping practices at the jail are abysmal. Records are often incomplete or simply missing. Keeping accurate and accessible records for any prison or jail is fundamental to standard and sound correctional practice.

24. The jail is extremely chaotic, which I was able to determine during my on-site inspection. Basic security procedures were either inconsistently or not enforced during my visit.

### IV. Use of Force

25. MSI's policy and practices fail to meet contemporary correctional standards and results in unnecessary and excessive use of force.

26. The ability and responsibility to use force in the correctional setting is one of the most profound and critical duties of corrections professionals everywhere. Putting one's hand on another human being in order to enforce compliance demands that when and how force may be used is articulated in detailed policy and in an after action review of each incident after force is used. The MSI policy (and therefore practice) fails in many respects and I have found no evidence of an adequate system of review after use of force events occur.

27. During my training by the Department of Justice, National Institute of Corrections (NIC) in the early 1990's, a model use of force policy was offered. I took that course as a Superintendent with my supervisor at the time. This course was offered by the NIC on multiple occasions and was attended by corrections officials from around the country. I have used that policy, and its subsequent updates, to inform my own decisions and the policies I signed as a correctional

9

illness and are placed in segregation, which may exacerbate their underlying condition.

### VI. Conditions of Confinement and Physical Plant Concerns

87. The conditions of confinement for prisoners in the MSI are abysmal. They are problematic in a number of ways, including the lack of opportunity for regular exercise; heating, cooling and ventilation concerns; rodent and insect infestation; toilets & fixtures, and basic sanitation.

*Recreation*

88. Prolonged denial of outdoor exercise violates both domestic and international correctional standards, and is harmful to inmates' physical and mental wellbeing. The lack of opportunity for regular exercise permeates the records made available and was confirmed in my interviews with prisoners.

89. The related ACA standard says:

> Inmates have access to exercise and recreation opportunities. When available, at least one hour daily is outside the cell or outdoors.[62]

90. The United Nations Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules) requires.

> Every prisoner who is not employed in outdoor work . . . have at least one hour of suitable exercise in the open air daily if the weather permits."[63]

---

[62] ACA CORE Jail Standards, 1-CORE-5C-01

[63] United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), 2015, Rule 23

39

- Officers stay in the hallway, not in the unit. It is not safe here.

- Prisoners have to put their arm through the food port or flood their cells to get the officers' attention.

150.   Based on my review of all the available material and my inspection of the facility, the MSI is a very poorly run correctional environment. Force is used unnecessarily, discipline relies on an over-use of segregation and the physical plant is in various states of disrepair. The result is that prisoners are at risk of harm on a regular and ongoing basis.

DATE: 9/27/19         _____
                      Eldon Vail