**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES CODY** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 4:17-cv-02707-AGF** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF ST. LOUIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT CITY OF ST. LOUIS'**
**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF ESI**

COMES NOW Defendant City of St. Louis ("City"), by and through its attorney Matt Moak, City Counselor for the City of St. Louis, and for City's Response to Plaintiffs' Motion to Compel Production of ESI states as follows:

On February 20, 2018, at the outset of this case and nearly 40 months ago, the parties discussed issues relating to the production of electronically stored information (ESI") pursuant to this Court's Order (Doc. 9 at 2). Counsel for the parties agreed that the production of ESI would be accomplished by way of PDF files, paper photocopies, or screen prints, with the *caveat* that, should the need to produce videos, conduct electronic email searches, or produce other material that could not practically be produced in PDF format, the parties would confer in an effort to facilitate production in a mutually agreeable format. The parties memorialized this agreement in their Joint Proposed Scheduling Plan. (Doc. 15 at 2, ¶ 3).

For *years*, discovery proceeded pursuant to the parties' agreement, with City primarily producing material by way of Bates labeled PDF documents electronically labeled with their Bates numbered range and, with limited exception, a description of the material contained in each file. For video files, excel spread sheets, and other material that could not be easily

converted to PDF, City produced such material in a mutually agreeable format – typically in native form. Consistent with the parties' agreement, when the time came to conduct electronic email searches, and following the very first round of email searches, the parties conferred and arranged for City to utilize a third-party cloud based electronic discovery platform, and much of the City's production in this case, consisting of a combined 25,701 pages of emails and attachments, was produced using this platform – accompanied by all electronic files in native format with all accompanying metadata.[1]

Sometime just before February 21, 2021, after nearly three years of contentious and voluminous discovery, during which City produced more than 100,000 pages of material in PDF format pursuant to the parties' agreement and without complaint, Plaintiffs claim they suddenly "determined that… the City produced thousands of pages of ESI lacking adequate metadata." (Doc. 177 at 1).[2] This claim, like others made by Plaintiffs in this case, lacks credibility.

Now, in apparent desperation to further extend discovery in this case and harass City, Plaintiffs take the absurd position that City should be made to undertake the impossible task of reproducing *all* of its enormous production in this case with custodial data and metadata. Setting aside, for a moment, the parties' agreement from the outset of this case and the incredibly

---

[1] The very first round of agreed email searched was conducted without the aid of the above referenced e-discovery platform, and the parties agreed that initial email production, consisting of just over 2,500 pages of PDF emails and attachments, would be produced without metadata due to technological limitation then faced by City. See Doc. 177-9 (memorializing agreement that metadata need not be produced). Prior to February 23, 2021, Plaintiffs only mentioned or requested metadata in the context of conducting electronic email searches. Notably, after the second round of email searches, City made available for pickup all native files and metadata for that (largest) search, but Plaintiffs did not pick it up for many weeks, and still did not pick it up for some time after defense counsel reminded Plaintiffs of its availability. *See* Doc. 177-9. This underscored Plaintiffs' apparent lack of interest in metadata production – even as it pertained to email searches, and makes their position now all the more absurd.

[2] It does not seem a coincidence that this so-called determination came after Plaintiffs' former lead counsel withdrew and Plaintiffs retained new counsel from DLA Piper (and ArchCity Defenders) – who were apparently unaware of the parties' agreement and mutual understanding with respect to the production of ESI. New counsel could perhaps be forgiven their ignorance of the parties' agreement before they were advised of it by defense counsel well before the filing of this motion. The same cannot be said of their conduct thereafter. Regardless, Plaintiffs' position is unsupported for the reasons set forth herein.

prejudicial delay in taking this contrary position, Plaintiffs' motion finds no support in law or fact.

Federal Rule of Civil Procedure 34(b)(1)(C) provides that a party propounding a request for production "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). To date, Plaintiffs have served City with *seven* separate requests for production. None specified the form or forms in which electronically stored information was to be produced pursuant to Federal Rule of Civil Procedure 34(b)(1)(C) and none requested metadata. Plaintiffs do not contend otherwise. Because no form of ESI production was specified by Plaintiffs in any of their seven requests for production (presumably because the parties had agreed to production in PDF format, with limited exceptions set forth above), City never had the opportunity to object to production in any particular form pursuant to Rule 34(b)(2)(D). As this Court is well aware, prior to the instant motion and over the years, Plaintiffs filed four motions to compel. None sought the production of materials in any particular electronic format. None sought metadata.

Pursuant to Rule 34(b)(2)(E)(i), where a request for production does not specify the form or forms for producing ESI, then production may be made "in a reasonably usable form." City's PDF production, which was agreed to by the parties at the outset of this case and until recently, is in a "reasonably usable form." *See e.g., Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 1:17-cv-73, 2020 U.S. Dist. LEXIS 211001, at *16-18 (D.N.D. Nov. 12, 2020) (holding that PDF production without metadata met the requirements of Rule 34 because the PDFs could be combined and searched electronically). Here, City's production, while understandably imperfect, is in a reasonably useable form. (See Ex. A, Sample Screenshot of Files Produced). All files are

3

Bates labeled, the vast majority of files include a detailed description of their contents, and all PDF files may be electronically combined and electronically searched using text-recognition.

