UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CODY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:17-CV-2707 AGF |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This putative class action is before the Court on three discovery-related motions: (1) Plaintiffs' motions to compel Defendant's production of certain electronically stored information ("ESI") in native format or with metadata (ECF No. 176); (2) Plaintiffs' motion for sanctions against Defendant for spoliation of evidence and other discovery violations (ECF No. 179);[1] and (3) Defendant's motion to compel discovery responses (ECF No. 197). For the following reasons, the Court will deny all three motions.

## BACKGROUND

Plaintiffs filed this action under 42 U.S.C. § 1983 on behalf of themselves and all others similarly situated against the City of St. Louis, Missouri ("City"), alleging various dangerous, unsanitary, and inhumane conditions inside the City's Medium Security

---

[1] As Plaintiffs correctly note, the City's response (ECF No. 211) to Plaintiffs' motion for sanctions exceeded the page limitation set forth in Local Rule 4.01. The Court reminds the City that it must seek leave of Court before filing submissions that exceed the Court's page limitation.

Institution ("MSI").  Plaintiffs, who were held at MSI at various times in 2017, seek monetary damages, as well as declaratory and injunctive relief.

Plaintiffs filed suit on November 13, 2017.  In their Joint Proposed Scheduling Plan filed on February 20, 2018, the parties stated: "The parties have discussed the exchange of [ESI] and have agreed that the initial production of [ESI] can be accomplished with PDF files, paper photocopies, or screen prints. Should the need to produce other [ESI] arise, the parties will confer in an effort to facilitate production in a mutually agreeable format."  ECF No. 15.

Thereafter, the parties engaged in discovery and jointly requested to extend the schedule set forth in the Case Management Order several times.  On September 6, 2018, Plaintiffs filed what would be the first of many motions to compel discovery and for sanctions.  ECF Nos. 40 & 41.  The Court held a hearing on these motions on November 6, 2018, and the following day, the Court granted Plaintiffs' motion to compel in part and denied Plaintiffs' motion for sanctions.  ECF No. 68.  During the hearing and in its Order, the Court instructed the parties to confer to attempt to narrow the scope of Plaintiffs' discovery requests and further stated: "As for an Electronically Stored Information (ESI) search protocol, the parties will continue to work together to attempt to agree on a protocol and explore technologies available to limit the search results."  *Id.*

On May 24, 2020, Plaintiffs filed another motion to compel and for sanctions, the Court held another hearing, and the Court again granted the motion to compel in part and denied the motion for sanctions.  ECF No. 132.  Specifically, on July 17, 2020, the Court ordered that the City produce within 45 days certain missing documents that included

2

City Department of Health inspection reports, other inspection reports, and maintenance records for MSI.[2]  The Court further ordered that, for any documents that could not be produced, the City provide an affidavit or sworn declaration by a person with knowledge as to why the documents could not be produced, including: (1) If a document was created but subsequently destroyed, the date and reason for the destruction of the document; (2) If the document was created but is now missing, the efforts taken to locate the missing document; (3) If the document was never created, or there is another unidentified reason for being unable to produce the document, a description of that reason.  ECF No. 136.

On August 7, 2020, the City moved to stay the case, noting that a new City Ordinance, passed on July 17, 2020, "direct[ed] the Commissioner of Corrections to begin the process of closing the [MSI] as a detainee holding facility," and therefore increased the likelihood of settlement.  *See* ECF No. 1338.  On August 18, 2020, Plaintiffs filed an opposition to Defendant's motion, stating that Plaintiffs agreed to a 90-day extension of the current Case Management Order deadlines to permit the parties to engage in settlement negotiations, but that Plaintiffs did not agree to stay the deadline for Defendant's compliance with this Court's July 17, 2020, Order.  ECF No. 141.

Thereafter, on August 28, 2020, the City filed a "Response to the Court's July 17, 2020 Order" (ECF No. 142), stating that, as of August 28, 2020, it had fully complied

---

[2]  The City had already produced several of these types of documents for the relevant time frame, but Plaintiffs compiled into a table documents from certain time periods that were missing.  The City did not contest the relevance of these documents, which Plaintiffs asserted were necessary to show the systemic nature of the unconstitutional conditions at MSI.

3

with the Court's Order granting Plaintiffs' motion to compel. In its filing, the City described the details of its compliance, attached affidavits signed by City officials and other evidence in support thereof, and again asked that its motion to stay be granted. Plaintiffs did not timely respond to the City's filing.

