**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES CODY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:17-cv-2707-AGF |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO THE COURT'S ORDER TO SHOW CAUSE ON THE ISSUE
OF MOOTNESS**

On July 6, 2021, the Court ordered Plaintiffs to show cause as to why their declaratory and

injunctive relief claims should not be dismissed as moot.  (ECF No. 233, at p. 2.)  On July 23,

2021, Plaintiffs filed their response (ECF No. 243), and on August 4, 2021, Defendant City of St.

Louis (the "City") filed its reply brief (ECF No. 253).  Plaintiffs now file their reply brief, per the

Court's order to show cause.  (ECF No. 233, at p. 2.)

In the weeks since Plaintiffs filed their response to the Court's order to show cause, the

City has transferred approximately 120 inmates from the St. Louis City Justice Center ("CJC")

back to the Medium Security Institution ("MSI").  *See Katie Kull and Austin Huguelet*, *About 120*

*St. Louis detainees headed to workhouse after another disturbance at downtown jail*, St. Louis

Post-Dispatch (Aug. 1, 2021), https://bit.ly/3AxOly2.  In the two weeks since, MSI's population

hovered between 57 and 72 individuals, consisting of anywhere from 11% to 13% of the City's

total inmate population.[1]  Then, on August 14, 2021, MSI's population ***nearly-doubled*** to between

---

[1] *See* St. Louis Dep't of Corr., Inmate Population by Day:
7/31/2021, 72 individuals, 13% of inmate population, https://bit.ly/37AQbC3
8/1/2021, 72 individuals, 13% of inmate population, https://bit.ly/2XpaDnu

99 and 101 inmates, or between 18% and 19% of the City's total inmate population, where it remains as of the date of filing.[2]  This is, of course, exactly what Plaintiffs feared.  In their response to the Court's order to show cause, Plaintiffs highlighted the City's numerous representations that MSI may be used to house detainees in the future.  (ECF No. 243 at pp. 4-5 & nn.5, 7-9 (citing ECF Nos. 243-5, 243-8, 243-9).)  Now, mere weeks later, MSI is being actively used to house detainees.[3]  And, while the administration may have "zeroed out" MSI's budget in the City's written appropriations,[4] as former Corrections Commissioner Dale Glass noted during his deposition, "[there are] other places that might be interpreted as available to use [to fund MSI]." (ECF No. 243-9, at p. 3.)  Indeed, funds are currently flowing to MSI to pay for the facility to house detainees, manage staff, and facilitate the transfer process from CJC, all of which it continues to do.

_____

8/2/2021, 61 individuals, 11% of inmate population, https://bit.ly/3yHxeJz
8/3/2021, 70 individuals, 13% of inmate population, https://bit.ly/2VQ2Z58
8/4/2021, 68 individuals, 13% of inmate population, https://bit.ly/3g1gyp9
8/5/2021, 67 individuals, 12% of inmate population, https://bit.ly/3xFx0BC
8/6/2021, 65 individuals, 12% of inmate population, https://bit.ly/3g7WaCU
8/7/2021, 63 individuals, 12% of inmate population, https://bit.ly/3jPUVt1
8/8/2021, 63 individuals, 12% of inmate population, https://bit.ly/3s9YuxY
8/9/2021, 61 individuals, 11% of inmate population, https://bit.ly/3yJ0Mqo
8/10/2021, 58 individuals, 11% of inmate population, https://bit.ly/3iGtfY6
8/11/2021, 58 individuals, 11% of inmate population, https://bit.ly/3yK0yPF
8/12/2021, 56 individuals, 10% of inmate population, https://bit.ly/3xM1r98
8/13/2021, 56 individuals, 10% of inmate population, https://bit.ly/2VWAHFU
[2] *See* St. Louis Dep't of Corr., Inmate Population by Day:
8/14/2021, 99 individuals, 18% of inmate population, https://bit.ly/3D1LkbB
8/15/2021, 101 individuals, 19% of inmate population, https://bit.ly/3ANVdYo
8/16/2021, 99 individuals, 19% of inmate population, https://bit.ly/3CQ6CJ1
[3] The City's choice to re-brand MSI as the "CJC Annex" does nothing to change the fact that it is the same physical facility at issue in this lawsuit, *i.e.* the buildings located at 7600 Hall Street, St. Louis, MO 63147.  What the City chooses to call the facility does not matter.
[4] *Mayor Tishaura O. Jones Gives Updates on Key Issues Facing St. Louis During Constituent Livestream*, https://bit.ly/3g7iBZ4 (last visited Aug. 16, 2021).

