UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CODY *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 4:17-cv-02707-AGF |
| ) | |
| v. ) | |
| ) | |
| CITY OF ST. LOUIS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS, TESTIMONY, AND REPORTS OF GEORGE HARDINGER AND JOSEPH GUNJA**

COME NOW Defendant City of St. Louis ("City"), by and through its attorney Sheena Hamilton, City Counselor for the City of St. Louis, and its Response to Plaintiffs' Motion to Exclude the Opinions, Testimony, and Reports of George Hardinger and Joseph Gunja states as follows:

Plaintiffs do not challenge Mr. Hardinger's or Mr. Gunja's qualifications or expertise. And well they should not. Mr. Gunja has more than 28 years of correctional experience, including 14 years of experience in correctional executive level management as an Associate Warden and Warden at multiple correctional institutions, and is the former Regional Director for the Federal Bureau of Prisons' Western Region – where he was responsible for complete oversight of 18 federal prisons and 65 federal regional office administrators within the Federal Bureau of Prisons. (Doc. 262-1 at 9). Likewise, Mr. Hardinger has over 43 years of correctional experience, including over 20 years as warden of a Maryland county detention center, 11 years with the Maryland Division of Corrections, and is a former Chief of Staff to the Commissioner of the Maryland State

1

Division of Corrections. (Doc. 262-11 at 15) Not only does Mr. Hardinger have significant experience as a correctional administrator responsible for overseeing the operation and maintenance of correctional institutions, he has over a decade of experience managing and overseeing capital improvement projects at correctional institutions – which he did both as the Public Safety Capital Projects Team Leader for the Maryland Department of State Planning and as the Director of Capital Improvement Projects for the Montgomery County, Maryland, Department of Corrections and Rehabilitation. In those roles, Mr. Hardinger reviewed capital improvements to state prisons and local jails, and personally supervised the design/build of large detention centers. Suffice it to say, Mr. Gunja and Mr. Hardinger are more than qualified to offer their respective opinions regarding MSI and its operation, and their specialized knowledge will aid the Court and jury to understand the evidence and determine facts at issue in this broad-ranging putative class action regarding City's operation of MSI.

Because Plaintiffs are effectively proscribed from challenging these experts' qualifications, Plaintiffs resort to quibbling with the factual basis of their opinions. But, as a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]" *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014) (quoting *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)). In keeping with this principle, the Eighth Circuit has held that, correctly construed, *Daubert* "call[s] for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014) (citing, among others, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding

to any degree"). The touchstone of admissibility under Daubert is reliability, and as long as an expert's testimony "rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id*. (quoting *Daubert*, 509 U.S. at 590, 596. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) (citing *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001)). Here, contrary to Plaintiffs' unsupported assertions, Hardinger and Gunja's opinions are reliable, are founded in a comprehensive review of facts and data, and are admissible under *Daubert*.

Both Hardinger and Gunja engaged in a comprehensive review of voluminous materials produced in this case, including, among other things, MSI inspection reports, incident reports, use of force reports and video, MSI policies and procedures, duty officer reports, the National Institute of Corrections MSI Operational Assessment, daily event logs, MSI budgets, maintenance contracts with third-party contractors, and, importantly, emails documenting inter-personnel memoranda regarding day-to-day operations at MSI and directives. (Doc.262-11 at 18-37; Doc. 262-1 at 2-11). Both Hardinger and Gunja's respective reports reference these materials and explain how they were relied upon. See, e.g., Doc. 262-11 at 8 ("The record is replete with similar examples of the MSI administration going above and beyond to address the issued associated with the extreme heat, to mitigate the problems while continuing to deliver services. Attached are several memos from Superintendent Carson that speak to the efforts made to mitigate the heat associated problems."); Doc. 162-1 at 6 ("Based on the material I reviewed, including the

3

deposition of MSI Maintenance Supervisor Joe Jones… it is apparent that maintenance issues have consistently been addressed in a manner consistent with correctional standards and best practices, based on my experiences working in the federal Bureau of Prisons); Doc. 262-1 at 6 ("In my review of post orders and policies for the facility... I did not find any policy to be inadequate and/or not in accordance with good standard practice or American Correctional Association standards"); Doc. 262-2 at 63 (Gunja reviewed MSI's use of force policy, compared to the ACA's model policy, and reviewed use of force surveillance video and corresponding use of force reports in reaching his conclusions). And, of course, both Hardinger and Gunja inspected MSI in the same way as Plaintiffs' putative experts. Then, Hardinger and Gunja utilized their review of relevant materials in conjunction with observations during their inspections to reach reliable conclusions which they are undoubtedly qualified to offer. Simply put, Plaintiffs' assertion that Hardinger and Gunja's opinions "are based on insufficient facts and data" is without merit and belied by the record before the Court.

