UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CODY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2707 AGF |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The named plaintiffs in this putative class action claim that they endured inhumane conditions, in violation of the Eighth and Fourteenth Amendments, while detained either pretrial or post-conviction in the City of St. Louis's Medium Security Institution ("MSI") at various points from January to October of 2017. They filed suit against the City under 42 U.S.C. § 1983, seeking class action certification, monetary damages, declaratory relief, and injunctive relief. The Court previously granted the City's motion for summary judgment on Plaintiffs' claims for declaratory and injunctive relief, and the Court dismissed those claims without prejudice for lack of standing. *See* ECF No. 268. Thus, the only claims that remain are those for monetary damages.

The matter is now before the Court on Plaintiffs' motion for class certification. ECF No. 248, filed on August 2, 2021.[1] Plaintiffs move to certify four putative classes, which

---

[1] The decision whether to certify an action as a class action should ordinarily come "at an early practicable time after a person sues . . . as a class representative." Fed. R. Civ. P. 23(c)(1)(A). However, the deadline for filing the class certification motion in this case was extended multiple times at the joint request of the parties, due to extensive and contentious discovery, complicated further by restrictions related to the COVID-19 pandemic, as well as a lengthy stay imposed while the parties attempted (ultimately unsuccessfully) to settle the

they define as:

> Pretrial Class: All persons who are or were pretrial detainees in MSI, and who were or will be released from MSI on or after November 13, 2012.

> Pretrial Heat Subclass: All persons who are members of the Pretrial Class who were assigned to a dorm, pod, or other area at MSI in which the internal temperature equaled or exceeded 88 degrees Fahrenheit.

> Post-Conviction Class: All persons who are or were post-conviction detainees in MSI, and who were or will be released from MSI on or after November 13, 2012.

> Post-Conviction Heat Subclass: All persons who are members of the Post-Conviction Class who were assigned to a dorm, pod, or other area at MSI in which the internal temperature equaled or exceeded 88 degrees Fahrenheit.

ECF No. 249 at 2-3.  Plaintiffs seek certification under either Rule 23(b)(1) or 23(b)(3) of the

Federal Rules of Civil Procedure.  The City opposes Plaintiffs' motion.  For the reasons

below, the Court will deny Plaintiffs' motion.

## **BACKGROUND**

Named Plaintiffs James Cody, Jasmine Borden, Vincent Grover,[2] John Doe, John

Roe,[3] Michael Mosley, and Diedre Wortham were detained in MSI at various points from

---

case.

[2]      As the City notes in contesting Grover's adequacy to serve as a class representative, Plaintiffs' counsel withdrew as counsel for Grover on March 5, 2019 (ECF No. 92), and Grover has since proceeded pro se.  Grover has not responded to the Court's prior Order to Show Cause (ECF No. 93) why he should not be removed as a putative class representative, and he has not filed anything in this case since counsel's withdrawal.  Therefore, the Court will order Grover to show cause why his claims should not be dismissed without prejudice for failure to prosecute.

[3]      In their briefs, filed in the open record, the parties identify Plaintiff John Doe as Callion Barnes and Plaintiff John Roe as Eddie Williams.  However, as the City notes in contesting their adequacy to serve as class representatives, these two Plaintiffs have not filed a complaint in their names and have never sought leave to proceed anonymously.  *See Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 593 (8th Cir. 2016) (discussing

January to October of 2017.  As noted above, they now seek to represent four classes of pretrial and post-conviction detainees.

Plaintiffs assert that both categories of detainees, throughout the class period, were subjected to two categories of unconstitutional conditions: (1) poor "physical conditions"[4] of MSI in the form of extreme temperatures, mold, faulty plumbing, and pest infestations; and (2) "inadequate operation" of MSI in the form of understaffing, inadequate recreation time, and use of unnecessary and excessive force.[5]  *See* ECF No. 249 at 8, 18-22.

As to their individual allegations, Cody was held as a post-conviction detainee for approximately eight months, from January 3, 2017 to September 13, 2017.  He complains of extreme temperatures with no mitigation efforts by the City, flooding, pest infestations, and understaffing at the facility during that time.   ECF Nos. 22 at ¶¶ 15-27.

