UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CODY, et al. | ) |
|  Plaintiffs, | ) |
| v. | ) Case No. 4:17-CV-2707 AGF |
| CITY OF ST. LOUIS, | ) |
|  Defendant. | ) |

## MEMORANDUM AND ORDER

The named plaintiffs in this putative class action claim that they endured inhumane conditions, in violation of the Eighth and Fourteenth Amendments, while detained either pretrial or post-conviction in the City of St. Louis's Medium Security Institution ("MSI"). They filed suit against the City under 42 U.S.C. § 1983. The only claims that remain are for monetary damages.

The Court previously denied Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3). ECF No. 302. However, Plaintiffs have now filed a "Motion Pursuant to Fed. R. Civ. P. 23(c)(1)(C) Proposing Narrower Class Definitions and Renewing Motion for Class Certification" (ECF No. 307) (the "Renewed Motion"), which the City opposes. For the reasons set forth below, the Court will grant Plaintiffs' Renewed Motion.

## BACKGROUND

The Court summarized the named Plaintiffs' claims and procedural history of this case in its prior Memorandum and Order (ECF No. 302) and will not repeat that

1

background here except as necessary to give context to the parties' current arguments.

The current named Plaintiffs, James Cody, Jasmine Borden, Michael Mosley, Diedre Wortham, Callion Barnes, and Eddie Williams,[1] were detained in MSI at various points from January to October of 2017. Plaintiffs initially sought class certification of the following classes of pretrial and post-conviction detainees:

> Pretrial Class: All persons who are or were pretrial detainees in MSI, and who were or will be released from MSI on or after November 13, 2012.
>
> Pretrial Heat Subclass: All persons who are members of the Pretrial Class who were assigned to a dorm, pod, or other area at MSI in which the internal temperature equaled or exceeded 88 degrees Fahrenheit.
>
> Post-Conviction Class: All persons who are or were post-conviction detainees in MSI, and who were or will be released from MSI on or after November 13, 2012.
>
> Post-Conviction Heat Subclass: All persons who are members of the Post-Conviction Class who were assigned to a dorm, pod, or other area at MSI in which the internal temperature equaled or exceeded 88 degrees Fahrenheit.

ECF No. 302 at 2.

In its Memorandum and Order denying class certification, the Court found that Plaintiffs failed to satisfy the requirements of Rules 23(a) and (b).[2]

---

[1] The Court previously dismissed additional named Plaintiff, Vincent Grover, for failure to prosecute and failure to comply with a Court Order. *See* ECF No. 311. The Court also granted Plaintiffs' motion for leave to amend their complaint in order to identify Barnes and Williams, who previously filed suit under the pseudonyms John Doe and John Roe. *See* ECF No. 332.

[2] Plaintiffs initially sought certification under Rules 23(b)(1) and (b)(3). The Court denied certification under Rule 23(b)(1) because the lack of required notice and opt out protections under that subsection would violate due process with respect to Plaintiffs' claims for individual monetary damages. *See* ECF No. 302 at 6; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011)( citing *Phillips Petroleum Co. v. Shutt*s, 472 U.S. 797, 812 (1985)). In their Renewed Motion, Plaintiffs seek certification

Specifically, the Court found that Plaintiffs' proposed decade-long, open-ended class periods, which ran from 2012 to some indefinite future point when detainees "will be released from MSI," were unascertainable and failed to satisfy Rule 23(a)'s commonality and Rule 23(b)(3)'s predominance factors. The Court noted that it was undisputed that the City implemented substantial changes to MSI over the proposed class period, including installing air conditioning units in July of 2017 and drastically decreasing MSI's population by the summer of 2021. *See id.* at 9-16.

Further, Plaintiffs' brief in support of their original motion for class certification proposed to combine class members' complaints of poor facility conditions, including pest infestations, plumbing problems, and mold, with their complaints of excessive force. The Court rejected this proposal in light of the differing legal standards between conditions-of-confinement and excessive force claims, and the fact that none of the named Plaintiffs was actually subjected to any use of force. *See id.* at 11-12.

The Court noted that "a more focused claim, covering a more discrete time period, on behalf of a more uniform class, may well be appropriate for class certification. But Plaintiffs ha[d] not proposed such a class or offered the Court any guidance to create one." *Id.* at 15-16. Plaintiffs now attempt to do just that. In their Renewed Motion, Plaintiffs seek certification under Rule 23(b)(3) of the following modified classes of pretrial and post-conviction detainees:

> **Narrowed Pretrial Conditions Class**: All persons who were pretrial detainees in MSI between November 13, 2012 and July 1, 2018.

