UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CODY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2707 AGF |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs claim that they endured inhumane conditions, in violation of the Eighth

and Fourteenth Amendments, while detained either pretrial or post-conviction in the City

of St. Louis's (the "City") Medium Security Institution ("MSI").  They filed suit against

the City under 42 U.S.C. § 1983, asserting six claims: cruel and unusual conditions in

violation of the Fourteenth and Eighth Amendments (Counts I and II); unlawful

retaliation in violation of the First Amendment (Count III); failure to supervise and train

MSI employees and officials with respect to maintaining sanitary and habitable

conditions (Count IV); and excessive heat exposure in violation of the Fourteenth and

Eighth Amendments (Counts V and VI).  The Court has certified the conditions-of-

confinement and excessive heat exposure claims as class claims, and these class claims

have been narrowed in certain respects by Plaintiffs as set forth in their renewed motion

for class certification.  *See* ECF No. 335.

Both sides seek to present the opinions of corrections experts regarding nationally

recognized standards of care for prisons and whether the City complied with those

standards as they relate to Plaintiffs' claims.  And both sides have now moved (ECF Nos.

271, 273 & 275) to exclude from evidence at trial the opinions, testimony, and reports of

the other's experts.  For the reasons set forth below, each of the motions will be granted

in part and denied in part.

## BACKGROUND

### Plaintiffs' Experts

I.      James Balsamo

Plaintiffs have retained James Balsamo, an environmental health and safety

consultant, as an expert to opine on the health and safety risks that MSI's conditions

pose to inmates.  Balsamo has decades of experience in environmental health, including

specific experience conducting environmental health and safety investigations of

correctional institutions, and has earned advanced degrees and certifications in public

and environmental health.

Balsamo inspected MSI's sanitation and hygiene practices, pest control,

plumbing, and heating and cooling.  Balsamo based his opinions on his physical

inspections of the facility and his review of the discovery produced in this case.  He

compared his findings with respect to the facility to specific national standards set forth

by the American Correctional Association ("ACA") and American Public Health

Association and described how various standards were not met, with respect to discrete

areas, such as toilet and bathing facilities, housekeeping, clothing and bedding, laundry,

pest control, food preparation, lighting, heating, cooling, and ventilation, among other things.  Balsamo ultimately opined that "as currently operated, the Workhouse presents a significant environmental health and safety risk to the inmates housed there and this must change in order to bring this facility up to a reasonably healthy, safe and sanitary level."  ECF No. 274-1 at 70.

With respect to Plaintiffs' excessive heat exposure claims, Balsamo calculated heat index values at MSI throughout the hottest months of 2016 and 2017.  He based these heat index values on internal temperature logs that existed in the City's records, historical daily average relative humidity levels for St. Louis, information provided by the National Weather Service heat index chart, and the National Center for Environmental Prediction Center's Heat Index Calculator.  He concluded that "82% of the times the temperature readings, as noted in the Workhouse internal records, presented a dangerous to extremely dangerous environment for the general population inmates in the Workhouse. An even higher risk was created for those inmates in these environments with age or underlying medical conditions."  ECF No. 274-1 at 53.  He generally opined that "[e]xcessively high temperatures can be harmful to all inmates and especially dangerous for inmates with underlying medical conditions and those taking certain prescribed medications."  *Id.* at 50.

Balsamo testified by deposition that heat indexes may not be reliably measured using surface temperature readings but instead must be based on ambient air

temperature readings.  Balsamo further testified that the scant and incomplete internal

temperature logs he was provided by way of MSI records did not reflect the manner in

which the readings were taken or whether they were surface temperature or ambient air

temperature readings.  The City has now presented evidence by way of MSI staff

depositions that the temperature readings were, in fact, surface temperature readings.

II.      Eldon Vail

Plaintiffs have also retained Eldon Vail, a former correctional administrator, to

opine regarding whether MSI's policies and practices conform to national correctional

standards and whether they create a substantial risk of harm to MSI prisoners.

Vail reviewed discovery and toured MSI on August 27, 2018 in order to prepare

his opinions.  Vail specifically opined regarding MSI's policies and practices as they

relate to use of force, disciplinary procedures, facility conditions, and staffing,

comparing these to specific standards set forth by the ACA and other national bodies.

