# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
## St. Louis, Missouri 63102

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 03, 2024

Andrew D. Wheaton
CITY COUNSELOR'S OFFICE
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

RE:  22-2348  James Cody, et al v. City of St. Louis

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14-day period for filing permitted by FRAP 40 may be denied as untimely.

Maureen W. Gornik
Acting Clerk of Court

HAG

Enclosure(s)

cc:    Nathaniel R. Carroll
Clerk, U.S. District Court, Eastern District of Missouri
Abby Joe Duncan
John Thaddeus Eckenrode
Honorable Audrey G. Fleissig
David Charles Frederick
Maureen Hanlon
Dennis R. Kiker
Jacki Janelle Langum
Derek C. Reinbold

William B. Rubenstein
Blake A. Strode

District Court/Agency Case Number(s):   4:17-cv-02707-AGF

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 03, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE:  22-2348  James Cody, et al v. City of St. Louis

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant and appeared on the brief was Andrew D. Wheaton, of Saint Louis, MO.

  Counsel who presented argument on behalf of the appellees and appeared on the brief was Derek C. Reinbold, of Washington, DC. The following attorney(s) also appeared on the appellee brief; David Charles Frederick, of Washington, DC, Jacki Janelle Langum, of Saint Louis, MO, Nathaniel R. Carroll, of Saint Louis, MO, Blake A. Strode, of Saint Louis, MO, Maureen Hanlon, of Saint Louis, MO, Matthew N. Drecun, of Washington, DC, William B. Rubenstein, of Cambridge, MA.

  The judge who heard the case in the district court was Honorable Audrey G. Fleissig.

  If you have any questions concerning this case, please call this office.

      Maureen W. Gornik
      Acting Clerk of Court

HAG

Enclosure(s)

cc:  MO Lawyers Weekly

  District Court/Agency Case Number(s):  4:17-cv-02707-AGF

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2348
_____

James Cody

*Plaintiff - Appellee*

Vincent Grover; John Doe; John Roe

*Plaintiff*s

Michael Mosley; Diedre Wortham, on behalf of themselves and all others similarly situated; Callion Barnes; Eddie Williams; Jasmine Borden

*Plaintiffs - Appellees*

v.

City of St. Louis, for and on behalf of Medium Security Institution

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 10, 2024
Filed: June 3, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

In this civil rights case, Plaintiffs seek damages for the allegedly inhumane conditions experienced at the City of St. Louis's Medium Security Institution (MSI). To that end, Plaintiffs sought certification of classes of pre-trial and post-conviction detainees at MSI.  After the district court denied their first motion to certify, Plaintiffs returned with new proposed classes and renewed their motion.  The district court granted the renewed motion, and the City now appeals, challenging both the decision to certify and several of its procedural aspects.  We reverse the certification of the classes and remand for proceedings consistent with this opinion.

I.

The named Plaintiffs[2] in this case are all former pre-trial or post-conviction detainees at MSI—a facility with a checkered past that closed in 2021 following action by St. Louis's political leaders.  Plaintiffs allege that they were subjected to inhumane conditions at MSI, in violation of the Eighth and Fourteenth Amendments. After suing the City for damages under 42 U.S.C. § 1983, they sought to represent classes of pre-trial and post-conviction detainees.  Plaintiffs asserted that both categories of detainees were subjected to unconstitutionally poor physical conditions in the form of extreme temperatures, mold, faulty plumbing, and pest infestations, and unconstitutionally inadequate operations in the form of understaffing, inadequate recreation time, and the excessive use of force.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024.  *See* 28 U.S.C. § 45(a)(3)(A).

[2]James Cody, Jasmine Borden, Michael Mosley, Diedre Wortham, Callion Barnes, and Eddie Williams.

-2-

Plaintiffs first moved to certify four classes under Federal Rule of Civil Procedure 23(b)(3).[3]  Two were defined as all pre-trial and all post-conviction detainees "who were or will be released from MSI on or after November 13, 2012." And two were "heat" subclasses, defined as all members of the pre-trial and post-conviction detainee classes "who were assigned to a dorm, pod, or other area at MSI in which the internal temperature equaled or exceeded 88 degrees Fahrenheit."