Plaintiffs' position that Rule 34 requires the production of all metadata and files in native format without a format of production having been requested is not supported by the text of Rule 34 or by applicable precedent. *See Ackerman v. PNC Bank*, No. 12-CV-42 (SRN/JSM), 2014 U.S. Dist. LEXIS 8301, at *5-6 (D. Minn. Jan. 23, 2014) (rejecting argument that Rule 34 requires the production of underlying metadata); *Diesel Mach., Inc. v. Manitowoc Crane Grp.*, No. CIV 09-4087-RAL, 2011 U.S. Dist. LEXIS 15780, at *8-9 (D.S.D. Feb. 16, 2011) (holding, *in a case where the parties agreed to and the Court ordered native format production at the outset*, that the defendant need not produce in native format any documents already produced in PDF); *Stormo v. City of Sioux Falls*, 2016 U.S. Dist. LEXIS 20278, 2016 WL 697116 (D.S.D. Feb. 19, 2016) (denying motion to compel production of metadata); *Copperhead Agric. Prods., Ltd. Liab. Co. v. KB AG Corp., Ltd. Liab. Co.*, No. 4:18-CV-04127-LLP, 2019 U.S. Dist. LEXIS 215212, at *25 (D.S.D. Dec. 10, 2019).

Notably, this Court denied a motion to compel under similar circumstances and held that, "[l]acking a specific request to the contrary, courts regularly find searchable PDF documents to constitute a reasonably usable form." *Davenport v. Charter Communs., LLC*, No. 4:12CV0007 AGF, 2015 U.S. Dist. LEXIS 34903, at *6-7 (E.D. Mo. Mar. 20, 2015) (citing *Lutzeier v. Citigroup, Inc.*, No. 4:14—cv—00183—RLW, 2015 U.S. Dist. LEXIS 11727, 2015 WL 430196, at *8 (E.D. Mo. Feb. 2, 2015) (holding that a defendant's production complied with Rule 34 because the PDF files were searchable); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008) (finding a PDF document to be in a reasonably usable form under Rule 34, when the request for production did not specify)).

4

In light of the above precedent, the lack of any request for production in a specified format from Plaintiffs made pursuant to Rule 34, and the parties' agreement set forth above, Plaintiffs' eleventh-hour reversal by way of their accusatory and impertinent motion to compel can only be said to constitute bad faith.

Indeed, Plaintiffs' position that metadata and all files in native format need be produced despite the lack of any request for production in a specified format made pursuant to Rule 34 is further undercut *by Plaintiffs' own production* in this case – which consists almost exclusively of non-descript Bates labeled PDF documents lacking metadata or production in native format. (*See* Ex. B, Example Screenshots of Plaintiffs' Production). The PDF files produced by Plaintiffs, numbering well over 100,000 pages of material, include photographs converted to PDF lacking metadata that were not produced in native format (*e.g.* CODY ET AL_006073 through 006436), along with a host of emails and other ESI converted to PDF and not produced in native format.[3] For Plaintiffs to suggest that the rules (as they incorrectly view them) apply to City but not to them, and to further suggest that City should be sanctioned for its production while ignoring their own, is the height of hypocrisy.

For these reasons alone, Plaintiffs' Motion to Compel should be denied. In any event, and to the extent this Court takes its analysis further, Plaintiff motion should be denied because Plaintiffs fail to articulate any special need for *all* metadata for every document produced in this case and fail to show that its production is proportional to the needs of this case – particularly where the burden of City reproducing voluminous prior productions, years later, and producing metadata and native files for everything produced to date in this case is incredible. The practical difficulties and burden imposed upon City and Corrections staff in fulfilling Plaintiffs'

---

[3] Unlike City's production, the vast majority of Plaintiffs' produced PDF files do not include in their file name any description of their contents.

prodigious discovery demands where materials are kept by various Corrections personnel in a variety of different formats and locations (while often being printed and utilized in day-to-day operations before being stored) is well-documented in the record before the Court. (*See*, *e.g.*, Docs 134, 142). City attempted to explain the difficulties associated with Plaintiffs' belated demand prior to the filing of this motion:

> I hope you understand the practical difficulties we face here. Often, the employee from whom Corrections' custodian obtains material does not have the material in native format. And, if it appears the document was created on a computer, the employee often does not know exactly who originally created it or on what computer. To direct that already burdened Corrections' employees investigate, track down, and produce in native format everything the City produces from here on out would be unduly burdensome and not proportional to the needs of the case.