The City attached to its August 28, 2020 Response an affidavit of Jamie Lambing, the records retention supervisor for the City's Division of Corrections.  Lambing attested that, from the outset of the case, she worked with Corrections staff to collect and produce all requested material for this lawsuit, including contacting all safety officers that worked at MSI from 2012[3] to the present to search for and produce any inspection records; searching for and producing all responsive "constituency Service Unit" documentation such as inmate complaints, dorm representative meeting notes, and maintenance requests; requesting that the Social Service unit personnel search for and produce all responsive dorm representative meeting notes; and searching for and producing responsive maintenance records, including work orders, maintenance requests, and status sheets. *See generally* ECF No. 142-15.

Lambing attested that, in speaking with a current safety officer, she learned that there were days and weeks in which inspections were not taken due to scheduling conflicts, but that the specific dates of these missed inspections were not documented and are therefore unknown. *Id.* ¶ 7. Lambing further attested that a past MSI safety officer,

---

[3]  The parties agree that the relevant time period for the purpose of discovery begins on November 13, 2012 and, in light of Plaintiffs' request for classwide injunctive relief, continues through the present.

4

Jermanda Adams, stored some inspections electronically on flash drives to take with her when she transferred to the St. Louis City Justice Center.  According to Lambing, one of these flash drives was defective, and the documents saved on it were lost, but Adams otherwise provided all responsive materials in her possession to Lambing.  *Id.* ¶ 8.  It is unclear from Lambing's affidavit or the record generally what volume, date, or type of inspection data was stored on the defective flash drive and whether any of such data was produced to Plaintiffs in other forms.[4]

Next, Lambing attested that "[o]n December 6, 2017, the Chief of Security records for the Division of Corrections from 2012 were shredded" pursuant to an internal five-year document retention schedule.  According to Lambing, these records included end-of-shift reports, suicide watch records, post assignments, key control records, inmate counts, and shakedown records.  Lambing attested: "While these are the only categories of records I know are generally included in Chief of Security Records, I cannot say with certainty whether or not any responsive materials were included amongst the Chief of Security Records shredded on December 6, 2017."  Lambing further attested that, in January of 2018, she was advised to halt shredding of Corrections documentation and that, except for the possibility that some responsive materials were shredded on December 6, 2017, she has no knowledge or reason to believe that any responsive materials were destroyed.

---

[4]    The City contends in its opposition to the motion for sanctions that any inspection reports contained on the defective flash drive "were presumably submitted in paper format to the MSI Superintendent and Chief of Security" and therefore likely produced to Plaintiffs.  ECF No. 211.

5

The City also attached to its August 28, 2020 Response an affidavit of Craig Schmid, records custodian for the City's Department of Health.  Schmid attested that he worked with relevant Health Department staff to search for and produce responsive discovery for this lawsuit and that he has produced all such materials, except that "[p]aper records over five years old are destroyed per municipal standards for recordkeeping pursuant to internal Departmental policy and RMo Chapter 109."  ECF No. 142-16 at ¶ 4.  Schmid attested that he had no knowledge or reason to believe that any responsive materials were destroyed outside of these standards.  *Id.*

Finally, the City attached to its August 28, 2020 Response the affidavit of Emma Harris, the accounting coordinator for the City's Division of Corrections.  Harris attested that she searched for and produced vendor contracts and budget records, including disbursement vouchers, related to MSI and that she had no knowledge or reason to believe that any responsive materials were destroyed.  However, Harris further stated that because of "facility problems including flooding of our records department on March 19, 2020 and the various locations and formats responsive materials have been stored over the years, and the fact that I did not create the vast majority of the responsive materials, it is impossible for me or anyone to attest with certainty whether or not materials sought by Plaintiffs that have not been produced were ever created."  ECF No. 142-at at ¶ 8.  The other affiants noted above made a similar statement in their affidavits.

On September 15, 2020, the Court granted the City's motion to stay this action for 90 days to permit the parties to engage in settlement negotiations.  ECF No. 143.  The parties thereafter jointly moved to extend the stay for an additional 45 days, which the

6

Court granted.  ECF Nos. 149 & 150.  On January 28, 2021, the parties jointly moved to lift the stay following failed settlement negotiations, and on February 1, 2021, the Court granted that motion, lifted the stay, and set new deadlines for the remainder of this litigation.  *See* ECF No. 155.