The City concedes as much—or, at the very least, disputes none of it (*see* ECF No. 253)[5]—and cannot argue in good faith that this case is moot because MSI is empty or defunded.  Instead, the City argues that, because an extensive renovation of portions of MSI (the "PODS") was completed in 2020, Plaintiffs' injunctive and declaratory relief claims are somehow moot.  (ECF No. 253, at pp. 1-3.)[6]  But this argument improperly conflates merits with mootness,[7] and, even if it didn't, ***the City has not cited any legal authority or evidence to support its position that these purported renovations somehow moot Plaintiffs' declaratory and injunctive relief claims***.  Instead, the City simply provides the unsubstantiated assertion that there was "a comprehensive renovation of MSI's PODS," including a "complete replacement of the HVAC systems servicing all PODS" and "all of the plumbing in the Dorms, including the toilets, sinks, showers, and other fixtures."  (ECF No. 253, at pp. 2-3.)  But the City offers no affidavits, declarations, deposition testimony, emails, letters, contracts, purchase orders, work orders, or any other evidence to support these bare allegations.  (*See generally id.*)

Nor could it, as the deplorable conditions in the MSI's PODS persist to this day, including, but in no way limited to: contaminated drinking water; inmates being deprived of food, hygienic supplies, personal property, recreation time, and medical care; plumbing clogs and floods, which give rise to mold, flowing feces, and urine; pest infestations; violence incited by correctional

---

[5] Nor does the City address the central issue upon which this Court ordered briefing: whether the Mayor's statement on emptying MSI rendered Plaintiffs' declaratory and injunctive relief claims moot.  (ECF No. 233, at p.2.)  By necessity, this implicates the City's future plans for MSI.  Yet the City's response brief offers not a word on the subject.  (*See generally* ECF No. 253.)

[6] The City also inappropriately attempts to litigate its summary judgment motion in the context of its mootness briefing.  (ECF No. 253, at pp. 2-3.)  The City's motion for summary judgment is separate and apart from any mootness inquiry.  That motion has been fully-briefed and remains ripe for the Court's review but has no place here.  (ECF Nos. 230, 237, 244.)

[7] As noted in Plaintiffs' opening brief, ***[t]he defendant*** bears the "'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur.'"  (ECF No. 243, at p. 9 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc. ("Laidlaw")*, 528 U.S. 167, 170 (2000)).

officers; potential COVID exposures; and, of course, concealment of such conditions in the presence of third-parties.  Declarations from MSI detainees, made under penalty of perjury, dated August 5, 2021, attest to these conditions:

> We did not eat or receive rec the day we were transferred…Upon arrival, we were placed in dirty cells, with dirty mats, no cleaning supplies, and no tissue…The ceiling is peeling, there are holes in the walls, the toilets don't work, and the water is nasty…There are black pellets in the water and the cell is infested with bugs…There is no air and ice is limited…There is no medical here at all and people are taken back to the CJC if treatment [is] needed…We have not received our property or paperwork from the CJC…Additionally, people are still wearing the same clothes from last weekend, because there is no laundry…We have not received our food in our bucket from CJC or money back for the loss of it.

Ex. 1, Decl. of Maszaba Johnson ("Johnson Decl."), ¶¶ 4, 7-10, 12-13, 15-16 (Aug. 5, 2021).

> Upon arrival, we were thrown into a cell with just a mat and the clothes on our back…I did not receive any rec that day and our property was stolen and not given to us until the third or fourth day we were here…In our cells, spiders, roaches, and flies come out of the drains which are clogged…We have very limited access to cleaning supplies and personal hygiene products…There is no access to medical treatment and inmates are being transferred back to CJC for treatment…When there is flooding and the water has to be shut off, it is rusty with pieces of metal…There are multiple cells that are currently flooding and leaking into the wings…Others have blankets jammed under [their] door to keep water from coming in…3B at CJC is a COVID wing, people from CJC were transferred to MSI and mixed in with us…Prior to investigator and attorney arrival, any issues are temporarily fixed so that conditions are not found out.

Ex. 2, Decl. of John Rideout ("Rideout Decl."), ¶¶ 4-13 (Aug. 5, 2021).

> Upon arrival, we went straight to the pods where there was trash, roaches, spiders, mold, and rust…The toilets do not flush and feces backs up into other cells…We were made to clean up the feces and urine…We do not have cleaning supplies, no laundry, and limited property from CJC…There is no access to medical, dietary restrictions are ignored, and MSRs are missing…I have not received my blood pressure, arthritis, and inhaler medication from CJC…There is no air in 3 pod and ice is limited or not given at all…People from 3B, the quarantine wing at CJC, are being placed with us at MSI…The COs are disrespectful to us and often antagonize other inmates to be violent, so they can go on paid leave…They force us to "clean up" before walkthroughs so they can hide the poor conditions.

Ex. 3, Decl. of DeAndre Douglas ("Douglas Decl."), ¶¶ 5-6, 8-14 (Aug. 5, 2021).

The City has even admitted to some of these deplorable conditions in internal correspondence, acknowledging that, at minimum, roof leaks, plumbing issues, and pest infestations in the PODS remain a problem well into 2021.  (*See* Ex. 4, CITY_080731-02, excerpt of CITY_080730-080745 (Apr. 8, 2021 Email from A. Tibbs to J. Carson, *et al*.) (noting PODS hallway roof "[i]n need of repair / replacement"; that some PODS bathrooms had received "cosmetic, surface renovations" but that shower hardware and plumbing issues persisted and were "in need of repair"; and that pest issues, including roach and gnat infestations, persisted at MSI's kitchen).[8]

Accordingly, the City has put forth no evidence demonstrating these purported renovations took place or that, even if they did, such renovations ameliorated the unconstitutional conditions of confinement that persist at MSI.