Plaintiffs complain that Hardinger and Gunja "disregarded generally accepted standards," misinterpret certain facts, or "flatly ignore relevant facts in this case." (Doc. 272 at 2) Of course, City disagrees. But, in any event, as the Supreme Court held in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Plaintiffs will undoubtedly vigorously cross-examine City's experts in the event this case proceeds to trial, and that is the appropriate venue for the arguments raised by Plaintiffs' *Daubert* Motion. Likewise, City will vigorously cross-examine Plaintiffs' correctional expert Eldon Vail

regarding his conclusion that, based on his review of essentially the same materials, MSI staff lacked the will and focus to keep MSI clean. *See* Doc. 276-1 at 47; Doc. 276-1 at 46 ("If there are not the resources or the will to keep it clean, conditions will quickly deteriorate. During my inspection of the facility it was obvious that the facility did not have such an orientation"). Of course, City vehemently contests Vail's conclusions in this regard. Still, City notes that it has not moved to exclude Vail's opinions on this point – for the appropriate means by which to challenge them is cross-examination and presentation of contrary evidence. Indeed, if Hardinger and Gunja's conclusions are not admissible on this topic, then neither are Vail's. Hardinger, Gunja, and Vail all reviewed essentially the same materials, conducted similar inspections of MSI, employed similar methodology, and reached different conclusions regarding MSI's physical plant which the finder of fact is entitled to weigh. Certainly, as the Eighth Circuit has admonished, this Court is "not to weigh or assess the correctness of competing expert opinions." *Johnson*, 754 F.3d at 562.

Instead, when analyzing an expert's testimony, the Court must focus on the principles and methodology employed by the expert, and not on their conclusions. *Daubert*, 509 U.S. at 594. Here, Plaintiffs only half-heartedly argue that "the City's expert's fail to apply any discernable or reliable methodology." (Doc. 272 at 13). But, that argument finds no support. To the contrary, Hardinger and Gunja's methodology was that any correctional expert charged with assessing the general conditions and operation of a correctional institution would employ: they reviewed, among other things, inspection reports, incident reports, inmate complaints, operational assessments, internal memoranda, emails, and internal policies, and conducted thorough inspections of MSI

5

before reaching conclusions founded in their considerable experience as correctional administrators. That Plaintiffs do not substantively attack this reliable methodology only underscores that their gripes are with the factual basis of Hardinger and Gunja's conclusions and with their respective conclusions. But again, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]" *Lawrey*, 751 F.3d at 952 (8th Cir. 2014) (quoting *Nebraska Plastics, Inc.*, 408 F.3d at 416).

Plaintiffs also contend that "the City's experts do not reliably apply their experiences to the facts." (Doc. 272 at 10). Again, this contention is unsupported. Hardinger and Gunja's reports and depositions are replete with reliable application of their significant experience in correctional administration to the facts in this case. *See, e.g.*, Doc. 262-12 at 38 ("I've been in a lot of facilities, I understand what a clean facility is and what isn't, and I understand what an organized facility is and isn't. When I went [to MSI]… I found it relatively clean, organized, and efforts underway to… continue to improve conditions."); Doc. 262-2 at 42-43 (where Gunja explains that his opinions regarding maintenance issues at MSI being addressed are "based on how we used to manage our facilities in the [Federal] Bureau of Prisons."); Doc. 262-12 at 55-56 (Hardinger compares his experience with maintenance issues and capital improvement projects at other correctional institutions with those at MSI); Doc. 262-12 at 45-46 (Hardinger compares measures he has taken at other correctional institutions to mitigate heat, including the provision of ice, fans, and showers, with those taken at MSI).

Plaintiffs also attack City's experts because they do not base every conclusion upon a specific ACA guideline or other written standard. (Doc. 272 at 5-8). This argument misses the mark. There is no requirement that Hardinger and Balsamo tether

6

every opinion to a specifically applicable national guideline or other written standard – particularly where, as in many professions, there often is no applicable, specific ACA or other national guideline to adhere to. Here, both Hardinger and Gunja address ACA guidelines where appropriate, but are otherwise qualified, based on their considerable experience and review, to opine, as they have done, regarding the professional standard of care in their field of expertise: corrections. *See, e.g.*, Doc. 262-12 at 59 (Hardinger explains that the standard of care referenced in his report "is based on [his] understanding of what's required of the profession" based on 44 years of experience in the field of corrections).

While this Court is vested with broad discretion in determining the reliability and admissibility of expert testimony, excluding City's experts here would be an abuse of that discretion. *See, e.g., Benham*, 423 F.3d at 862 (reversing district court's exclusion of attorney's expert conclusion based on his 36 years of practice in the field of mergers and acquisition as an abuse of discretion). Plaintiffs' motion to exclude Hardinger and Gunja does not challenge their expertise and merely quibbles with the basis of their opinions. This is a far cry from City's pending Motion to Exclude James Balsamo – which asserts that Balsamo relied on admittedly unreliable data, employed a methodology he admits no qualified expert would use, and is not qualified to offer his opinions in any event. Thus, because Plaintiffs' arguments here bear on credibility and not admissibility, Plaintiffs' Motion should be denied.

WHEREFORE, for all of the reasons set forth above, Defendants respectfully requests that this honorable Court deny Plaintiffs' Motion to Exclude the Opinions, Testimony, and Reports of George Hardinger and Joseph Gunja.

        Respectfully submitted,

        SHEENA HAMILTON
        CITY COUNSELOR

        By: /s/ Andrew D. Wheaton
        Andrew D. Wheaton   #65269 MO
        Associate City Counselor
        Attorney for Defendant
        City Hall, Room 314,
        St. Louis, MO  63103
        314.622.3361
        FAX: 314.622.4956
        wheatona@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 29, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

        /s/ Andrew D. Wheaton