Borden was held as a pretrial detainee for two months, from May 15, 2017 to July 22, 2017.  She alleges that her unit had air conditioning but that the air conditioner broke in early June of 2017, and that she received ice at least occasionally.  She also complains of pest

_____

requirement under Federal Rules of Civil Procedure to name all parties and the alternate requirement to request permission to proceed under a pseudonym).  In their reply brief, Plaintiffs' counsel suggests that Barnes and Williams may either seek "retroactive leave to proceed anonymously" or to amend their complaint in order to "substitute the names of the 'Doe' and 'Roe' Plaintiffs."  ECF No. 280 at 13 n.2.  The Court will order that any such motion be filed within 14 days of the date of this Memorandum and Order.

[4]     Plaintiffs refer to the conditions relating to temperature, mold, plumbing, and pests as "physical conditions" of MSI, so the Court will do the same.

[5]     In their complaint, Plaintiffs also allege a First Amendment claim based on unlawful retaliation, and they reference inadequate medical care.  *See* Am. Comp., ECF No. 22.  But in their reply brief in support of the current motion, Plaintiffs state that they do not seek class certification related to any claim of inadequate medical care or retaliation, conceding that "those claims are better suited for individual proceedings."  ECF No. 280 at 6 n. 1.

infestations, mold, and overcrowding at MSI during the time of her detention. *Id.* ¶¶ 28-49.

John Doe (Barnes) was held as a pretrial detainee for approximately one month, from June 13, 2017 to July 31, 2017. He complains of extreme temperatures, pest infestations, mold, and plumbing problems during that time. *Id.* ¶¶ 66-83.

John Roe (Williams) was held as a pretrial detainee for approximately three months, from July 3, 2017 to October 3, 2017, and, later, for another two months, from March 7, 2018 to May 18, 2018. He complains of extreme temperatures, pest infestations, and mold during those times. *Id.* ¶¶ 84-92; ECF No. 249 at 8.

Mosley was held as a pretrial detainee for less than one month, from June 5, 2017 to June 30, 2017. He complains of extreme temperatures, although he received ice daily; pest infestations; plumbing problems; and mold during that time. *Id.* ¶¶ 93-102.

Wortham was held as a pretrial detainee for less than one month, from July 21, 2017 to August 9, 2017. She alleges that her unit had air conditioning but that the units sometimes malfunctioned. She also complains of filth, mold, and pest infestations at the facility during the time of her detention. *Id.* ¶¶ 103-115.

## DISCUSSION

### Legal Standard

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). "A party seeking class certification must affirmatively demonstrate his compliance with Rule 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir.

2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  "The movant must, among other things, satisfy "through evidentiary proof  at least one of the provisions of Rule 23(b)." *Hudock*, 12 F.4th at 775–76.

Certification of a class is proper only if, after "rigorous analysis," the Court is satisfied that the Rule 23 requirements are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks and citation omitted).  Although that "rigorous analysis" may frequently entail some overlap with the merits of the underlying claims, *see id.* at 351, "[m]erits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  "[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018).

## Rule 23(a)

Rule 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

With respect to commonality, the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*,

5

564 U.S. at 350.  "What matters to class certification is not the raising of common

'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate

common *answers* apt to drive the resolution of the litigation. Dissimilarities within the

proposed class are what have the potential to impede the generation of common answer." *Id.*

(emphasis in original).

**Rule 23(b)**

I.      Rule 23(b)(1)

Certification under Rule 23(b)(1) may be maintained if prosecuting separate actions

would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the opposing class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1) classes are "mandatory," such that class members are not permitted to

opt out and the court is not even required to provide class members notice of the action.  *See*

*Dukes*, 564 U.S. at 363.  As such, class actions predominantly for individual monetary

damages are not appropriate for certification of a Rule 23(b)(1); the "absence of notice and

opt out violates due process" in such cases. *Id.* (citing *Phillips Petroleum Co. v. Shutts,* 472

U.S. 797, 812 (1985)).  Because the only claims remaining here are claims for individual

monetary damages, certification is not appropriate under Rule 23(b)(1)(A).  *See DiDonato v.*

*GC Servs. Ltd. P'ship*, No. 20 CIV. 2154 (LGS), 2021 WL 4219504, at *6 (S.D.N.Y. Sept.