---

only under Rule 23(b)(3).

**Narrowed Pretrial Heat Subclass**: All pretrial detainees who were detained in dormitories in MSI between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit.

**Narrowed Post-Conviction Conditions Class**: All persons who were post-conviction detainees in MSI between November 13, 2012 and July 1, 2018.

**Narrowed Post-Conviction Heat Subclass**: All post-trial detainees who were detained in dormitories in MSI between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit.

ECF No. 308 at 5.

Plaintiffs assert that these proposed narrowed class definitions address the deficiencies previously identified by the Court in the following ways:

- The proposed conditions classes provide a definitive end date and narrow the timeframe of the class period;

- The proposed conditions classes eliminate the use of force claim, thereby proposing a class solely related to the conditions of the jail;

- The proposed heat subclasses provide a definitive end-date and narrow the timeframe of the class period to the period in which air conditioning was not in the cell;

- The proposed heat subclasses eliminate detainees held in pods, so that only class members who were held in the MSI dormitories are class members;

- The proposed heat subclasses now use the objective criteria of external temperature at or above 88 degrees in order to generate the classes incarcerated in unconstitutionally hot conditions.

ECF No. 308 at 3.

The City opposes Plaintiffs' Renewed Motion. The City argues that Plaintiffs should not be permitted to renew their motion for class certification at this late stage and that, in any event, the purportedly narrowed classes still fail to satisfy Rule 23.

4

## DISCUSSION

**Legal Standard**

I.    <u>Rule 23(c)(1)(C)</u>

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Eighth Circuit has not decided what standard applies when reevaluating an initial denial of a motion for class certification. However, the Third Circuit recently held as a matter of first impression that Rule 23(c)(1)(C) contemplates "multiple bites at the apple throughout litigation" without additional requirements, and that "[t]he best course of action is to treat renewed motions like any other for class certification, and to apply the usual Rule 23 standard." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020) (citation omitted). In other words, the Third Circuit held that "Plaintiffs can succeed on a renewed motion for class certification if they more clearly define their proposed class even if there has been no change in the law and no new evidence produced." *Id.* Other circuits have also recognized that district courts have "ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial." *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007).

The Court believes that the Eighth Circuit would grant similar latitude to district courts in deciding whether to consider a renewed motion and would likewise focus on the merits of the renewed motion under Rule 23 rather than more stringent standards associated with typical motions to reconsider.

But even accounting for typical reconsideration factors, such as delay and

5

potential prejudice to the opposing party, the Court would still exercise its discretion to reach the merits of Plaintiffs' Renewed Motion. Plaintiffs filed the Renewed Motion promptly after the Court's denial of their initial motion, the Renewed Motion does not require the reopening of discovery, and the Renewed Motion will not impact the trial setting, which was in fact vacated at the request of the City and will not be reset until the Court's ruling on the City's anticipated dispositive motions and other anticipated pretrial motions. *See* ECF No. 302 & 309. Thus, the City will not suffer unfair prejudice from the Court's consideration of the Renewed Motion.

<u>Rules 23(a) and 23(b)(3)</u>

As noted in its prior Memorandum and Order, certification of a class is proper only if, after "rigorous analysis," the Court is satisfied that the Rule 23 requirements are met. *Dukes*, 564 U.S. at 350-51. Rule 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance), and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3).

"Predominance subsumes the commonality requirement, so both can be analyzed

6

through the lens of predominance." *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195-96 (5th ed. 2012)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984–85 (8th Cir. 2021).

Moreover, the calculation of damages must be based on a model applicable to all members of the class. *Comcast Corp.*, 569 U.S.at 35; *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014). If the measure of damages is based on a common model linked to plaintiffs' theory of liability, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor. *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016); *Cromeans*, 303 F.3d at 559.

**Narrowed Conditions Classes**

Plaintiffs argue that the Narrowed Pretrial Conditions Class and Narrowed Post-Conviction Conditions Class (the "Narrowed Conditions Classes") can be ascertained through objective criteria, including review of the City's own records. Plaintiffs further limit the Narrowed Conditions Classes to the time period of November 13, 2012 to July 1, 2018. According to Plaintiffs, this period captures the time period before the City

began implementing changes to MSI's physical facility.[3]  Plaintiffs note that the bulk of their conditions-related evidence comes from their proposed narrowed time period.