Vail concluded that MSI policy regarding use of force is deficient and results in

unnecessary and excessive use of force in approximately 40% of the incidents he

reviewed; that MSI's policies and practices fail to account for the impact and

prevalence of the mentally ill in their jail; that MSI fails to meet national and

international standards for the required opportunity for exercise; that the physical

facility of MSI has been in a serious state of disrepair, including with respect to pest

infestations, plumbing, and heating and cooling; and that recordkeeping practices at

MSI are poor.

On May 26, 2021, after the deadline to disclose experts as set forth in the operative Case Management Order and shortly before the close of discovery, Vail disclosed a supplemental report based on additional discovery produced by the City after his deposition in this case.  Vail's supplemental report tracks his initial report with respect to the areas of use of force, disciplinary procedures, facility conditions, and staffing, and purports to bolster Vail's opinions regarding these areas with information from the updated discovery.

**City's Experts**

I.      George R. Hardinger

The City has retained George R. Hardinger as an expert to opine on the general conditions of confinement at MSI from 2012 to the present, "relative to the environmental health and safety of those detained" in MSI.  ECF No. 272-1 at 2. Hardinger has decades of experience in corrections, including serving as a warden, director of planning of a county department of correction, and consultant and lecturer on correctional facility management and operations.

Hardinger reviewed discovery and toured MSI on June 10, 2020 in order to prepare his opinions; however, he states that he did not formally inspect MSI, conduct any tests or take any measurements, or interview any staff or inmates.  Based on the documents provided in discovery, his site visit, and his experience in the field of

correctional practices, operations, and management, he opined as follows:

> Defendant fully executed [its] official duties as related to the MSI. The City acted and continues to act in good faith to discharge its duties and responsibilities to provide the essential resources and support – specifically an adequate number of correctional personnel, supplies and equipment needed to operate, manage and supervise MSI in a manner that satisfies the prevailing standard of care for the safe, secure and humane operations of a secure local adult correctional facility.  Additionally, the City through its agents has endeavored to comply with the applicable Standards of the American Correctional Association and the National Commission of Correctional Health Care (NCCHC).  It is my opinion that the record clearly establishes that the Defendant provided an institutional environment that met and continues to meet the prevailing Standard(s) of Care to the prisoners and detainees in the MSI.  Specifically, those lawfully detained at MSI were confined in an environment where reasonable efforts were made to maintain an environment that protects detainees from serious harm and detainees are not subjected to cruel and unusual punishment or inhumane conditions. Instead, the record clearly supports that as agents of the City the correctional administrators and correctional staff at levels discharged their duties and responsibilities of protecting the inmates committed to their custody in a professionally competent manner.

> * * *

> The City has not failed its Constitutional responsibilities to protect the health, safety, and welfare of those legally confined at the MSI.  At no time has the City or its agents been deliberately indifferent to the constitutional rights of those detained in the facility to be reasonably safe from serious harm.

> The MSI is housing approximately 100 detainees and that is well below the designed capacity of the direct supervision housing units (pods) that can single cell 208 detainees.  The facility is not under-staffed and the staffing levels are adequate to insure that detainees are reasonably safe from harm and have access to medical and mental health treatment, and to the other programs and services provided to promote rehabilitation and re-entry into the community.

> The record establishes that Correctional Officers and other staff are

6

properly trained and certified to perform their official duties.

ECF No. 272-1 at 3, 10.

    II.    <u>Joseph E. Gunja</u>

The City has also retained a second corrections expert, Joseph E. Gunja, to testify regarding the physical structure of MSI as it relates to managing inmates and detainees in the City's care, operations of MSI, use-of-force protocols, and MSI staff's performance of correctional duties.  Gunja has decades of experience in corrections, including serving as a warden, regional director for the Federal Bureau of Prisons' Western Region, and a correctional management consultant.

In preparing his opinions, Gunja reviewed discovery; toured MSI on March 24, 2021; and, on that same date, interviewed MSI Superintendent Jeffrey Carson and interacted with a limited amount of inmates and staff.  Based on this review and on his experience, he opined as follows:

> I have found Superintendent Carson, his upper management officials, and staff are doing a superior job in managing the inmates under their care and oversight. The operational security is sound and I did not find any deficiencies with the way the facility is managed day-to-day. Contrarily, the staff were professional, and showed a real concern for inmates under their care. From my review, the City has consistently taken action to address issues as they arise relating to the physical plant and structure. I did not find any significant issues with physical security in preventing escapes or preventing injuries and serious harm to staff and inmates
>
> While there were some structural issues with the facility, the City of St. Louis has spent a great deal of funding to correct issues when reported, to include[] repairing and/or replacing electrical, plumbing, waste water, and other devices, and there were no specific areas where inmates were housed

that contained hazardous or harmful situations. Mr. Carson also advised me the city has been responsive to issues when he reported them. ln addition, I did not find any areas where inmates were housed or utilized program areas that were harmful or hazardous.