While Plaintiffs' motion to certify was pending, the City and Plaintiffs both filed motions to exclude from evidence at trial the opinions, testimony, and reports of the other's experts concerning standards of care for prisons and the City's compliance therewith.  As relevant here, Plaintiffs sought to present the opinions of James Balsamo, an environmental health and safety consultant with experience investigating correctional institutions, and Eldon Vail, a former correctional administrator.  Balsamo used City records and National Weather Service data to calculate heat indexes for MSI, covering the hottest months of 2016 and 2017.  He opined about the risks that excessively high temperatures created for inmates, and how those risks were exacerbated by inmates' underlying medical conditions or prescription medications.  Vail opined about MSI's policies and practices relating to facility conditions and compared them to standards set by national bodies.  The City argued that Balsamo's opinions should be excluded pursuant to Daubert[4] because he relied on improper data in calculating the heat indexes and because he is not a medical doctor and is therefore not qualified to opine about medical risks posed by conditions at MSI.  It also argued that Vail's opinions about facility temperatures were based on Balsamo's own unreliable opinions.

---

[3]Plaintiffs also sought certification under Rule 23(b)(1), which the district court denied, and which is not at issue on appeal.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011) ("[I]ndividualized monetary claims belong in Rule 23(b)(3).").

[4]Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

-3-

Before ruling on the parties' motions to exclude the expert testimony, the district court denied Plaintiffs' motion to certify the four classes. It reasoned that certification was inappropriate because of the open-ended class periods and because it was undisputed that the City improved the conditions at MSI over that time, for example, by installing air conditioning and substantially reducing the prison population. Moreover, the district court noted that the classes seemed to combine Plaintiffs' distinct complaints about the poor conditions and the use of excessive force: as the district court explained, different legal standards govern excessive force claims and conditions-of-confinement claims. Still, the district court "recognize[d] that a more focused claim, covering a more discrete time period, on behalf of a more uniform class, may well be appropriate for class certification."

Responding to the district court's concerns, Plaintiffs filed a renewed motion for class certification and proposed four new, more narrowly defined classes. The pre-trial and post-conviction classes were renamed as two "conditions" classes which, Plaintiffs argued, eliminated their excessive-force claims. The pre-trial and post-conviction heat subclasses were also narrowed to those detained in MSI's dormitories only, and "on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit." Plaintiffs argued this was an objective criterion for determining exposure to unconstitutionally hot conditions. Plaintiffs' narrowed class definitions also set end dates: July 1, 2018 for the pre-trial and post-conviction conditions classes, and July 24, 2017 for the heat subclasses.

The district court granted Plaintiffs' renewed motion and certified the four new classes pursuant to Federal Rule of Civil Procedure 23(b)(3). It reasoned, in relevant part, that the new conditions classes were appropriate for certification because Plaintiffs' renewed motion alleged that the conditions at MSI applied to them uniformly over a discrete period, meaning that class-wide proceedings would generate common answers to the members' claims. In doing so, the district court rejected the City's contention that variations in the conditions faced by each member and in the length of exposure to those conditions precluded certification. With respect to the heat subclasses, the district court held that certification was

-4-

appropriate, in relevant part, because an Eighth Amendment violation may be proven by demonstrating exposure to excessive heat without adequate mitigation. Moreover, the district court explained that the proffered expert testimony from Balsamo concerning the dangers of high temperatures, and other common evidence of "sporadic and inconsistent" mitigation measures, would "help prove Plaintiffs' uniform allegation that the City's mitigation measures were, at best, haphazard and insufficient to reduce the danger posed by excessive heat." The district court rejected the City's argument that differences in the mitigation measures offered to class members—such as ice and cold showers—precluded certification.

After certifying the four new classes, the district court ruled on the City's and Plaintiffs' respective Daubert motions. As relevant here, the district court agreed with the City that Balsamo's heat indexes must be excluded because they were based on surface temperature data. However, the district court concluded that Balsamo was qualified to render an opinion regarding medical risks to inmates given his experience in public health. So too with his opinions regarding the excessive heat conditions at MSI, which were based on his observations of MSI's ventilation, heating and cooling systems, and his own ambient air temperature readings. The district court excluded Vail's opinions that relied on the surface temperature data but declined to exclude his remaining opinions, finding that the City's challenges to their factual bases were best addressed through cross-examination.