(Doc. 177-7). The same applies to retrospective reproduction, except the difficulties are increased exponentially. Years have passed. Various Corrections personnel and counsel in this case have left their positions for other employment. Memories have faded. And, while Plaintiffs generally assert that metadata is "critical" to this case (Doc. 177), it is not.[4] Assuming it were, then, as in *Davenport*, Plaintiffs would have been well advised "to specify a particular format in their request[s] for production…" *Davenport v. Charter Communs., LLC*, No. 4:12CV0007 AGF, 2015 U.S. Dist. LEXIS 34903, at *8 (E.D. Mo. Mar. 20, 2015). Plaintiffs failed to do so. This is not the City's fault. Moreover, Plaintiffs' fanciful story that they only "determined" metadata was missing for "thousands of documents" after *years* of discovery belies Plaintiffs' assertion that such metadata is "critical" to their case. More likely, at the tail end of protracted discovery, Plaintiffs retained new counsel who wished Plaintiffs had done things differently. But,

---

[4] Plaintiffs assert that metadata is "critical… to verify the authenticity of documents, establish a timeline of events and document creation, to determine what individuals created and possessed the documents, and to identify what individuals had knowledge of the documents for purposes of depositions." (Doc. 177 at 7). Not so. The vast majority of reports and documents are dated. Most critical documents say who authored them. For those that do not, taking a deposition or two would very likely (and efficiently) provide the information Plaintiffs seek. Moreover, many of the native format files and much of the metadata Plaintiffs claim was "improperly withheld" was, in fact, produced along with City's email production. The position Plaintiff have taken that depositions cannot proceed without metadata for every report and document produced in this case is ridiculous

taking Plaintiffs at their word, they were grossly negligent where they failed to address this issue when they should have: three years ago. Now is too late, and City cannot be made to bear the burden of Plaintiffs' regret.

Finally, City must note that it has *not* "agreed to produce custodial metadata… for documents produced after February 23, 2021." (Doc. 177 at 5).[5] As set forth above, none of Plaintiffs' seven requests for production specified the form or forms in which electronically stored information was to be produced. Fed. R. Civ. P. 34(b)(1)(C). Thus, City is not required to produce any material with metadata or in any specified form (other than PDF) and never agreed to. City did reasonably offer, only *if* it would fully resolve the parties' dispute, to take certain measures moving forward – including requesting that, while gathering materials, Corrections personnel provide those materials in native format if it is readily available to the individual from whom the material is collected. Plaintiffs rejected this reasonable offer, and this rejected offer imposes no obligation upon City. Time and again in this case, City has undertaken to produce materials it was under no obligation to produce. Not this time. Here, Plaintiffs chose to reject the City's offer, and should not be rewarded with what they were never entitled to for thereafter filing this frivolous motion.

Plaintiffs request attorneys' fees "for litigating this motion, under Rule 37(c)(5)." (Doc. 177 at 8). For the reasons set forth above, they are not entitled to attorneys' fees. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii-iii). To the contrary, City requests that the Court award it reasonable attorney's fees for the time spent researching and responding to Plaintiffs' frivolous motion. The record in this case is replete with examples of similar conduct by Plaintiffs warranting the imposition of this sanction. *See, e.g.,* Docs. 40, 41 (Plaintiffs sought to compel the production of literally

---

[5] Elsewhere in their motion, Plaintiffs assert that "the parties are aligned with regard to an agreement to produce [all] files with metadata or in native format after August 2020." (Doc. 177 at 5). This is also not the case.

everything "relevant" and to sanction City without having previously discussed specific requests, interrogatories, or objections thereto with counsel for City as required, and further sought to compel production of both material that had already been produced *and material they had not yet requested*); Doc. 142, p. 2 fn. 4 (Plaintiffs again accused City of withholding material that had already been produced); Docs. 157, 158, 161 (Plaintiffs claimed MSI temperatures were freezing and filed a motion for "emergency" inspection of MSI temperatures where the temperatures were, in fact, quite comfortable). Enough is enough. Pursuant to its inherent authority and Federal Rule of Civil 37(a)(5)(B), City respectfully requests that the Court award City attorneys' fees incurred in opposing this motion, in an amount to be set forth in a subsequently filed motion and affidavit. *See* Fed. R. Civ. P. 37(a)(5)(B) (providing that, where a motion to compel is denied, the Court may award the party opposing the motion attorneys' fees).

After years of discovery and exhaustingly unnecessary disputes, City looks forward to addressing the *merits* of Plaintiffs' claims. In the short meantime, Plaintiffs' motion to compel should be denied.

WHEREFORE, and for all the foregoing reasons, City respectfully requests that Plaintiffs' Motion to Compel and for Sanctions be denied, that City be awarded its attorneys' fees in opposing this motion, and for that the Court grant City and such other and further relief the Court deem fair and appropriate.

Respectfully submitted,

MATT MOAK,
CITY COUNSELOR

By: /s/ Andrew D. Wheaton
Andrew D. Wheaton   #65269MO
Associate City Counselor
City Hall, Room 314
St. Louis, MO 63103
314.622.4594
wheatona@stlouis-mo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all counsel of record.


/s/ Andrew D. Wheaton