After the stay was lifted in February of 2021, Plaintiffs reviewed the City's prior document productions and determined that the City had produced "thousands of pages of ESI lacking adequate metadata," including information identifying the custodian, recipient, and date of the documents.  ECF No. 177 at 4.  Plaintiffs then demanded that the City reproduce native format or with adequate metadata its past productions of ESI and that the City produce ESI in native format or with adequate metadata going forward.  As part of the parties' attempts to resolve the issue without Court intervention, the City offered to provide ESI in native format going forward if such format was reasonably available to the individual from whom ESI was collected.  However, the parties failed to reach agreement with respect to the City's proposal.

## ARGUMENTS OF THE PARTIES

**Plaintiffs' Motion to Compel ESI in Native Format or With Metadata**

Plaintiffs seek an order compelling the City to reproduce prior ESI productions and to produce all future ESI productions in either native format or accompanied by requisite metadata that identifies the custodians, recipient, and date of the document.  Plaintiffs contend that, where no party agreement or Court order exists specifying the form of production, ESI must be produced in a reasonably usable form.  According to Plaintiff, metadata is required to make the City's ESI productions reasonably usable and

7

the need for metadata is inherent in any request for ESI.  Plaintiffs assert that the City has provided metadata for some but not all of its ESI productions.  Plaintiffs contend that there are "thousands of documents" produced by the City for which Plaintiffs are "unable to identify time, date, author, or recipient." ECF No. 209 at 8.

The City responds that the parties agreed at the outset of the case that ESI would be produced in PDF files, paper photocopies, or screen prints and that if the need arose, they would confer regarding other mutually agreeable formats.  The City further contends that discovery proceeded pursuant to this agreement for years; that the City produced certain files that could not easily be converted to PDF, such as video files and Microsoft Excel spreadsheets, in native format; that the parties agreed to certain productions, such as the City's search for and production of a certain group of emails using a third-party e-discovery platform, in native format with accompanying metadata; that the City otherwise produced ESI in PDF format pursuant to the parties' agreement and without complaint until very recently when Plaintiffs changed counsel; and that Plaintiffs themselves have produced ESI in PDF format without metadata.[5]

The City further argues that Plaintiffs did not specify in their numerous requests for production of documents or in their numerous prior discovery-related motions in this Court their desire for metadata and that, had they done so, the City would have objected because the relevant discovery in this case is stored by City officials in multiple different

---

[5]     Plaintiffs reply that, at least part of Plaintiffs' ESI production was the City's own documents that Plaintiffs simply reproduced to the City in PDF form with proper Bates stamping.

department, different formats, and different locations.  The City contends that forcing it to reproduce its voluminous prior productions, years later, in native format or with metadata is incredibly and unduly burdensome.  Finally, the City argues that its past productions of ESI are in a reasonably usable form in that they are Bates labeled, electronically searchable, the "vast majority" of documents are dated, and "most critical documents" identify the author.  ECF No. 192 at 2-4, 6 n.4.

**Plaintiffs' Motion for Sanctions**

Plaintiffs assert that the City has spoliated evidence by committing the following acts after Plaintiffs commenced this litigation:  (1) shredding the MSI Chief of Security records for the year 2012, (2) destroying City Health Department records pursuant to the five-year retention policy, (3) failing to back up Adams's defective flash drive containing MSI safety officer inspection reports; (4) failing to promptly notify Plaintiffs of the Match 20, 2020 flood or allow Plaintiffs an opportunity to attempt to salvage the records.[6]

Plaintiffs contend that the loss of these records have prejudiced them because, for example, the shredded Chief of Security records likely included relevant maintenance orders documenting conditions at MSI; the Health Department may have destroyed relevant records of its health inspections of MSI; the defective flash drive likely

---

[6] The Court will disregard Plaintiffs' purely speculative suggestion that the City may have fabricated the flood.  Plaintiffs also contend that MSI experienced another water main break in December of 2019, but Plaintiffs' motion does not appear to seek relief based on any loss of documents from the December 2019 incident.

9

contained relevant inspection reports; and the documents destroyed in the flood may have contained relevant material such as vendor contracts and disbursement vouchers.