Alternatively, the City argues this case is moot because "every detainee that has been housed at MSI since June 17, 2021, volunteered to be transferred there."  (ECF No. 253, at p.3.) Not only does the City fail to present any law to support this argument, it again offers no evidence, either.  As the MSI detainees' declarations make clear, none "volunteered" to be transferred to MSI.  Rather, they were coerced with threats of force, deceived with false promises of better conditions, or, in some cases, both:

> I did not ask or volunteer to transfer to MSI but was rounded up by sheriffs, C/Os, and lieutenants, and threatened with mace, tasers, and batons if we did not go…They did not let us use the phone or tell us where we were going…If we ask for help, we are ignored.

Ex. 1, Johnson Decl., ¶¶ 3, 6, 11 (Aug. 5, 2021).

---

[8] The fact that MSI's budget has been "zeroed out" on paper (*see supra,* note 4) raises further concerns.  If, as the City maintains, appropriations to MSI have been eliminated, then surely no funds have then been earmarked to ensure human habitability, or adequate mental health and medical care, for detainees housed at MSI.  The challenged conduct and conditions at the MSI are not only very likely to reoccur, but, in fact, presently occurring and are likely to persist.

> I was previously housed at the City Justice Center and was asked by 'Dixon' to transfer to MSI under the premise that we would be placed in single-man cells, given active rec, and that MSI would be fixed up.

Ex. 2, Rideout Decl., ¶ 3 (Aug. 5, 2021).

> We were brought over based on trickery, where "Dixon" told us we would have snacks, active rec time, and pay raises with the guarantee of keeping our jobs…At first, they made it seemed [sic] like we had a choice, but threatened us with lockdown if we did not transfer.

Ex. 3, Douglas Decl., ¶¶ 3-4 (Aug. 5, 2021).

In light of the foregoing, a live case or controversy remains between the parties, and Plaintiffs' claims for injunctive and declaratory relief are not moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (quotations omitted); *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks*, 466 U.S. 435, 442 (1984) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). While the City's prior voluntary temporary cessation did not deprive this Court of its power to determine the legality of the City's constitutional violations, the City's continuing and present use of MSI, in the precise manner Plaintiffs challenge, only underscores the Court's power to enjoin the City from its practices. *See City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *United States v. W.T. Grant Co*., 345 U.S. 629, 632-33 (1953) ("The defendant [would be] free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion….The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated. The burden is a heavy one.")

6

(quotations omitted); *Laidlaw*, 528 U.S. at 170 ("Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.").

As of August 16, 2021, MSI remains operational and not only ready for use, but, in fact, is currently in use.  And so long as the City continues to use, or maintains the potential to use, MSI in a manner that would subject detainees to the unconstitutional conditions alleged in Plaintiffs' complaint (ECF No. 22), Plaintiffs continue to have a "legally cognizable interest in the outcome" of this litigation, and this case is far from moot.  *See Already*, 568 U.S. at 91.

WHEREFORE, for all of the reasons set forth above, Plaintiffs respectfully request that this Court determine that Plaintiffs' claims for injunctive and declaratory relief are not moot.  The City has not met its high burden of demonstrating the challenged conduct cannot reasonably be expected to recur.  Rather the City's own public representations make clear that it has kept MSI open for use, is currently housing inmates in overflow from the CJC, and intends to keep MSI open for future use.

Dated: August 16, 2021                    Respectfully submitted,

By: /s/ *Matthew Dollan*

**ARCHCITY DEFENDERS, INC.**
Matthew Dollan, (MBE #71867 MO)
Blake A. Strode (MBE #68422MO)
Jacki J. Langum (MBE #58881MO)
John M. Waldron (MBE #70401MO)
Nathaniel R. Carroll, (MBE #67988 MO)
Maureen G. V. Hanlon (MBE #70990MO)
Brandon L. Jackson (MBE #68159MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102

855-724-2489 ext. 1012
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
jwaldron@archcitydefenders.org
mdollan@archcitydefenders.org
ncarroll@archcitydefenders.org
mhanlon@archcitydefenders.org
bjackson@archcitydefenders.org

and

**DLA PIPER LLP (US)**
By: */s/ Robert J. Alessi*
Robert J. Alessi (*Pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Phone: 212-335-4866
Fax: 212-335-4866
robert.alessi@dlapiper.com

Dennis Kiker (*Pro hac vice*)
2525 East Camelback Road, Ste 1000
Phoenix, AZ
Phone: 480-606-5100
Fax: 480-606-5101
dennis.kiker@dlapiper.com

Saher Valiani (MO Bar No. 69402)
33 Arch Street, 26th Floor
Boston, MA 02215
Phone: 617-406-6000
Fax: 617-406-6100
saher.valiani@dlapiper.com

*Attorneys for Plaintiffs*