16, 2021) (holding the same).

II.    Rule 23(b)(3)

Class certification must instead be considered under Rule 23(b)(3).  Rule 23(b)(3)

requires that "the questions of law or fact common to class members predominate over any

questions affecting only individual members" (predominance), and that a class action "is

superior to other available methods for fairly and efficiently adjudicating the

controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).  "The predominance requirement is

'demanding'; a court considering certification pursuant to Rule 23(b)(3) must take a 'close

look at whether common questions predominate over individual ones.'"  *Hudock v*, 12 F.4th

at 776 (quoting *Comcast Corp.*, 569 U.S. at 34).

"Predominance subsumes the commonality requirement, so both can be analyzed

through the lens of predominance."  *Custom Hair Designs by Sandy v. Cent. Payment Co.,*

*LLC*, 984 F.3d 595, 601 (8th Cir. 2020).  "The predominance inquiry 'asks whether the

common, aggregation-enabling, issues in the case are more prevalent or important than the

non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*,

577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp.

195-96 (5th ed. 2012)).  "An individual question is one where members of a proposed  class

will need to present evidence that varies from member to member, while a common question

is one where the same evidence will suffice for each member to make a prima facie showing

or the issue is susceptible to generalized, class-wide proof."  *Johannessohn v. Polaris Indus.*

*Inc.*, 9 F.4th 981, 984–85 (8th Cir. 2021) (citation omitted). "The predominance inquiry tests

whether proposed classes are sufficiently cohesive to warrant adjudication by representation,

and goes to the efficiency of a class action as an alternative to individual suits."  *Id.*

Moreover, the calculation of damages must be based on a model applicable to all members of the class. *Comcast Corp.*, 569 U.S.at 35; *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014). If the measure of damages is based on a common model linked to plaintiffs' theory of liability, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor. *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016); *Cromeans*, 303 F.3d at 559; *McAllister v. St. Louis Rams, LLC*, No. 4:16-CV-172 SNLJ, 2018 WL 1299553, at *9 (E.D. Mo. Mar. 13, 2018), *amended in part*, 2018 WL 2869025 (E.D. Mo. Apr. 19, 2018).

**<u>Ascertainability</u>**

Before considering the explicit requirements set forth in Rule 23, the Court must also be satisfied that the proposed class is ascertainable. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016). The Eighth Circuit has not addressed whether ascertainability is a "separate, preliminary requirement" of class certification, but it has confirmed that ascertainability is at least an implicit requirement that must be enforced as part of the "rigorous analysis" of Rule 23's requirements. *Id.* at 996; *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). And where, as here, a dispute arises regarding the method for identifying class members, "an independent discussion of whether a class is ascertainable" is warranted. *McKeage*, 847 F.3d at 998.

"A class may be ascertainable when its members may be identified by reference to objective criteria." *Id.* at 998 (citing *Sandusky*, 821 F.3d at 996). Where identifying class members through some objective basis is not possible, the class is not ascertainable. *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12CV174 CDP, 2017 WL 2861878, at *4 (E.D. Mo. July 5, 2017).

Ascertainability is especially important in Rule 23(b)(3) classes because of the need to notify absent class members and allow those members an opportunity to opt out.  *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (noting that vagueness in a class definition "is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment"); *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).   "In ascertaining the class, the court should not be required to resort to speculation, or engage in lengthy, individualized inquiries." *Planned Parenthood Arkansas & E. Oklahoma v. Selig*, 313 F.R.D. 81, 91 (E.D. Ark. 2016) (citation omitted).