The City argues that the Narrowed Conditions Classes fail to satisfy Rule 23's requirements because each class member was subject to a different set of conditions for different periods of time.  The City also argues that the narrowed class definitions fail to distinguish between inmates housed in MSI's dormitories and those housed in what the parties describe as MSI's "PODS"; the City asserts (without citing evidence) that the PODS were constructed in the 1990s, after the dormitories were constructed, and therefore had more updated equipment and systems.  Finally, the City argues that the named Plaintiffs were only incarcerated in 2017, and they therefore cannot demonstrate that their experiences were similar to or typical of those incarcerated in the years before or after.  The Court will address these arguments as they relate to Rule 23's factors.

1. <u>Numerosity</u>

There is no dispute that each of the Narrowed Conditions Classes consists of thousands of members and each is therefore so numerous that joinder of all members would be impracticable.

---

[3]  For example, Plaintiffs cite evidence that the City significantly increased funding for contractual improvements to MSI on July 1, 2018, as part of a budget increase. Plaintiffs also cite an October 2018 report by the National Institute of Corrections following its tour of MSI, which detailed problems with respect to the facility conditions but which also noted that repairs to plumbing, air conditioning, and other systems were pending at that time.  Finally, Plaintiffs note that the July 1, 2018 end-date would capture the time before the City closed MSI's dormitories in the fall of 2018; the closure substantially reduced MSI's inmate population.

2. <u>Commonality and Predominance</u>

In general, Plaintiffs' claims require proof that the conditions of confinement "posed a substantial risk of serious harm" to the plaintiffs, and that the defendant was aware of the substantial risk of harm and deliberately indifferent to it.[4] *See, e.g., Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012). Because Plaintiffs in their Renewed Motion allege that the conditions of MSI applied to them in substantially uniform ways, in a single facility over a discrete time period, a classwide proceeding on this claim will generate common answers as to each of these elements. *See, e.g., Scott v. Quay*, 338 F.R.D. 178, 190 (E.D.N.Y. 2021) (certifying a conditions-of-confinement class under Rule 23(b)(3) upon finding that "Plaintiffs' claims arise from conditions that applied to them in uniform or similar ways, and which they allege were caused by defendants' policies, acts, and omissions").

Plaintiffs also seek damages based on a common model linked to their theory of liability. In particular, Plaintiffs seek general damages on a per-diem basis, at a rate set by the fact-finder and not based on any individual characteristics of class members. Plaintiffs do not seek special damages for out-of-pocket losses, such as lost earnings or

---

[4] Plaintiffs separate their Narrowed Conditions Classes into one containing pretrial detainees and one containing post-conviction detainees because of the different constitutional amendments applicable to each category—Fourteenth Amendment's Due Process Clause as to pretrial detainees and Eighth Amendment as to post-conviction detainees. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, the distinction " makes little difference as a practical matter" because "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

9

medical expenses. *See* ECF No. 249 at 39. For all of these reasons, individual assessments of damages do not erode the predominance factor under Rule 23(b)(3). *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, No. 99-CV-2844 (DRH), 2008 WL 850268, at *6 (E.D.N.Y. Mar. 27, 2008) (holding that individual damages issues would not predominate in a class action challenging strip searches because "a jury in this case, hearing the procedures used by Defendants for strip searches together with the testimony of a number of class members as to the circumstance of actual searches, could . . . determine an amount of general damages awardable to each member of the class").

      a.  <u>Differences in Combination of Conditions and Length of Time of Detention</u>

The Court rejects the City's contention that differences in the combinations of conditions and length of time during which each class member was exposed to allegedly harmful conditions precludes class certification. The City relies on the general proposition that conditions-of-confinement claims require consideration of the "totality of circumstances" of confinement and that exposure to harmful conditions for only a minimal length of time may not rise to the level of a constitutional violation. *See, e.g.*, *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003).

But this rule does not preclude a finding of commonality. *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 363 (5th Cir. 2017) (affirming class certification even where no two class members had "the exact same risk," as the prison's conditions were alleged to pose an unconstitutional risk of serious harm to all class members); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("[E]very inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk

10

of serious harm"); *Hassine v. Jeffes*, 846 F.2d 169, 178 (3d Cir. 1988) (holding that commonality was satisfied where prisoners complained that deficient conditions regarding plumbing, food service, and inmate security existed at the prison and that they were subject to these conditions). If it did, it is not clear how any class of prisoners seeking to contest the conditions of confinement could satisfy Rule 23.