The use of force protocols at MSI include complete after-action reviews of each incident, wherein the Superintendent, Chief of Security, upper management officials, and medical staff (where appropriate) complete reviews to include reviewing documents and reports, photographs and videos of the incidents, and staff interviews. This allows them to conduct a thorough after-action assessment of the incidents, and plans for corrective action, if needed. This is the same standard as used by the Federal Bureau of Prisons, and as outlined in ACA standards

ECF No. 272-4 at 9.

## ARGUMENTS OF THE PARTIES

The City's *Daubert* Motions

The City argues that Balsamo's and Vail's opinions should be excluded because the opinions are not the product of reliable methods and not based on sufficient data. With respect to Balsamo, the City argues that he improperly relied on surface temperature measurements taken by MSI, rather than ambient air temperature, in order to calculate heat indexes.  The City further argues that the remainder of Balsamo's opinions regarding facility conditions are based on assumptions not supported by adequate data. Finally, the City argues that Balsamo is not qualified to opine on the medical risk posed by the facility conditions because he is not a medical doctor.

As to Vail, the City argues that Vail's opinions regarding the use of force are not based on adequate data but instead rely on a biased sample of use-of-force reports

8

referred to Internal Affairs for investigation.  Likewise, the City argues that Vail's

opinions regarding access to recreation time fail to fairly represent the relevant records

on this issue, and that Vail's opinions regarding facility temperatures are based on

Balsamo's unreliable opinions.  Finally, the City argues that the Court should exclude

Vail's supplemental report because it was not timely disclosed.

Plaintiffs' *Daubert* Motions

Plaintiffs argue that Hardinger's and Gunja's opinions are unreliable,

insufficiently supported, and unhelpful.  Specifically, Plaintiffs argue that neither expert

has identified specific national standards with which the City complied or has explained

their generalized opinions that the City complied with "applicable" standards.  Plaintiffs

likewise argue that both Hardinger and Gunja fail to sufficiently explain how their

opinions are based on the facts of this case or what methodology they relied upon in

reaching those opinions.  Next, Plaintiffs argue that Hardinger's testimony should be

excluded to the extent it opines on the ultimate legal issues of whether MSI 'meet[s] the

Court established Standard of Care"; whether the City "failed its Constitutional

responsibilities to protect the health, safety, and welfare of those legally confined"; and

whether the City or its agents were "deliberately indifferent to the constitutional rights

of those detained in the facility to be reasonably safe from serious harm."   ECF No.

272 at 21-22 (emphasis omitted).  Finally, Plaintiffs argue that specific portions of

Hardinger's opinions should be excluded as based on insufficient facts or lack of

expertise.  These include Hardinger's opinions on conditions at MSI between 2012 and

2015, because Hardinger reviewed no facts or data from this timeframe; and his

opinions regarding certain subject areas such as security or sanitation, which he did not

personally evaluate or in which he is not formally trained.

## **DISCUSSION**

The admission of expert testimony in federal court is governed by Federal Rule of

Evidence 702.  *Wagner v. Hesston Corp*., 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702

provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of
> the case.

Fed. R. Evid. 702.  The rule was amended in 2000 in response to *Daubert v. Merrell Dow*

*Pharms., Inc*., 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role

to exclude unhelpful and unreliable expert testimony.

Factors relevant to the reliability and relevancy determinations include: (1)

whether the theory can be or has been tested; (2) whether the theory has been subjected

to peer review or publication; (3) whether the theory has a known or potential error rate

and standards controlling its operation; and (4) whether the theory is generally accepted in the scientific community.  *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).  Additional factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001) (citations omitted).

"[T]he *Daubert* reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (citation omitted); *see also Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands"). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.* at 1011.  The question is whether the expert's opinion is sufficiently grounded to be helpful to the jury. *Id.* at 1012.