The City timely petitioned this Court for permission to appeal the district court's order certifying the classes, which we granted. See Fed. R. Civ. P. 23(f). The City now appeals, raising several points of error.

II.

"A district court has 'broad discretion' to determine whether certification is appropriate. The district court's rulings on questions of law are reviewed de novo and its application of the law is reviewed for an abuse of discretion. The district court's factual findings are reversible only if clearly erroneous." Stuart v. State Farm

-5-

<u>Fire & Cas. Co.</u>, 910 F.3d 371, 375 (8th Cir. 2018) (citations omitted).  "[T]he [district] court abuses its discretion if it commits an error of law."  <u>Luiken v. Domino's Pizza, LLC</u>, 705 F.3d 370, 372 (8th Cir. 2013).

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b).  Rule 23(a) requires showing that the class meets requirements of 'numerosity, commonality, typicality, and fair and adequate representation.'"  <u>Ahmad v. City of St. Louis</u>, 995 F.3d 635, 643 (8th Cir. 2021) (citations omitted).  Certification under Rule 23(b)(3) requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.

First, we address the City's argument that the district court abused its discretion in allowing Plaintiffs to renew their motion for class certification pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).  In short, the City faults the district court for entertaining the motion on an unchanged record and for citing <u>Hargrove v. Sleepy's LLC</u>, 974 F.3d 467 (3d Cir. 2020), in support of its authority to reconsider the motion.

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  A district court's grant of a motion to reconsider class certification is "a matter within the court's broad discretion."  <u>See In re Wholesale Grocery Prods. Antitrust Litig.</u>, 946 F.3d 995, 1004 (8th Cir. 2019).  That "extends to requests, as here, to reconsider a prior class certification denial."  <u>Id.</u>  A district court abuses its discretion in reconsidering a prior class certification denial "only if it 'rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions.'"  <u>Id.</u> (citation omitted).  This is consistent with the approach in

-6-

other circuits.  See, e.g., In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007) (allowing the petitioners to "return[] to the District Court to seek certification of a more modest class" and explaining that "District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial").

Believing that we had not had occasion to pass upon these issues before, the district court cited Hargrove, 974 F.3d at 476, which held that Rule 23(c)(1)(C) "allows for multiple bites at the apple" and "does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification."  This was no error, as Hargrove is consistent with the law in our circuit, as articulated by Wholesale Grocery.  The City points to no clearly erroneous factual findings or conclusions of law in the district court's decision to consider Plaintiffs' renewed motion to certify.  Accordingly, the district court did not abuse its discretion in entertaining the motion.  Wholesale Grocery, 946 F.3d at 1004.

B.

Next, we address the City's allegation that the district court erred in certifying the conditions classes and heat subclasses.  The City asserts that the district court erred in describing the legal standard for conditions-of-confinement and heat-based claims and erred in failing to analyze Monell.[5]  The City asserts that the district court therefore erred in finding the commonality and predominance requirements satisfied despite Plaintiffs describing varied experiences at MSI.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart, 564 U.S. at 349-50 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law."  Id. at 350.  Rather, "[t]heir claims must depend upon a common

---

[5]Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

-7-

contention" which "must be of such a nature that it is capable of classwide resolution." Id. Nor does this mean that Plaintiffs can prevail by raising common questions in droves. Id. Instead, class-wide proceedings should have the capacity to generate common answers that "drive the resolution of the litigation." Id. (citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (citation omitted).

Commonality is subsumed within the predominance requirement, Custom Hair Designs by Sandy v. Cent. Payment Co., 984 F.3d 595, 601 (8th Cir. 2020), which requires us to ask "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation omitted). This requires us "to give careful scrutiny to the relation between common and individual questions in a case." Id. Individual questions are those where class members "will need to present evidence that varies from member to member." Id. (citation omitted). Common questions are those "where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" Id. (alteration in original) (citation omitted).