Plaintiffs further assert that the City violated its discovery obligations by failing to perform a reasonable inquiry for responsive information and, in particular, for relying on non-lawyer custodians to self-collect and produce documents without adequate supervision, misrepresenting the scope of its investigation and whether it was withholding responsive documents, and failing to adequately maintain responsive documents.

Plaintiffs seek the following sanctions:

A. Entry of an Order prohibiting the City from introducing or relying upon any evidence pertaining to (i) materials that would have been included in the Chief of Security's records; (ii) Health Department records that were shredded; (iii) vendor contracts and disbursement vouchers; and (iv) materials identified in Plaintiffs' table of missing discovery (ECF No. 132-3) and February 23, 2021 letter (Ex. 1), in support of any motion or at trial.

B. A presumption that the materials listed above in Section A are favorable to Plaintiffs' case.

C. A presumption that materials contained in Ms. Jermanda Adams' lost USB drive are unfavorable to the City's case.

D. Issuance of a mandatory adverse inference instruction to the jury regarding the materials listed above in Sections A and C.

E. Entry of an Order sanctioning the City Counselor's office and awarding Plaintiffs attorneys' fees and costs incurred as a result of their discovery related misconduct.

F. An award of attorneys' fees to Plaintiffs for litigating this motion.[7]

---

[7] Plaintiffs also seeks a stay of the June 1, 2021 discovery deadline, but the Court has addressed that request by separate Order.  *See* ECF No. 203.

10

ECF No. 180 at 25.

The City responds that Plaintiffs have wholly failed to establish either bad faith or prejudice as required to warrant sanctions. The City argues that the shredded Chief of Security records included, at worst, approximately three weeks' worth of records[8] from the nine-year time frame included in Plaintiffs' discovery requests. The City further contends that these records consisted of largely irrelevant documents that did not include maintenance orders and that maintenance records for the 2012 time period were in fact made available for inspection and copying by Plaintiffs' counsel.[9]

As to the Health Department records, the City contends that it did communicate to the Health Department in February of 2018 the need to preserve records dating back to 2012 and that the City in fact produced relevant Health Department records with its initial disclosures and supplemented such production through the present. Thus, the City contends that no relevant Health Department records were destroyed, notwithstanding the five-year retention policy. The City further asserts that persons with knowledge of any Health Department inspections are identified in the documents produced, and there is no reason why Plaintiffs cannot depose those persons regarding any purportedly missing information.

---

[8]     As noted above, the parties agree that the relevant time period for purposes of discovery begins on November 13, 2012 and because the Chief of Security records were shredded pursuant to the City's five-year retention schedule, the City contends that only records dated through December 6, 2012 (five years before the December 6, 2017 shredding date) would have been shredded.

[9]     In their reply brief, Plaintiffs argue that any production of maintenance records for the year 2012 was incomplete.

11

Regarding the defective flash drive, the City contends that any inspection reports contained on the drive were likely produced to Plaintiffs in other forms and, in any event, likely mirrored the numerous other similar reports produced to the City. As to documents damaged in the March 2020 flood, the City argues that Plaintiffs have known about the issue since the City's disclosure in August of 2020 and waited several months after the stay in this case was lifted to raise the issue in this Court. The City further contends that it brought in a third-party remediation company on an emergency basis to remediate the damage and that any minimally relevant vendor contracts damaged by the flood could be obtained from other sources, such as the vendors.

Finally, as to Plaintiffs' claims regarding the City's allegedly inadequate supervision of document production or misrepresentations regarding the scope of such production, the City contends that Plaintiffs' claims are plainly refuted by the record.

**City's Motion to Compel**

The City, in turn, has moved to compel from Plaintiffs full responses to four requests for production to which Plaintiffs responded "subject to and without waiving" certain objections; amended interrogatory responses and objections with requisite signatures of Plaintiffs and/or their counsel that were missing from prior responses; Plaintiffs' medical records or, alternatively, signed authorizations for disclosure of their medical records from health care providers; and supplemental information from the named Plaintiffs in response to certain of the City's interrogatories.

In response, Plaintiffs assert that the City has failed to meet and confer pursuant to Local Rule 3.04 with respect to these issues prior to bringing its motion and that, had they

12

done so, the issues could have been resolved. In any event, Plaintiffs contend that the City's motion is now moot because, as Plaintiffs already represented to the City: Plaintiffs have withheld no responsive, non-privileged information on the basis of any of the objections to which their discovery responses were subject; Plaintiffs will be submitting updated responses that formally withdraw their "subject to" objections; Plaintiffs will send the City signed authorizations for release of medical records on behalf of each of the named Plaintiffs; and Plaintiffs will send the City supplemental interrogatory responses with the requisite signatures as requested by the City.