Plaintiffs' proposed decade-long, open-ended class periods, which run from 2012 to some indefinite future point when detainees "will be released from MSI," are unascertainable.  *See Vasquez v. Leprino Foods Co.*, No. 117CV00796AWIBAM, 2020 WL 1527922, at *9 (E.D. Cal. Mar. 31, 2020) ("[T]he proposed end date for the class period — 'until resolution of this action' — is not ascertainable. An end date of 'until resolution' or 'until the present' creates 'a moving target and presents potential case management problems.'"), *reconsideration denied,* No. 117CV00796AWIBAM, 2020 WL 4677262 (E.D. Cal. Aug. 12, 2020).  As one federal court explained:

> [A]n open-ended end-date . . . fails to take account of the possibility that material facts might change.  And it denies the parties, after the close of fact discovery, a practical vehicle for exploring whether there have been material factual changes.  Lack of clarity as to the end date of the class period also has the potential to confuse putative class members as to whether their interests will, or will not, be represented in the pending lawsuit.

*Hart v. Rick's NY Cabaret Int'l, Inc.*, No. 09 CIV. 3043(PAE), 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013).

Such problems are particularly likely here, where the conditions of MSI substantially changed during the proposed class period.  As the Court has previously noted (ECF Nos. 233 & 268), and as the parties have discussed in prior briefs (ECF Nos. 243. 253 & 254), the City began efforts to close MSI at least by June of 2021.  These efforts followed the passage of City Ordinance 71217 in July of 2020, which directed the Commissioner of Corrections to begin the process of closing MSI, and the election of City Mayor Tishaura O. Jones in April of 2021.  Shortly after Mayor Jones's election, the City moved most or all detainees out of MSI and into the City Justice Center, and they announced that MSI would remain open only as a temporary overflow facility.  *See* ECF Nos. 243. 253 & 254.

According to Plaintiffs, while there were approximately 567 people detained at MSI on the date this lawsuit was filed (November 13, 2017), that population reduced by approximately 90% following closure efforts in the summer of 2021.  ECF No. 243 at 1; ECF No. 254 at 1-2.  The Court previously declined to decide whether these changes were sufficient to moot Plaintiffs' claims for prospective relief, instead dismissing such claims for lack of standing.  ECF No. 268.  But the changes certainly showcase the overbreadth of Plaintiffs' proposed open-ended class definitions.

Plaintiffs suggest in their reply brief that "the Court can establish an end date for the class at the time of the certification order."  ECF No. 280 at 22.  However, Plaintiffs have not proposed any objective criteria for the Court to do so.  A Court-imposed end date on this record would be arbitrary.  *See Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2021 WL 4263715, at *3 (D. Ariz. Sept. 20, 2021) ("The Court declines to craft new [class] definitions on its own without proposed alternative definitions from Plaintiff.").

10

**Remaining Factors**

The overbreadth of Plaintiffs' proposed class definitions also prevents them from demonstrating typicality and commonality under Rule 23(a), as well as predominance and superiority under Rule 23(b).  For example, under Plaintiffs' proposal, the Court would combine class members' complaints of poor physical conditions with their complaints of excessive force, grouping both into one omnibus class action.  But these are distinct alleged constitutional violations with different legal standards.  A review of the model jury instructions for these two types of claims reveals the difference.

To prove a prisoner conditions-of-confinement claim, the model jury instructions require a plaintiff to prove that the conditions of confinement "posed a substantial risk of serious harm to the plaintiffs," and that the defendant was aware of the substantial risk of harm and deliberately indifferent to it.  *See* Eighth Circuit Manual of Model Jury Instructions (Civil) § 4.46 (2020).  Whereas the model jury instructions for prisoner or pretrial detainee claims of excessive use of force require the plaintiff to prove he was actually subjected to the use of force.  *Id.* §§ 4.41 & 4.42.

These differing standards of proof prevent liability from applying uniformly to the entire proposed class and prevent Plaintiffs from demonstrating commonality under Rule 23(a) or predominance under Rule 23(b)(3).  *See Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017) (explaining that predominance requires that "a prima facie showing of liability can be proved by common evidence"); *see also Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021) (vacating class certification order under Rule 23(b)(2) where class members claimed different constitutional harms, and noting that "[w]hen liability does not apply uniformly to the entire class, the relief sought becomes

11

highly individualized"); *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 n.4, 788 (8th Cir. 2006) (holding that combining failure-to-protect and right-to-custodial-treatment claims with "differing legal standards" in a single class action was contrary to Rule 23 but noting that "a more focused claim on behalf of a more uniform class may well be appropriate for class certification").