Liability for all class members will depend on proof that the City had a policy or custom of detaining inmates in cells plagued with pest infestations, plumbing problems, and mold; that these conditions posed a substantial risk of serious harm to inmates; and that the City was deliberately indifferent to that risk. Assuming that Plaintiffs can prove these elements, any variations in the length of time of detention may "speak . . . to damages, not liability.[5] And differences in damages alone will not defeat class certification." *Flood v. Dominguez*, 270 F.R.D. 413, 418 (N.D. Ind. 2010); *see also Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005), *amended on reconsideration,* No. 04 C 6804, 2005 WL 3299391 (N.D. Ill. Nov. 30, 2005) ("[I]f it is unlawful to hold detainees for prolonged periods in interrogation rooms without a toilet, bed, or regular meal service, it is unlawful as to each class member regardless of factual variations in their actual experiences while in custody."); *MacNamara v. City of New York*, 275 F.R.D. at 152–53 ("The fact that the eventual assessment of damages may require individualized proof of injury does not preclude class treatment of allegations that

---

[5] To the extent that the City successfully establishes that the conditions did not pose a substantial risk of harm to those held for less than a certain amount of time as a matter of law, classwide relief may be limited accordingly.

11

the shared confinement conditions were unlawful.").

  b. <u>Inmates Housed in Dormitories Versus PODS</u>

Although the City asserts (without citing evidence) that the fixtures and systems in the dormitories and PODS differed, Plaintiffs' common evidence, which includes inspection records and reports of inmate complaints produced by the City, address conditions of the entire MSI facility, including both the dormitories and the PODS. On this record, there does not appear to be any significant difference in the alleged deficiencies as between the dormitories and PODS, except with respect to air conditioning which is addressed below with respect to the heat subclasses. Therefore, the failure to distinguish between detainees in dormitories and those in PODS does not defeat commonality or predominance with respect to the Narrowed Conditions Classes.

 3.  <u>Typicality</u>

"Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018) (citation omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citation omitted).

Plaintiffs identify Borden, Mosley, Wortham, Williams, and Barnes as class representatives of the pretrial conditions class because they were held during the relevant time as pretrial detainees; and Cody and Barnes as class representatives of the post-conviction conditions class because they were held during the relevant time post-

12

conviction. Each of these named Plaintiffs is a proper class representative as each alleges that he or she was subject to substantially similar conditions of MSI. Although the City correctly asserts that the named Plaintiffs were only incarcerated in 2017, Plaintiffs offer common evidence, including inspection records and reports of inmate complaints produced by the City, purporting to reflect substantially similar poor conditions throughout the class period.

4. Adequacy

The adequacy factor ensures "due process for absent class members, who generally are bound by a judgment rendered in a class action." *Rattray v. Woodbury Cty., Iowa*, 614 F.3d 831, 835 (8th Cir. 2010). "This means the class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and that each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 553 (W.D. Mo. 2014). The factors includes consideration of "the experience and capability of the representative's counsel." *Rattray*, 614 F.3d at 836.

The Court is confident based on the record and the conduct of counsel and parties throughout this litigation that the named Plaintiffs' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action.

5. Superiority

The Court also concludes that certification of the Narrowed Conditions Classes is superior to individual litigation. The class includes thousands of persons within a generally vulnerable population of prisoners and pretrial detainees, who would be

unlikely to commence litigation on their own behalf. *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."). Resolution of their claims in a single forum, as opposed to thousands of individual claims, would also serve the interests of judicial economy.

For all of these reasons, the Narrowed Conditions Classes satisfy the requirements of Rules 23(a) and (b)(3). The Court will thus certify the Narrowed Pretrial Conditions Class under Rule 23(b)(3), and will appoint Jasmine Borden, Michael Mosley, Diedre Wortham, Eddie Williams, and Callion Barnes as Class Representatives. The Court will also certify the Narrowed Post-Convictions Conditions Class under Rule 23(b)(3), and will appoint James Cody and Callion Barnes as Class Representatives.

**Narrowed Heat Subclasses**

Plaintiffs contend that the Narrowed Pretrial Heat Subclass and Narrowed Post-Conviction Heat Subclass ("Narrowed Heat Subclasses") can be ascertained through objective criteria, including the City's records and national weather data. Plaintiffs limit the classes to detainees housed in MSI's dormitories because Plaintiffs concede that the PODS were equipped with some form of air conditioning (though Plaintiffs do not concede that the air conditioning was adequate).