Although the proponent of the expert testimony must prove its admissibility by a preponderance of the evidence, *Daubert*, 509 U.S. at 592, Rule 702 "is one of admissibility rather than exclusion." *Shuck*, 498 F.3d at 874 (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction

11

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) (quoting *Daubert*, 509 U.S. at 596).  Proposed expert testimony "must be supported by appropriate validation - i.e., good grounds, based on what is known"; expert "knowledge connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590 (citation omitted).  But any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility."  *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation omitted).

The City's Motions to Exclude Balsamo and Vail

    I.      Balsamo

With respect to the City's challenges to Balsamo's use of MSI's internal temperature logs to calculate particular heat indexes, the Court concludes that Balsamo's particular heat index calculations must be excluded.  The Court appreciates that, as Balsamo testified in his deposition, MSI's internal temperature logs were the only evidence that the City produced of past internal temperatures and that the logs were apparently relied upon by MSI officials themselves in making decisions regarding heat-mitigation measures.  Nevertheless, Plaintiffs have not disputed that those temperature logs were, in fact, surface temperature readings rather than ambient air temperature readings.  And Balsamo admitted by deposition that any calculation of heat index based on surface temperature readings is inherently unreliable.

12

The Court is troubled that a public entity would take such inherently inaccurate temperature readings.  However, it is ultimately Plaintiffs' burden to ensure the accuracy of the data on which their experts rely.  While Plaintiffs may not have been able to compile a complete record of accurate internal temperatures over the class period in the absence of reliable facility records, they could have obtained accurate data for this expert for at least a certain portion of the period.  Under these circumstances, Balsamo's specific heat index calculations must be excluded.

But other than excluding these particular calculations, the Court will admit Balsamo's opinions regarding excessive heat conditions.  The Court notes that Balsamo's opinions do not rely solely on the heat index values and instead encompass Balsamo's own observations of the ventilation and other heating and cooling systems, some of his own ambient air temperature readings taken during his visit to the facility, and his opinions (by way of his supplemental report) that MSI's incomplete and inadequate internal temperature logs are themselves evidence of MSI's failure to properly maintain safe temperatures.[1]

With respect to the City's other challenges to the factual bases supporting Balsamo's opinions, the Court concludes that such challenges are better explored on

---

[1]      Further, as Balsamo testified and the City concedes, in the absence of reliable internal temperature readings from a facility, historical weather data may be used as the next best reliable source of ambient air temperature in connection with determinations of heat levels.

13

cross examination.  Except as to the specific calculations of heat index values,

Balsamo's opinions are not so fundamentally unsupported as to warrant exclusion.

Finally, the Court agrees with Plaintiffs that Balsamo's extensive experience in public

and environmental health qualifies him to render his opinions, which are focused on

risks to the health and safety of the inmate population generally rather than medical

diagnoses or causation in particular cases.

    II.    <u>Vail</u>

Except as to the timeliness of Vail's supplemental report, the City's *Daubert*

challenges with respect to Vail focus on the factual bases for Vail's opinions.  Such

factual challenges may be addressed on cross examination but do not warrant exclusion

of Vail's opinions.[2]  However, the Court will exclude the portions of Vail's opinions

that rely upon the temperature logs recorded by MSI staff, which as noted above with

respect to Balsamo's opinions, are not reliable indicators of ambient air temperature.

The Court will not exclude Vail's supplemental report or impose sanctions as a

result of the late disclosure.  When determining whether to exclude untimely

supplemental expert reports, the Eighth Circuit considers the reason for failing to

---

[2]    In its reply brief, the City also argues that Vail's opinions regarding the use of
force are irrelevant, as the claims certified to proceed as class claims do not include any
use-of-force allegation.  However, Plaintiffs have not yet advised whether and how they
intend to proceed on causes of action that were pled in the operative complaint but not
certified as class claims.  The Court will be in a better position to address the City's
relevance argument after Plaintiffs have so advised the Court.

comply; the importance of the evidence; the opposing party's need for time to prepare; and whether a continuance would be useful. *See Amplatz v. Country Mut. Ins. Co.*, 823 F.3d 1167, 1172 (8th Cir. 2016). As Plaintiffs note, Vail's supplemental report was based on the City's supplemental production of documents, produced in part as a result of the Court's rulings on Plaintiffs' motions to compel, which occurred after Vail's initial report and deposition.