"Under Monell, '[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an "official municipal policy."'" Whitney v. City of St. Louis, 887 F.3d 857, 860 (8th Cir. 2018) (alterations in original) (citations omitted).

Class certification is only proper if the district court conducts a "rigorous analysis" of Rule 23(a)'s requirements. Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (citation omitted). And where, as here, certification is ordered pursuant to Rule 23(b)(3), the predominance requirement is "even more demanding" than the Rule 23(a) requirements. Id. at 34. A court therefore has a "duty to take a 'close look' at whether common questions predominate over individual ones." Id. (citation omitted).

-8-

1.

In certifying the conditions classes, the district court concluded:

> Liability for all class members will depend on proof that the City had a policy or custom of detaining inmates in cells plagued with pest infestations, plumbing problems, and mold; that these conditions posed a substantial risk of serious harm to inmates; and that the City was deliberately indifferent to that risk.

The district court reasoned that, because Plaintiffs' renewed motion alleged that these conditions applied to them in substantially uniform ways, class proceedings would generate common answers to the elements of their claims.

When describing this standard for liability, the district court relied on only one binding decision, Beaulieu v. Ludeman, 690 F.3d 1017 (8th Cir. 2012). Beaulieu concerned a challenge to several plaintiffs' conditions of confinement, although they did not proceed as a class. Id. at 1021-23. There, when addressing the plaintiffs' complaints of unsanitary prison conditions, we explained that they could establish a constitutional violation by showing that the conditions posed a substantial risk of serious harm to the plaintiffs, and that the defendants actually knew of, or were deliberately indifferent to, the plaintiffs' health and safety. Id. at 1045.

We find two significant errors in the district court's approach. First, the district court's reliance on isolated language from a singular binding authority falls short of the "rigorous analysis" that must be performed before a court finds that certification is appropriate. Comcast, 569 U.S. at 33-34 (citation omitted). Moreover, the sole defendant in this matter is the City, and the district court's order certifying the classes failed to analyze any theories of liability under Monell. See Woodall v. Wayne Cnty., No. 20-1705, 2021 WL 5298537, at *6-8 (6th Cir. Nov. 15, 2021) (reversing certification of Rule 23(b)(3) classes challenging prison strip searches, stating that different Monell theories have different elements, and that "[a]

-9-

proper analysis" under Rule 23(b)(3) must consider which elements of these claims "can be established on a class-wide basis"). A district court that fails to conduct the requisite rigorous analysis when certifying a class under Rule 23(b)(3) abuses its discretion. See IBEW Loc. 98 Pension Fund v. Best Buy Co., 818 F.3d 775, 779 (8th Cir. 2016).

Second, the district court erred in describing the standard for liability.[6] See Luiken, 705 F.3d at 372. As an initial matter, we note that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson v. Seiter, 501 U.S. 294, 305 (1991). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . ." Id. at 304. Here, the certified class definitions referred to no specific conditions, let alone any mutually reinforcing combination of conditions: they were simply labeled "conditions" classes and defined membership with reference to dates of incarceration.

The City's liability for Plaintiffs' conditions claims—concerning plumbing, mold, and pests—will turn on both the severity of the conditions each plaintiff faced, and the length of exposure to those conditions. Take plumbing, for instance. In Owens v. Scott County Jail, a detainee alleged unconstitutional conditions of confinement when he was forced to sleep less than two feet from a toilet, which

---

[6]We note, however, that the district court correctly explained the insignificance of the distinction between pre-trial and post-conviction detainees to the instant case. Although a convicted prisoner's conditions of confinement "are subject to scrutiny under the Eighth Amendment . . . [,] a pretrial detainee['s] . . . section 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment." Davis v. Oregon Cnty., 607 F.3d 543, 548 (8th Cir. 2010). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Id. (citation omitted).

-10-

would splash urine on him whenever used by his cellmate.  328 F.3d 1026, 1026-27 (8th Cir. 2003) (per curiam). We held that when "reviewing the totality of circumstances of [the plaintiff's] confinement . . . we focus on the length of his exposure to unsanitary conditions and how unsanitary the conditions were." Id. at 1027; see also Turner v. Mull, 784 F.3d 485, 491 (8th Cir. 2015) (collecting cases and holding that six-hour exposure to unsanitary conditions in transportation vehicle did not rise to Eighth Amendment violation).