Both parties seek an award of attorneys' fees for litigating their respective motions.

## DISCUSSION

## Plaintiffs' Motion to Compel ESI in Native Format or With Metadata

Both Federal Rule of Civil Procedure 26(f) and this Court's January 16, 2018 Order Setting Rule 16 Conference (ECF No. 9) required the parties discuss during their discovery conference at the outset of the case any issues relating to discovery of ESI, including the form or forms in which it should be produced. *See* Fed. R. Civ. P. 26(f)(3)(C); ECF no. 9 at 2. The Court also routinely cautions parties during Rule 16 conferences that they must specifically discuss the format for ESI production before requesting such production and that failure to do so may result in the Court either denying or requiring cost-sharing before ordering a second production of ESI in a different format.

The parties here apparently complied with this requirement, at least initially. As reflected in their Joint Scheduling Plan (ECF No. 15) filed on February 20, 2018, the parties agreed to a format of ESI production that did not require production in native format or with metadata. The parties also agreed to confer on a mutually agreeable format, as needed, going forward. One year later, in September of 2018, the Court reminded parties of the need to agree on an ESI search and production protocol. Although Plaintiffs were represented by different attorneys at different points in this case, both sides have been consistently represented by experienced litigators that could and should have reached agreement on the format of ESI production in the nearly three years this case was pending before it was stayed in September of 2020.

Nevertheless, it appears that the parties never reached a final agreement as to the format of ESI production. To make matters worse, notwithstanding their lack of agreement, Plaintiffs did not specify a format in any of their numerous requests for production or in any of their numerous motions to compel filed in this Court before the case was stayed.

Federal Rule of Civil Procedure 34(b) permits parties to specify the form or forms in which ESI is to be produced and provides that "[i]f a request does not specify a form for producing [ESI], a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(1)(C), 34(b)(2)(E)(ii). The Rule further specifies that "[a] party need not produce the same [ESI] in more than one form." *Id.* 34(b)(2)(E)(iii).

14

Neither the Rule nor the Advisory Committee Notes specify whether metadata must be produced for ESI to be considered reasonably usable. However, absent a specific request to the contrary or special circumstances not at issue here, courts regularly find that searchable PDF documents constitute a reasonably usable form.[10] *See, e.g.*, *Bobba v. Patel*, No. CV 3:19-30171-MGM, 2021 WL 1907460, at *3 (D. Mass. May 12, 2021); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008).

Here, the City produced ESI in the format reflected by the parties' initial agreement without objection by Plaintiffs, for years before this case was stayed. And Plaintiffs do not dispute that they, too, have produced ESI to the City in non-native format and without metadata. If Plaintiffs desired another format, they could and should have discussed their desire with the City, included it in their requests for production, and/or raised the issue with the Court in any of their prior discovery-related motions. Because they did not, the Court will deny their motion. The Court simply will not require that the City reproduce all previously produced ESI in a different format.

However, the Court will direct Plaintiffs to provide a limited list of particular documents that Plaintiffs believe are critical to this litigation and for which Plaintiffs are

---

[10]   The Sedona Principles also state that requesting parties should not demand production of ESI with metadata if there is no practical use for it or if it does not materially aid in the discovery process. *See* 19 Sedona Conf. J., The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, p. 173 (3d ed. 2018).

indeed unable to identify the date, author, and/or recipient.  The parties should then meet and confer pursuant to Local Rule 3.04 to attempt to reach agreement regarding (1) the production of metadata with respect to these previously produced documents and (2) the production of any remaining ESI in native format or with accompanying metadata going forward.  If the parties fail to reach agreement, Plaintiffs may bring a renewed motion.  However, the Court warns Plaintiffs that, depending on the volume of any previously produced documents at issue, the importance of such documents to Plaintiffs' legal claims, and the time and expense involved in producing metadata with respect to such documents, the Court may require Plaintiffs to bear some or all of the cost of any reproduction of ESI in a different format.

**Plaintiffs' Motion for Sanctions**

> Federal Rule of Civil Procedure 37(e) provides:
>
> If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  A court's inherent power also includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process."