Moreover, the City contends, and Plaintiffs do not dispute, that none of the named Plaintiffs was actually subjected to the use of force at MSI.  Therefore, in this respect, the named Plaintiffs' claims are not typical of other class members under Rule 23(a).

The lack of an end date, as noted above, compounds these problems.  With the population of MSI drastically reducing following closure efforts in the summer of 2021, the answer to the question of whether MSI was in fact understaffed could not be answered for all class members in "one stroke" as required under Rule 23.  *See Dukes,* 564 U.S. at 350.

This Court has discretion to redefine the proposed classes to address Rule 23 issues, *Rawlings v. ADS All. Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885, at *4 (W.D. Mo. June 23, 2015), but Plaintiffs have not asked the Court to do so.  Nor have Plaintiffs proposed any narrower alternatives.  Rather, despite having sought and received numerous extensions of time to file their class certification in order to conduct broad-ranging discovery, and even in the face of the Rule 23 concerns raised by the City in its opposition brief, Plaintiffs have insisted on their overbroad proposed class definitions.

On the current record, the Court cannot fashion a more narrowly defined class that would be uniform enough to be certified under Rule 23(b)(3).  And the Court would not do so in any event without first giving the City an opportunity to respond.

This is not to say that a conditions-of-confinement class could never satisfy Rule 23.

Federal courts have certified classes challenging the physical conditions of a prison, including those related to temperature and sanitation, after finding that the claims raised common questions capable of classwide resolution.  These common questions included whether the conditions exposed all class members to a substantial risk of serious harm and whether the defendant was deliberately indifferent to that risk.[6]  *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 362–63 (5th Cir. 2017); *Hassine v. Jeffes*, 846 F.2d 169, 178 (3d Cir. 1988); *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995); *Davis v. Baldwin*, No. 3:16-CV-600-MAB, 2021 WL 2414640, at *22–23 (S.D. Ill. June 14, 2021); *MacNamara v. City of New York*, 275 F.R.D. 125, 152-53 (S.D.N.Y. 2011); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 102 (E.D.N.Y. 2013); *Flood v. Dominguez*, 270 F.R.D. 413, 420 (N.D. Ind. 2010); *Scott v. Quay*, 338 F.R.D. 178, 190 (E.D.N.Y. 2021).

But these classes have more often been certified under Rule 23(b)(2) as they sought

---

[6]      In this respect, the Court rejects the City's contention that differences in, for example, the length of time during which each class member was exposed to allegedly harmful conditions, necessarily precludes class certification.  It is true that conditions-of-confinement claims require consideration of the "totality of circumstances" of confinement and that exposure to harmful conditions for only a minimal length of time may not rise to the level of a constitutional violation.  *See, e.g.*, *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003).  But this rule does not preclude a finding of commonality.  *See, e.g.*, *Yate*s, 868 F.3d at 363 (affirming class certification even where no two class members had "the exact same risk," as the prison's relevant heat mitigation measures were alleged to pose an unconstitutional risk of serious harm to all class members); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (explaining with respect to an injunctive class that "although a presently existing risk may ultimately result in different future harm for different inmates . . .  every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm")*.*  If it did, it is not clear how any class of prisoners seeking to contest the conditions of confinement could satisfy Rule 23.  In general, variations in the length of time of detention may *"*speak . . . to damages, not liability.  And differences in damages alone will not defeat class certification." *Flood*, 270 F.R.D. at 422.

only injunctive and declaratory relief. [7]  *E.g.*, *Yates*, 868 F.3d 354; *Hassine*, 846 F.2d 169;

*Rentschler*, 160 F.R.D. 114.  Indeed, the Eighth Circuit has recognized that Rule 23(b)(2)

class actions are particularly appropriate in the context of civil-rights litigation.  *See Coley v.*

*Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980).