Plaintiffs also limit the Narrowed Heat Classes to the time period of November 12, 2012 through July 24, 2017, the date that Plaintiffs allege temporary air conditioning was installed in MSI's dormitories. Based on national weather data, Plaintiffs argue that,

14

during this limited class period, there were at least 310 days in which the external air temperatures reached above 88 degrees Fahrenheit.

Plaintiffs rely on the report of their expert, James Balsamo, and the City's own records, including its measurements of dormitory temperatures, to assert that, on days when the external temperature exceeded 88 degrees, the recorded temperature inside MSI's dormitories was consistently at or above the external temperature. For example, Plaintiffs cite City records reflecting interior temperature readings of up to 100 degrees when the external temperature reached 88 degrees.

The City contends that differences in the named Plaintiffs' testimony demonstrate that Plaintiffs cannot establish commonality or predominance. For example, the City notes that some but not all of the named Plaintiffs admitted that they were provided with ice or the ability to take a cold shower on hot days. Further, the City asserts that the proposed 88-degree temperature threshold is arbitrary and inconsistent with federal law. Finally, the City argues that it cannot be easily ascertained from the City's records whether a detainee was housed in the dormitories as opposed to PODS. The Court will address these arguments as they relate to Rule 23's factors.

1. <u>Numerosity</u>

There is no dispute that each of the Narrowed Heat Subclasses consists of over one thousand members and each therefore satisfies numerosity.

2. <u>Commonality and Predominance</u>

It is well established a violation of the Eighth Amendment (for post-conviction detainees) or of due process (for pretrial detainees) can be established based on exposure

15

to excessive heat without adequate mitigating measures. *See, e.g.*, *Yates*, 868 F.3d at 360. Plaintiffs' excessive heat claims pose the following common questions, proof of and answers to which will be common to the class: whether excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all inmates, whether the City's mitigation efforts were adequate, and whether MSI officials were deliberately indifferent to that risk. And, again, Plaintiffs seek general, per-diem damages based on a common model rather than on individual characteristics of members.

    a. <u>Mitigation Measures and Heat Threshold</u>

Plaintiffs proffer expert testimony and other common evidence regarding both the danger of temperatures in excess of 88 degrees to detainees' health and safety and the inconsistency and insufficiency of the City's mitigation measures in the form of ice, showers, or industrial fans to address this danger. The City references some of the named Plaintiffs' deposition testimony regarding differences in, for example, the amount (if any) of ice distributed to inmates. However, such differences in testimony help prove Plaintiffs' uniform allegation that the City's mitigation measures were, at best, haphazard and insufficient to reduce the danger posed by excessive heat.

In other words, according to Plaintiffs' theory, the answer to the question of what mitigation measures the City provided will be the same for all class members: sporadic and inconsistent distribution of ice or cold showers, and inadequate fans. *See Yates*, 868 F.3d at 363 (noting that a common question was raised by evidence that a prison's "heat-mitigation measures—more frequent showers, cold drinking water, fans, and temporary access to air-conditioned 'respite areas'—were ineffective to reduce the risk of serious

16

harm to a constitutionally permissible level for *any* inmate") (emphasis in original).

In opposing the 88-degree temperature threshold, the City also relies on a Fifth Circuit case, *Ball v. LeBlanc*, 881 F.3d 346 (5th Cir. 2018). In that case, the appellate court upheld the finding of a constitutional violation by prisoners asserting excessive heat conditions but found that the district court's injunctive relief mandating facility-wide air conditioning and setting a maximum heat index "exceeded the bounds of the Prison Litigation Reform Act." 881 F.3d at 348. The court noted that "a temperature trigger is necessary to ensure that the injunction is inapplicable during months when there is no heat risk" but that by ordering injunctive relief that "effectively require[ed] a temperature *ceiling*[,] the district court went astray." *Id.* at 353 (emphasis in original).

In this case, the Court is not concerned with the PLRA's limits on injunctive relief, as the only claims remaining are for damages. Moreover, Plaintiffs do not offer the 88-degree temperature threshold as a ceiling by which to define the constitutional violation; they merely use the temperature threshold as a trigger to determine the days on which there was a heat risk. Whether a constitutional violation occurred with respect to those days will depend on other factors, including the adequacy of any mitigation measures.

b. <u>Ascertainability of Inmates Housed in Dormitories Versus PODS</u>

As an initial matter, the question with respect to ascertainability is merely whether "its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). Plaintiffs offer such objective criteria in the form of data produced by the City and its third-party software vendor, which Plaintiffs assert includes dormitory and cell assignments for incarcerated class members throughout

17

the class period, as well as national weather data. ECF No. 324 at 17. Thus, the Narrowed Heat Subclasses are ascertainable.