There is also no dispute that Plaintiffs offered to make Vail available for a second deposition, but the City did not request one. The discovery schedule in this case was extended multiple times at the request of both parties, and the Court is confident that the City could have deposed Vail a second time had it wished to do so. Moreover, the City has not identified and the Court has not found new opinions disclosed in the supplemental report. Rather, the supplemental report appears to merely bolster Vail's original opinions based on his review of the additional discovery  For these reasons, the belated disclosure of Vail's supplemental report does not warrant exclusion or other sanctions.

Plaintiffs' Motions to Exclude Hardinger and Gunja

The Court will exclude Hardinger's and Gunja's opinions regarding (1) whether MSI complied with national professional standards and (2) whether the City acted with deliberate indifference or otherwise adhered to its constitutional obligations. Although both experts summarily opined that the City complied with the ACA and other

15

nationally recognized standards, neither expert identified the actual standards to which

they referred or how such standards were met.  Nor did they do so in their deposition

testimony.  The experts would be asking the jury to accept their conclusions in this

regard based solely on their say-so.  "Nothing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence that is connected to existing

data only by the *ipse dixit* of the expert."  *In re Bair Hugger Forced Air Warming*

*Devices Prods. Liab. Litig.*, 9 F.4th 768, 782 (8th Cir. 2021) (citation omitted).  Other

federal courts have excluded similar conclusory opinions regarding compliance with

industry standards when the expert has failed to identify the standards or describe why

they were met.  *See, e.g.*, *Cox v. Glanz*, No. 11-CV-457-JED-FHM, 2014 WL 916644,

at *6 (N.D. Okla. Mar. 10, 2014) (excluding an expert who had "not described *any*

particular jail standards or identified what specific actions are in the norm of acceptable

practices for jail personnel confronted with an inmate in need of medical care" but

instead "merely recite[d] a chronology from the Jail medical records, then announce[d],

*ipse dixit,* that Jail and medical staff acted appropriately, without explaining how he

reached that conclusion") (emphasis in original); *Dukes v. Georgia,* 428 F. Supp. 2d

1298, 1315 (N.D. Ga. 2006), *aff'd sub nom. Dukes v. State of Georgia*, 212 F. App'x

916 (11th Cir. 2006) (holding the same where the expert did "not specify what

experiences or what standards he relied upon" in opining regarding a party's

compliance with nationally accepted standards for correctional health care).

Likewise, the experts' opinions regarding the City's compliance with its

constitutional obligations or whether the City acted with deliberate indifference are

unsupported and unhelpful.  Neither defense expert has explained the basis for his bare

conclusions as to these questions of law or demonstrated his qualifications to render

such conclusions.  Their conclusory opinions in this regard will not assist the jury.

Rather, the Court will instruct the jury as to the legal elements of Plaintiffs' claims.  *See*

*Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) ("Murphy's testimony

involved only his views concerning the reasonableness of the officers' conduct in light

of Fourth Amendment standards. To that end, his testimony was not a fact-based

opinion, but a statement of legal conclusion . . . for the court to make."); *United States*

*v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("As a general rule, questions of law are

the subject of the court's instructions and not the subject of expert testimony.") (citation

omitted); *Tanner v. City of Sullivan*, No. 4:11-CV-1361 NAB, 2013 WL 121476, at *2

(E.D. Mo. Jan. 9, 2013) (noting that deliberate indifference requires proof of an

officer's knowledge, which is not the province of expert testimony).

Finally, the Court will exclude Hardinger's opinions to the extent they purport to

relate to the time period of 2012 to 2015.  Hardinger admitted in his deposition that he

did not review any records from this time period and that his opinions did not relate to

this time period.

However, the Court will otherwise deny Plaintiffs' motions.  Except to the extent

17

discussed above, Hardinger and Gunja are well qualified to testify regarding industry practice in general and why they believe MSI's operations over the time period that they examined conformed to industry norms.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to exclude James Balsamo is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 273.  Balsamo's heat index calculations will be excluded.

**IT IS FURTHER ORDERED** that Defendant's motion to exclude Eldon Vail is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 275.  Vail's opinions that rely upon the temperature logs recorded by Defendant will be excluded.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to exclude the opinions, testimony, and reports of Defendant's proposed expert witnesses George Hardinger and Joseph Gunja is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 271.  The Court will exclude these experts' opinions that Defendant complied with national professional standards, adhered to constitutional obligations, and did not act with deliberate indifference; the Court will also exclude Hardinger's opinions to the extent they purport to relate to the time period of 2012 to 2015.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2022.