Or consider claims relating to mold.  In Thurmond v. Andrews, we noted that "[w]hile prisoners certainly have an Eighth Amendment right to sanitary prison conditions[,] . . . the articulation of this broad right does not answer whether the presence of non-toxic environmental allergens are necessarily violative of this right." 972 F.3d 1007, 1012 (8th Cir. 2020).  Although we did not hold that "there can never be a case in which the presence of mold or another environmental allergen may give rise to unsanitary prison conditions that violate inmates' Eighth Amendment rights," we *did* hold that "the definition of the asserted constitutional right embraced by the district court—a right to sanitary prison conditions—was impermissibly broad." Id.

In Beaulieu, the principal case relied on by the district court, we expressly noted that the complained-of conditions "may be tolerable for a few days and intolerably cruel for weeks or months."  690 F.3d at 1045 (citation omitted). Rejecting the plaintiffs' complaints of unsanitary conditions, we held that they "produced no evidence as to the *length of time* that they were exposed to the unsanitary conditions." Id.

Plaintiffs resist this conclusion, arguing that "exposure to risk is what violates the Constitution" in a single-facility case like this.  They rely primarily on our decision in Postawko v. Missouri Department of Corrections, 910 F.3d 1030 (8th Cir. 2018).  There, we held that the commonality requirement was satisfied in a Rule 23(b)(2) class action challenging various Missouri Department of Corrections policies regarding chronic Hepatitis C screening and care.  Id. at 1033, 1038.  The

-11-

class was defined as "[a]ll those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic [Hepatitis C], as that term is defined medically, but who are not provided treatment with direct acting antiviral drugs." Id. at 1035-36.  The plaintiffs' claim was "that the failure of the [Department] to screen properly for a life-threatening disease and provide appropriate treatment exposes all inmates suffering from chronic [Hepatitis C] to the *same* unconstitutional injury." Id. at 1038.  The plaintiffs alleged that the screening and treatment procedures were "uniformly applied" to every incarcerated person who suffered or will suffer from Hepatitis C.  Id. at 1040.  The legal theory underlying the plaintiffs' claim was that they "can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied access to medical care." Id. at 1038 (citation omitted).

But here, the district court certified classes much less precisely defined—indeed, the only references to conditions in the certified classes are in the names.  Furthermore, the plaintiffs in Postawko alleged that the MDOC had six precise policies or customs.  See id. at 1035 (listing policies).  That is quite unlike Plaintiffs in the instant case, who, in their memorandum supporting their renewed motion to certify below, complained of undifferentiated "putrid physical conditions," which they argued remedied "concerns of commonality and predominance" because they were limiting "the class' allegation to only 'poor physical conditions.'"  In short, we do not agree that Postawko establishes the bare syllogism that exposure to risk amounts to a constitutional violation.  While Plaintiffs now point to specific conditions on appeal like mold, plumbing, or pests, the conditions classes *as certified* are quite unlike the precisely defined class in Postawko, and are more like the "amorphous" overall-conditions claims that Wilson disapproved of.  501 U.S. at 305.

Plaintiffs also cite a series of nonbinding authorities to suggest that their interpretation of single-facility cases is not only found in Postawko.  The lone circuit

-12-

court opinion they cite, <u>Mulvania v. Sheriff of Rock Island County</u>, 850 F.3d 849 (7th Cir. 2017), does not offer the support that they claim.  In <u>Mulvania</u>, the Seventh Circuit, while ultimately affirming the denial of class certification on other grounds, held that the district court erroneously denied certification of a Rule 23(b)(3) class challenging a prison's underwear policy on the basis that factual variances in the plaintiffs' claims would affect the damages calculation.  850 F.3d at 858-59.  This case establishes nothing more than the uncontroversial proposition that "[s]light variation in *actual damages* does not defeat predominance if there are common legal questions and common facts."  <u>Custom Hair</u>, 984 F.3d at 602.  Here, the district court abused its discretion when it erroneously concluded that variations in the length of time of an individual plaintiff's detention spoke only to damages, not liability.