16

*v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991); *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 750 (8th Cir. 2004).

There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence. *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267 (8th Cir.1993); *Stevenson,* 354 F .3d at 748. Moreover, "[t]he ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). Although an explicit finding of bad faith is not required when a party destroys evidence after litigation has commenced, *Stevenson,* 354 F.3d at 749–50, "where there is no evidence of intentional destruction of evidence to suppress the truth, then the district court also acts within its discretionary limits by denying sanctions for spoliation of evidence." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010).

Plaintiffs have shown neither prejudice nor an intent to suppress the truth. The shredded Chief of Security records were undisputedly limited to approximately three weeks' worth of potentially relevant documents from the very beginning of the parties' agreed-upon discovery timeframe. There is no reason to believe that such documents would be more than marginally important to the named Plaintiffs' claims, which are based on MSI's conditions as of 2017, or to the putative class claims, which seek injunctive in addition to monetary relief. Nor is there any reason to infer that the documents would be of a substantially different character than the approximately nine years' worth of similar records that the City has produced. *See Gallagher*, 619 F.3d at 844 "[T]here is no basis for inferring that the missing emails would be of a different

17

character than the emails already recovered and produced. Therefore, we agree that Appellants have not demonstrated the requisite prejudice.").

The same is true with respect to the other categories of documents allegedly destroyed by the City. There is no evidence as to the volume or contents of documents that may have been lost as a result of the Health Department's five-year document retention policy; the defective flash drive belonging to an MSI safety officer; or the March 2020 flood. However, nothing in the record suggests that these documents were especially critical to the litigation or contained information unavailable from other sources, particularly in light of the roughly nine years' worth of similar documents already produced to Plaintiffs.

Nor have Plaintiffs shown that the City acted in bad faith or with intent to suppress the truth. At worst, Plaintiffs' motion contends that there are gaps in the City's production, some of which resulted from the City's failure to more promptly implement a litigation hold and others from events outside of the City's control. Without discounting the importance of prompt litigation holds, the Court does not believe that the gaps in production alleged here warrant sanctions.

Plaintiffs admittedly have access to voluminous amounts of similar discovery from both the City and third parties that, according to Plaintiffs, demonstrate the poor conditions of MSI over the relevant time period. Plaintiffs have offered no evidence, circumstantial or otherwise, that the allegedly missing records would be anything other than cumulative.

Finally, the Court declines to impose sanctions resulting from Plaintiffs' claims of other Rule 26(g) violations. Upon careful review of the record, it appears that the various City personnel charged with collecting and producing documents have performed their duties diligently. Although the Court encourages counsel in all cases to closely supervise the collection of ESI and other documents by relevant custodians, any deficiency on the part of the City in this respect is not severe enough to warrant sanctions.

**City's Motion to Compel**

The City's motion will be denied without prejudice, pursuant to Local Rule 37-3.04(A), which states that the Court will not consider any motion related to discovery and disclosure unless the motion contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel are unable to reach an accord. Pursuant to Local Rule 3.04(A), the statement must recite the date, time, and manner of such in-person or telephone conference, and the names of the individuals participating therein, or must state with specificity the efforts made to confer with opposing counsel.[11]

Finally, in light of the particularly contentious and lengthy history of discovery in this case, the Court wishes to remind the parties of both the letter and spirit of Local Rule 3.04 and Federal Rule of Civil Procedure 26, which together urge the parties and their counsel to work cooperatively and in good faith to tailor discovery to the needs of the

---

[11] In any event, the City's motion also appears to be moot now that Plaintiffs have supplemented their discovery responses.

case and to save their most zealous advocacy for those issues necessary to resolve the merits of the legal claims.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to compel and motion for sanctions, and Defendant's motion to compel, are all **DENIED**. ECF Nos. 176, 179 & 197.

**IT IS FURTHER ORDERED** that Plaintiffs shall promptly provide to Defendant a limited list of particular documents that Plaintiffs believe are critical to this litigation and for which Plaintiffs are unable to identify the date, author, and/or recipient. The parties shall meet and confer in good faith and pursuant to Local Rule 3.04 to attempt to reach agreement regarding (1) the production of metadata with respect to these previously produced documents and (2) the production of any remaining electronically stored information in native format or with accompanying metadata going forward.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of June, 2021.