      The question is much closer under Rule 23(b)(3), which requires plaintiffs to satisfy

the "demanding" predominance standard.  *See Postawko*, 910 F.3d at 1038 (noting that a

putative prisoner class "seeking damages [for violation of the Eighth Amendment] might

struggle to satisfy" Rule 23's commonality requirements due to differences among class

members' conditions, but that "a class certified under Rule 23(b)(2) seeking only injunctive

and declaratory relief suffers no such difficulty").  Common questions may predominate

where "the plaintiffs are challenging conditions of confinement that are the result of policies

or practices uniformly applied to the entire class," notwithstanding the need for individual

damages determinations.  *Flood*, 2011 WL 238265, at *3 (N.D. Ind. Jan. 21, 2011) (citations

omitted); *see also Butler*, 289 F.R.D. at 102 n.11 (E.D.N.Y. 2013) (certifying damages class

asserting unconstitutional physical conditions of confinement over a four-year period of time

but noting that redefinition or decertification may be warranted if discovery revealed

"different classes of inmates incarcerated during different periods were exposed to different

conditions").

      However, the record before this Court does not reveal sufficient uniformity, even with

---

[7]     Some of these class actions involved open-ended class periods.  *See Yates*, 868 F.3d
354.  But because they sought prospective relief, rather than damages, they did not suffer
from the same ascertainability problems that the Court noted above.  *See, e.g.*, *Webb v. City*
*of Maplewood*, No. 4:16 CV 1703 CDP, 2021 WL 5371248, at *8 (E.D. Mo. Nov. 18, 2021)
("[T]he very nature of an injunctive class contemplates that there will be class members who
can only be determined in the future . . . .").

respect to physical conditions alone.  Take Plaintiffs' proposed heat subclasses, which come

closest to a cohesive class.  Plaintiffs propose to group all pretrial detainees "who are or

were" detained in MSI "on or after November 13, 2012," and "who were assigned to [an

area] at MIS in which the internal temperature equaled or exceeded 88 degrees Fahrenheit."

ECF No. 249 at 2-3.  Plaintiffs propose a virtually identical subclass for postconviction

detainees  *Id.*

But Plaintiffs' own evidence of excessive heat focuses on temperature readings from

a much more discrete time period—2012 through 2018.  *See* ECF No. 249 at 9-10.  Plaintiffs

also concede that the City installed air conditioning units in MSI in July of 2017.  *Id.* at 11.

Of course, Plaintiffs contend that the air conditioning units were ineffective.  But they cannot

dispute that the evidence relied upon as to a central question—what mitigation measures did

the City provide?—will differ depending on the time period in which the class member was

detained.  *Cf. Yates*, 868 F.3d at 367 (affirming certification of an injunctive class claiming

excessive heat at state prison where "the conditions of confinement (i.e., non-air-conditioned

housing areas) appl[ied] uniformly to the class of inmates as a whole"; and (2) "*other*

*mitigation measures, such as providing ice water and fans, and the availability of respite*

*areas, [were] similarly applied uniformly to all the inmates*") (emphasis added).  And there

is scant evidence of the heat conditions or mitigation measures post-2018 and up to the

present—during which time the population of MSI also drastically decreased—so the Court

has no way to determine the uniformity of those conditions or measures as compared to

earlier time periods.

The Court recognizes that a more focused claim, covering a more discrete time

period, on behalf of a more uniform class, may well be appropriate for class certification.

But Plaintiffs have not proposed such a class or offered the Court any guidance to create one.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification is **DENIED**.  ECF No. 248.

**IT IS FURTHER ORDERED** that any motion by Plaintiffs John Doe and John Roe for leave to proceed anonymously or to amend the complaint to reflect their true identifies must be filed within **14 days** of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that pro se Plaintiff Vincent Grover shall show cause in writing within **14 days** of the date of this Memorandum and Order why his individual claims should not be dismissed without prejudice for failure to prosecute.  Failure to comply will result in this dismissal of his claims only without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send a copy of this Order to Plaintiff Vincent Grover at the address reflected in the file.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of December, 2021.