To the extent that the City complains that the process to compare the inmate data to the weather data in order to compile a class list would be "lengthy" or burdensome (*see* ECF No. 316 at 22), such burden would not make the class unascertainable. Nor would the burden be so great as to undermine the superiority of the class action procedure.

3. <u>Typicality</u>

Plaintiffs identify Williams and Mosley as class representatives of the Narrowed Pretrial Heat Subclass,[6] and Cody and Barnes as class representatives of the Narrowed Post-Conviction Heat Subclass. Each of these named Plaintiffs is a proper class representative as each alleges that he or she was subject to substantially similar excessive heat conditions while detained in MSI dormitories, and Plaintiffs offer common evidence through the City's records and its expert purporting to reflect substantially similar excessive heat conditions throughout the class period.

4. <u>Adequacy</u>

As noted above, the Court concludes based on the record before it that the named Plaintiffs' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action.

---

[6]   According to Plaintiffs, the other named Plaintiffs who were pretrial detainees were housed in the PODS, rather than the dormitories, and would therefore not serve as representatives for the Narrowed Pretrial Heat Subclass.

18

5. <u>Superiority</u>

The Court also concludes that certification of the Narrowed Heat Subclasses is superior to individual litigation for the reasons stated above.

For all of these reasons, the Narrowed Heat Subclasses satisfy the requirements of Rules 23(a) and (b)(3). The Court will thus certify the Narrowed Pretrial Heat Subclass under Rule 23(b)(3), and will appoint Michael Mosley and Eddie Williams as Class Representatives. The Court will also certify the Narrowed Post-Convictions Heat Subclass under Rule 23(b)(3), and will appoint James Cody and Callion Barnes as Class Representatives.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 23(c)(1)(C) Proposing Narrower Class Definitions and Renewing Motion for Class Certification is **GRANTED**. ECF No. 307.

**IT IS FURTHER ORDERED** that named Plaintiffs Jasmine Borden, Michael Mosley, Diedre Wortham, Eddie Williams, and Callion Barnes are appointed as Class Representatives to represent the <u>Narrowed Pretrial Conditions Class</u>, defined as follows:

> **<u>Narrowed Pretrial Conditions Class</u>**: All persons who were pretrial detainees in MSI between November 13, 2012 and July 1, 2018.

**IT IS FURTHER ORDERED** that named Plaintiffs Michael Mosley and Eddie Williams are appointed as Class Representatives to represent the <u>Narrowed Pretrial Heat Subclass</u>, defined as follows:

>**Narrowed Pretrial Heat Subclass**: All pretrial detainees who were detained in dormitories in MSI between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit.

**IT IS FURTHER ORDERED** that named Plaintiffs James Cody and Callion Barnes are appointed as Class Representatives to represent the Narrowed Post-Conviction Conditions Class and Narrowed Post-Conviction Heat Subclass, defined as follows:

>**Narrowed Post-Conviction Conditions Class**: All persons who were post-conviction detainees in MSI between November 13, 2012 and July 1, 2018.
>
>**Narrowed Post-Conviction Heat Subclass**: All post-trial detainees who were detained in dormitories in MSI between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit.

**IT IS FURTHER ORDERED** that Nathaniel Carroll, Matthew Dollan, Brandon Jackson, Blake Strode, Maureen Hanlon, Jacki Langum, and John Waldron of ArchCity Defenders, Inc., 440 N. 4th Street, Suite 390, St. Louis, Missouri 63102; and Robert J. Alesi, Gail Rodgers, Dennis Kiker, Saher Valiani, and Matthew Riley of DLA Piper, 1251 Avenue of the Americas New York, NY 10020, are appointed as Class Counsel.

**IT IS FURTHER ORDERED** that the parties shall promptly meet and confer and shall file, within **14 days** of the date of this Memorandum and Order, a joint proposed schedule for the remainder of the litigation, including prompt proposed deadlines for the re-referral of this action to mediation, the filing of dispositive and/or other anticipated pretrial motions, and trial, as well as the estimated length of trial.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of May, 2022.