Finally, the testimony of the named plaintiffs in this matter reveals that the classes, as presently defined, are not "sufficiently cohesive to warrant adjudication by representation."  <u>Tyson Foods</u>, 577 U.S. at 453 (citation omitted).  Plaintiff Mosley was a pre-trial detainee for less than one month, whereas plaintiff Cody was a post-conviction detainee for approximately eight months.  In its first order declining to certify the first four proposed classes, the district court stated that some plaintiffs complained of plumbing problems (such as Mosley), while others did not (such as Wortham and Williams).  The City points to yet more supposed disparities on appeal, none of which Plaintiffs seriously dispute, and none of which the district court engaged with in its second order certifying the four new classes.  While we do not hold that *no* class addressing Plaintiffs' conditions complaints could ever be properly certified, we think that, as presently defined, "[d]issimilarities within the proposed class[es] . . . impede the generation of common answers."  <u>Wal-Mart</u>, 564 U.S. at 350 (citation omitted).

### 2.

We now turn to the heat subclasses.  In certifying the heat subclasses, the district court reasoned that "[i]t is well established [that] a violation of the Eighth Amendment (for post-conviction detainees) or of due process (for pretrial detainees)

-13-

can be established based on exposure to excessive heat without adequate mitigating measures." It therefore concluded that liability would turn on "whether excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all inmates, whether the City's mitigation efforts were adequate, and whether MSI officials were deliberately indifferent to that risk." The district court acknowledged that Plaintiffs alleged that different mitigation measures were provided to some of them. This did not defeat predominance, the district court reasoned, because it spoke to the "uniform allegation that the City's mitigation measures were, at best, haphazard and insufficient to reduce the danger posed by excessive heat."

The lone citation the district court offered to support this reasoning was Yates v. Collier, 868 F.3d 354 (5th Cir. 2017). There, the Fifth Circuit held that "[i]t is well-established in our circuit 'that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'" Id. at 360. We do not agree with the district court that Yates established a clear rule within *our* circuit, and Plaintiffs point us to no other authorities on appeal. And as with the conditions classes, we note that the district court conducted no analysis of the Monell theory underlying the heat subclass's claims. See Woodall, 2021 WL 5298537 at *6. This falls short of the "rigorous analysis" that must be performed before a court finds that certification is appropriate. Comcast, 569 U.S. at 33-34 (citation omitted). The district court therefore abused its discretion. IBEW, 818 F.3d at 779. Should the district court entertain further motions to certify heat subclasses on remand, we leave it to the district court to conduct the requisite rigorous analysis in the first instance.

## C.

Separately, the City alleges that the district court erred in certifying the conditions classes because Plaintiffs are not adequate class representatives. Federal Rule of Civil Procedure 23(a)(4) requires that class representatives "will fairly and adequately protect the interests of the class." This requirement "serves to uncover

-14-

conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In practice, a court must ask whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton v. Union Nat'l Bank, 688 F.2d 552, 562-63 (8th Cir. 1982). Here, the district court concluded, "based on the record and the conduct of counsel and parties throughout this litigation[,] that the named Plaintiffs' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action."

The City does not convince us that the district court's conclusion was clearly erroneous. Stuart, 910 F.3d at 375. The City's primary contention is that some named Plaintiffs do not seek damages, citing their deposition testimony. But the City's first deposition reference is completely erroneous: the quoted language appears nowhere in Wortham's deposition, and she states the exact opposite of what the City claims. When asked, "are you seeking money damages from the City of St. Louis in this case," Wortham replied unequivocally, "Yes." R. Doc. 139-2, at 31. Similarly, the City selectively quotes the deposition testimony of Barnes. Although Barnes stated that he was "not seeking any money," he explained that he was "seeking damages for [his] civil rights being violated." When counsel followed up and asked whether he was "seeking any money"—over one of several objections that the question had been asked and answered—Barnes replied that he was seeking money for civil rights violations. R. Doc. 139-3, at 39. Likewise, the City's assertion that Cody was unclear about whether he sought damages is entirely unsupported by the record. Cody stated that he was "not doing this for money" and that this case "was never about [his] financial gain." R. Doc. 139-6, at 38. Far from suggesting that he did not seek damages, Cody was clear that he simply did not know a specific amount that he was seeking from the City. R. Doc. 139-6, at 37-38.

We also reject the City's argument that adequacy is defeated because two of the named plaintiffs originally proceeded anonymously in this matter. Before certifying the classes, the district court granted Plaintiffs leave to amend their

-15-

complaint to add Barnes and Williams as plaintiffs.  The City cites no authority demonstrating that this defeats the district court's subsequent finding of adequacy: the lone authority cited, Capers v. National Railroad Passenger Corp., 673 F. App'x 591 (8th Cir. 2016) (per curiam), concerned the timeliness of a plaintiff's claim for statute-of-limitations purposes when she had initially proceeded anonymously.

As for the City's argument that variations in Plaintiffs' length of detention and the conditions complained of defeats adequacy—an argument presented without citations to legal authority—we consider it waived.  See Milligan v. City of Red Oak, 230 F.3d 355, 360 (8th Cir. 2000) (per curiam) ("[I]nasmuch as [appellant's] brief does not support his assertion with any argument or legal authority, he has waived the issue and we do not address it.").  The City also waived its argument that adequacy is defeated by the Prison Litigation Reform Act (PLRA).  In resisting Plaintiffs' renewed motion to certify the narrowed conditions classes, the City did not raise a PLRA argument, so the district court did not consider it when granting the motion.  Although we doubt whether it would have merit, the City could have raised a PLRA argument at that stage of proceedings if it had so desired, given that it previously raised the contention in resisting Plaintiffs' *first* motion to certify in the context of the superiority requirement.  See Heuton v. Ford Motor Co., 930 F.3d 1015, 1022 (8th Cir. 2019) (holding that the appellant waived an "argument because he did not raise it before the district court"); cf. Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005) (per curiam) (explaining that "the [PLRA's] exhaustion requirement does not apply to plaintiffs who file § 1983 claims after being released from incarceration").

### D.

Finally, we reject the City's argument that the district court procedurally erred in its handling of the Daubert motions and its order certifying the classes.  The City's primary contention is that the district court did not conduct a rigorous Daubert analysis in its order certifying the classes.  That contention is predicated on the City's claim that In re Zurn Pex Plumbing Products Liability Litigation, 644 F.3d 604 (8th

-16-

Cir. 2011), established an obligation for district courts to conduct a "tailored" or "focused" Daubert analysis when certifying a class. We disagree. Zurn merely held that a district court *did not err* in conducting a "focused Daubert analysis" over the "exhaustive and conclusive" analysis the appellant suggested was necessary. Id. at 611-14. Zurn expressly recognized that "[t]he main purpose of Daubert exclusion is to protect juries from being swayed by dubious scientific testimony. That interest is not implicated at the class certification stage where the judge is the decision maker." Id. at 613.

Fatal to the City's contention is the fact that "[a] district court's Daubert inquiry need not take any specific form, . . . so long as the court has an adequate record on which to base its ruling." Miller v. Baker Implement Co., 439 F.3d 407, 413 (8th Cir. 2006). Here, the district court issued its order ruling on the Daubert motions promptly after issuing its order certifying the classes. While the City complains that there was no *admissible* evidence in the record to support a finding of common exposure to risk from heat, the argument is beside the point. "[A] court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" Zurn, 644 F.3d at 613 (citations omitted). Because "class certification decisions are generally made before the close of merits discovery, the court's analysis is necessarily prospective and subject to change and there is bound to be some evidentiary uncertainty." Id. (citation omitted). The ultimate *admissibility* of an expert's opinion is therefore a red herring at the class-certification stage.

To the extent that the City raises further arguments on this issue, we will not "do [the City's] work for it by developing the argument[s] and putting flesh on [their] bones," Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 324 (8th Cir. 2018), and so we decline to consider them. We find no abuse of discretion in the district court's decision to rule on the Daubert motions shortly after class certification. Stuart, 910 F.3d at 375.

-17-

III.

For the foregoing reasons, we reverse the certification of the four classes and remand for proceedings consistent with this opinion.

_____

-18-