**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES CODY, *et al.*, individually and on behalf of other similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:17-cv-2707-AGF |
| CITY OF ST. LOUIS, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs,[1] on behalf of themselves and all others similarly situated, with consent of Defendant City of St. Louis ("the City" or "Defendant") (collectively, the "Parties") seek preliminary approval of a proposed class action settlement of claims against the City arising out of the City's alleged violations of the Eighth and Fourteenth Amendments related to the conditions at City's Medium Security Institution. For the reasons set forth herein, the Motion should be granted.

The Settlement Agreement, attached as **Exhibit 1**, if approved, will establish a non-reversionary common fund of $4,000,000 (the "Settlement Fund"). After payment of fees and costs, including reasonable attorneys' fees and costs, Settlement Administration Costs, and Class Representative Service Awards, all available funds will be distributed by check or other cash-equivalent form of payment to the Settlement Class Members who make claims.[2]

The Parties believe the Settlement is fair, reasonable, and adequate and therefore

---

[1] The named Plaintiffs are Plaintiffs James Cody, Callion Barnes, Jasmine Borden, Michael Mosley, Eddie Wiliams, and Diedre Wortham (collectively "Plaintiffs" and each a "Plaintiff").

[2] All capitalized terms have the same meaning as used in the Parties' Settlement Agreement, attached as **Exhibit 1**.

respectfully request that this Court preliminarily approve the Settlement, certify the Settlement Class for settlement purposes only, and order that Notice be distributed to the Settlement Class.

Pursuant to this Court's March 27 order, *see* ECF No. 416, this memorandum fully addresses: (1) whether notice of the proposal must be given to the proposed class under Rule 23(e)(1), including whether the Court will likely be able to certify the proposed settlement class (Sections III–IV, *infra*); (2) Rule 23(e)(2)'s fairness and reasonableness standards (Section III, *infra*); (3) the form and method of providing notice (Section II.D, *infra*; Ex. 1, Settlement Agreement, Section VIII; Exhibits 1A (Proposed Postcard Notice), 1B (Proposed Long Form Notice), and 1C (Proposed Claim Form); and (4) attaches proposed schedules and procedures for (a) class members to opt out or object and (b) the filing of a motion for final approval and for a final approval hearing (Section II.E, *infra*; Ex. 1, Settlement Agreement, Section X–XI; Ex. 2, Proposed Order).

## I.        BACKGROUND AND PROCEDURAL HISTORY

On November 13, 2017, Plaintiffs filed an action captioned *Cody et al. v. City of St. Louis*, Case No. 4:17CV02707, asserting claims under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the First, Eighth, and Fourteenth Amendments to the United States Constitution. *See* ECF No. 1 (Complaint); *see also* ECF No. 22 (Amended Complaint); ECF No. 333 (Second Amended Complaint). Specifically, Plaintiffs alleged the City operated a jail facility called the Medium Security Institution ("MSI"), colloquially known as the "Workhouse," pursuant to policies and practices which created inhumane conditions for pretrial and post-trial detainees, including extreme temperatures, inadequate air ventilation, flooding, mold contamination, plumbing problems, and pest infestations. Plaintiffs also alleged putative class members were exposed to other constitutional harms, including denial of or inadequate medical care, corrections officers'

excessive use of force on inmates, overcrowding, and lack of recreation time. Plaintiffs sought putative classes of detainees exposed to the compounding conditions, as well as subclasses for heat-specific conditions.

On August 2, 2021, following extensive discovery, on August 2, 2021, Plaintiffs filed their first motion for class certification. The motion proposed four classes for certification: (1) a class of pre-trial detainees who were released from MSI on or after November 13, 2012; (2) a pretrial heat subclass consisting of those who were assigned to a dorm, pod, or other area within MSI on days when the ambient air temperature equaled or exceeded 88 degrees Fahrenheit; (3) a class of post-conviction detainees who were released from MSI on or after November 13, 2012; and (4) a post-conviction subclass of those who were assigned to a dorm, pod, or other area within MSI on days when the ambient air temperature equaled or exceeded 88 degrees Fahrenheit. ECF No. 248, 249. On December 27, 2021, the Court denied Plaintiffs' first motion for class certification, finding that Plaintiffs' proposed classes did not satisfy all requirements of Rules 23(a) and 23(b). In its order, the Court expressly noted that "a more focused claim, covering a more discrete time period, on behalf of a more uniform class, may well be appropriate for class certification." ECF No. 203 at 15.

On January 10, 2022, Plaintiffs filed a renewed motion for class certification, proposing narrower class definitions. ECF Nos. 307, 308. Specifically, Plaintiffs sought to certify a pretrial conditions class of all pretrial detainees at MSI between November 13, 2012 and July 1, 2018, including a pretrial heat subclass of individuals who were detained in dorms between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit. ECF No. 308, at 5. Plaintiffs also sought to certify a post-conviction conditions class of all post-conviction detainees at MSI between November 13,

2012 and July 1, 2018, consisting of a post-conviction heat subclass of individuals who were detained in dorms in MSI between November 13, 2012 and July 24, 2017 on days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit. *Id.*

On May 25, 2022, the Court certified the pretrial and post-conviction general conditions classes of all individuals detained at MSI during the class period beginning November 13, 2012 and the parallel heat subclass for individuals detained on days when St. Louis's ambient air temperature equaled or exceeded 88 degrees. ECF No. 335. Defendant appealed the Court's certification order, and on June 3, 2024, the Eighth Circuit reversed the order and remanded for further proceedings. *Cody v. City of St. Louis*, 103 F.4th 523 (8th Cir. 2024). On remand, the Court granted Plaintiffs leave to file a second renewed motion for class certification. ECF No. 398. Thereafter, on October 31, 2024, Plaintiffs filed their second motion proposing narrower class definitions and requesting class certification. ECF Nos. 399–401. Specifically, Plaintiffs requested certification of pretrial and post-conviction classes of detainees who were detained in dormitories in MSI between November 13, 2012 and July 24, 2017 for seven or more days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit. ECF No. 401, at 2. The Parties completed briefing on Plaintiffs' second renewed motion for class certification on December 23, 2024. *See* ECF Nos. 405, 412.

On February 24, 2025, while Plaintiffs' second renewed motion for class certification was pending and following a period of thorough examination and investigation of the facts and law relating to the matters in this litigation, including a November 25, 2024, mediation, the Parties reached an agreement to settle the case, with the material terms memorialized in a Term Sheet dated February 24, 2025. This Court approved the Parties' joint notice of settlement and motion to

stay proceedings on February 25, 2025. ECF Nos. 413, 414. The Parties subsequently reached a full Settlement Agreement, subject to this Court's approval.

The Parties have concluded that Settlement is desirable to avoid the time, expense, and inherent uncertainties of defending prolonged litigation and to resolve finally and completely all pending and potential claims relating to the conduct alleged in the litigation. The Parties further believe this Settlement Agreement offers significant benefits to all Class Members and is fair, reasonable, adequate, and in the best interest of the Classes.

Notwithstanding its agreement to settle, Defendant has denied and continues to deny Plaintiffs' claims and allegations in the litigation. Defendant denies any wrongdoing or liability of any kind to Plaintiffs or to any Class Member. Nothing in the Settlement Agreement or this Motion is intended to be or shall be deemed as Defendant's admission or concession to the contrary for any purpose other than settlement.

## II.     THE TERMS OF THE SETTLEMENT

### A.      The Class

The Settlement resolves the claims of one Settlement Class (hereinafter, the "Settlement Class" or the "Class") for which the Parties seek certification under Federal Rule of Civil Procedure 23(b)(3), for settlement purposes only:

> All persons who were detained in the St. Louis Medium Security Institute for five or more cumulative days between November 13, 2012 and June 30, 2022.

Settlement Agreement ¶ 20.

### B.      Benefits to the Class

The Settlement Agreement provides monetary benefits in the form of a non-reversionary Settlement Fund of $4,000,000. Settlement Agreement ¶¶ 21, 57-59. All payments to Settlement Class Members and Settlement Administration Costs, as well as any Service Awards awarded to

Class Representatives and attorneys' fees and costs awarded to Class Counsel, shall be paid from the Settlement Fund. *Id.* ¶¶ 21, 93.

Each member of the Class who has not opted out of the Settlement and who files a valid claim will receive a cash payment. Subject to potential adjustments described in the Settlement, the payments to Settlement Class Members will be made as follows:

The Settlement Fund—that is, the $4,000,000 allocated to the Class minus proportional deductions for (a) the Court-approved attorneys' fees and costs awarded to Class Counsel, (b) any Settlement Administration Costs and/or Expert Costs, and (c) any Court-approved Service Awards to the Class Representatives (*Id.* ¶ 21)—shall be distributed *pro rata* to the members of the Class using the following calculation: (a) calculate the total number of days spent in jail by Settlement Class Members in the Settlement Class who have filed a valid claim by adding together all calendar dates during the class periods on which the jailing records indicate a person was in custody, (b) divide the dollar amount of the Settlement Class Fund by the total number of days spent in jail by Settlement Class Members, as calculated in subsection (a) above, which yields a per-jailed-day amount, (c) multiply the per-jailed-day amount by the total number of days jailed for each Settlement Class Member. *Id.* ¶ 93(d)(iii). This results in a Settlement Class Member Payment for each Settlement Class Member. *Id.*

The Settlement Agreement also sets out a specific procedure for disposition of any residual funds, including a procedure for a secondary distribution and a process for proposing a *cy pres* recipient. *Id.* ¶¶ 95–98. In no event shall any portion of the Settlement Fund revert to Defendant. *Id.* ¶ 99.

### C.    Class Member Releases

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released the Released Parties from:

> any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period as described in the Second Amended Complaint in this Action that were or could have been alleged in the Action, including but not limited to claims related to the Medium Security Institution and the conditions of confinement and any other claims or causes of action related to the conditions of the Releasing Parties' detention inside MSI at any time during the Class Period.

*Id.* ¶ 100. The release is appropriately tailored. It covers claims arising from the identical factual predicate to the claims asserted in the operative Complaints.

### D.    Class Notice and Settlement Administration

Subject to Court approval, the Settlement Administrator is Atticus Administration, LLC ("Atticus"), a qualified and experienced settlement administrator. *See* Exhibit 3, Declaration of Bryn Bridley. Under the Parties' supervision, Atticus will issue Notice, receive exclusion requests, respond to inquiries, issue settlement checks, and conduct other activities relating to Class Notice and Settlement Administration. *See generally Id.* at Section VII. As set forth in detail in Section VIII of the Settlement Agreement, the Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law, and shall otherwise be in the manner and form approved by the Court. Subject to Court approval, Notice will be accomplished as set forth in Section VIII of the Settlement Agreement.

Notice will be provided to the Class by direct mailing of the Postcard Notice (Settlement Agreement, Ex. 1), along with a Claim Form and return envelope, to all potential Class Members at their last known or readily ascertainable address. Settlement Agreement ¶ 67. The Postcard

Notice will inform Class Members how they may request a copy of the Long Form Notice (Settlement Agreement, Ex. 1).

The Settlement Administrator will also distribute Publication Notice of the Settlement Agreement through print publication in the *St. Louis Post-Dispatch* and *St. Louis American*. Settlement Agreement ¶ 71. The Publication Notice shall inform Settlement Class Members how they may request copies of the Long Form Notice and a Claim Form. *Id.*

Finally, the Settlement Administrator also will provide a copy of the Postcard Notice, Long Form Notice, and Claim Form to any person who inquires by written communication or telephone call to the toll-free telephone number established by the Settlement Administrator. *Id.* ¶ 70. The Settlement Administrator also will upload downloadable and printable copies of the Postcard Notice, Long Form Notice, and Claim Form to the Settlement Website. *Id.* The Settlement Agreement requires the Settlement Administrator to maintain a database showing mail addresses to which each Notice was sent and any Notices that were not delivered. *Id.* ¶ 72. In addition to weekly updates to the Parties regarding the progress of the Notice Program and the declaration or affidavit by the Settlement Administrator in advance of the Final Approval Hearing and in support of the motion for Final Approval, the Settlement Administrator shall provide a summary report of the Notice Program to the Parties three days prior to the Final Approval Hearing. *Id*. Finally, the database maintained by the Settlement Administrator regarding the Notices shall be available to the Parties and the Court upon request. *Id*.

### E.    Opt-Outs and Objections

The Class Notice will advise Settlement Class members of their right to opt-out of the Settlement or to object to the Settlement. Settlement Agreement, Ex. 1.

Settlement Class members may opt-out of the Settlement by mailing a written request to the Settlement Administrator by the Opt-Out Date. Settlement Agreement ¶ 77. Only Class Members who have submitted a Valid Claim may object to the Settlement. *Id.* ¶ 83. Settlement Class Members may object to the Settlement by filing with the Court and serving upon counsel for the Parties a written notice of objection by the Objection Date. *Id.*  ¶ 84. Written objections must include the name, address, and telephone number of the person, as well as a detailed statement of each objection asserted, including the grounds for objection and reasons for appearing and being heard, together with any documents said person wishes to be considered in support of the objection. *Id.* Settlement Class Members or their attorneys intending to make an appearance at the Final Approval Hearing must, no later than fifteen days prior to the Final Approval Hearing, file with the Court and serve Class Counsel and Defendant's Counsel with a Notice of Intention to Appear. *Id.* ¶ 86.

### F.    Attorneys' Fees and Service Awards

Class Counsel have not been paid for their extensive efforts or reimbursed for costs incurred. The Settlement Agreement contemplates an award of reasonable attorneys' fees to Class Counsel in the amount of $ 1,162,229.00—which is approximately 29 percent of the total Settlement Fund—plus reimbursement of litigation costs in the amount of $170,971.00 (for a total of $ 1,333,222.00). Settlement Agreement ¶ 93(a). Such award is subject to this Court's approval and will serve to compensate for the time, risk, and expense Class Counsel incurred pursuing claims on behalf of the Classes. Defendant agrees not to oppose Class Counsel's request for attorneys' fees and litigation costs in the amount of $ 1,333,200.00 *Id.* Any approved award of attorneys' fees and costs will be paid from the Settlement Fund prior to the distribution of payments to the Settlement Class Members.

The Settlement Agreement also states Defendant will not oppose Plaintiff seeking approval from this Court for each Class Representative to receive a Service Award of up to $10,000. *Id.* ¶ 93(b).

The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Awards only after reaching agreement on all other material terms of this Settlement.

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"The law strongly favors settlements. Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). "Class actions, in general, 'place an enormous burden of costs and expense upon [ ] parties.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). Settlement avoids protracted litigation and conserves resources. *See In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (expense of continued litigation "weigh[s] in favor of" approving settlement).

At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms[.]" *Manual for Complex Litigation* § 21.633 (4th ed.) (hereafter "*Manual*"). The Eighth Circuit "begin[s] with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). "The court's role in reviewing a negotiated class settlement is 'to

ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Id.* (quoting *In re Wireless*, 396 F.3d at 934). Courts in the Eighth Circuit have held a settlement agreement is valid where, as here, "the settlement was reached through mediation with a third-party neutral, and only after substantial discovery had taken place." *Hashw v. Dep't – Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016).

Under Federal Rule of Civil Procedure 23(e), in deciding whether to approve a class action settlement, the Court should consider whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Other factors courts consider are "defendant's financial condition," *Risch v. Natoli Eng'g Co., LLC*, 2012 WL 3242099, at *2 (E.D. Mo. Aug. 7, 2012) (quoting *In re Wireless*, 396 F.3d at 932–33), "the existence of fraud or collusion behind the settlement," "the stage of the proceedings and the amount of discovery completed," and "the opinions of the class counsel, class

representatives, and absent class members," *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Approval of a class action settlement involves a two-step process. The court first makes a preliminary fairness evaluation. *See Manual* § 21.632. If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court directs that notice be given to class members and sets a fairness hearing, at which arguments and evidence may be presented in support of or against the settlement. *Id.* § 21.633; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Under this framework,

> the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.

*Newberg on Class Actions* § 13:13 (5th ed.) (citing cases).[3]

Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

Here, the Class was adequately represented by the Class Representatives—who do not have any conflicts with the Class—and by experienced Class Counsel. The settlement

---

[3] At the conclusion of the Notice period, and after any objections have been resolved, the Court will address whether final approval is warranted.

negotiations occurred at arms' length before an experienced mediator and after significant discovery and motions practice. The recovery to the Class is readily within the range of approval, particularly in light of the substantial risks of trial and the costs associated with further litigation. And the Settlement treats Class Members equitably relative to each other. Therefore, the proposed Settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising Class Members of their opportunity to participate in, opt out of, or object to the Settlement.

### A.    The Settlement Is Fair

The proposed Settlement is entitled to a presumption of fairness. *See, e.g.*, 4 *Newberg on Class Actions* § 11:41, at 90; *see also Little Rock Sch. Dist.*, 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor"). Here, the Settlement is fair.

First, the Settlement is the product of arms' length negotiations between the Parties following extensive class certification briefing and several mediations, including, most recently, a mediation on November 25, 2024. There, Judge Booker T. Shaw actively participated as a neutral mediator and, while the Parties did not reach an agreement during the mediation, the Parties negotiated many of the material terms that formed the basis of the Settlement Agreement. Accordingly, this factor weighs in favor of granting preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(B).

The Settlement has none of the "hallmarks" of collusion or other problematic settlement terms, such as reversion of funds to the defendant. *Rouse v. Language Line Servs., Inc.*, No. 4:22-CV-0204-DGK, 2023 WL 6200072, at *4 (W.D. Mo. Sept. 22, 2023) (discussing concerns

with reversion provisions). Moreover, the active assistance of a neutral mediator is a strong indicator of a lack of collusion. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge presided over the settlement negotiations and that the district court had prior experience with this type of litigation. Such multiple layers of scrutiny further militate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (approving settlement as "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator").

Second, the Class was adequately represented by Class Representatives and experienced Class Counsel, who are well-informed about the merits and risks of the case and who litigated zealously on behalf of the Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Prior to settlement, the Parties engaged in extensive motions practice, including briefing on the City's motion for summary judgment and multiple rounds of class certification briefing. *See, e.g.*, Dkt. Nos. 232, 237, 244, 249, 262, 280, 308, 316, 324, 401, 405, 412. In addition, both ArchCity Defenders and Class Counsel from DLA Piper LLP (US) have experience litigating complex civil rights matters like this one in federal court. *See* ECF No. 400-9, Declaration of Blake Strode (for ArchCity Defenders); Exhibit 4, Declaration of Shannon Dudic (for DLA Piper LLP). Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)).

Third, there is no question that discovery in this case is "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1334 (E.D. Mo. 1995). The Parties completed

significant discovery, including depositions of more than a dozen witnesses, review and analysis of tens of thousands of pages of documents, and production of expert reports.

Fourth, the terms of the proposed award of attorneys' fees and costs and Service Awards are also fair and demonstrate that the Settlement is the product of arms' length negotiation. The Parties actively litigated these cases for over seven years before a settlement was reached, including significant motions practice and discovery. In light of the substantial time and resources invested by Class Counsel over several years, an award of attorneys' fees in the amount of roughly 29 percent of the Settlement Fund and litigation costs of $170,971.00 (for expert witness fees, court reporter charges, third party class data costs, document review platform charges, and the like) is fair and reasonable. Moreover, these terms were negotiated only after the Parties reached agreement on all other material terms of the Settlement, and Settlement Class Members will have an opportunity to review these requests and challenge them at the Final Approval Hearing. Importantly, the Court's failure to approve, in whole or in part, any award of attorneys' fees or the requested Service Awards "shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination." Settlement Agreement ¶¶ 102, 105.

## B.    The Settlement Is Adequate

As the Eighth Circuit has explained, "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn*, 840 F.2d at 607); *see also* Fed. R. Civ. P. 23(e)(2)(C). The Settlement here provides for substantial monetary relief of $4,000,000 to the Class, as well as additional valuable relief and consideration. This amounts to a sizeable recovery in a constitutional class action.

By contrast, the risks of continued litigation are substantial. While Plaintiffs believe that they would ultimately prevail on their claims, they are cognizant that continued litigation entails non-trivial legal risks. Plaintiffs face risks that summary judgment could be granted against them, that they will not prevail at trial, or that the City of St. Louis would appeal a trial judgment. And, even if Plaintiffs prevail on liability, a jury might not award Plaintiffs and the Class the full amount of requested damages. Given the risks Plaintiffs would face at trial, Plaintiffs and Class Counsel believe the proposed Settlement is fair, reasonable, and adequate.

In short, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011). The Parties naturally dispute the strength of the Plaintiffs' case, and the Settlement Agreement reflects the Parties' compromise, weighing the likelihood of various potential outcomes. This case carries significant risks for all Parties and would consume a great deal of time and expense if litigated to the end. In light of the risk and delay of litigation, weighed against the substantial benefits the Settlement will provide to the Class Members, the proposed resolution is a fair, reasonable, and adequate compromise and should be preliminarily approved. *See DeBoer*, 64 F.3d at 1178 ("The very purpose of compromise is to avoid the delay and expense of . . . a trial . . . . Accordingly, while it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes, . . . and the value of the settlement need not be determined with absolute precision.") (internal quotations and citations omitted); *see also In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 ("The court 'does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement. . . . Rather, the very purpose of compromise is

to avoid the delay and expense of such a trial.'" (quoting *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993)).

    **C.**    **The Settlement Is Reasonable and Treats Class Members Equitably**

    The allocation of the Settlement between Settlement Class Members is fair and reasonable, and treats "class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D).

    The proposed method of distributing relief to the Settlement Class Members is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the Settlement. *See* Settlement Agreement ¶ 47, Section VII–68. Class Members need only fill out a simple form—either in paper form or electronically through the Settlement website—to submit a claim. *Id.* ¶¶ 51, 74. The Settlement Agreement also anticipates that late claims may be filed and provides a process for allowing late claims to be processed. *Id.* ¶ 75. Courts in this District have preliminarily approved similar proposed class action settlements as fair. *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2022 WL 3643669, at *3 (E.D. Mo. Aug. 23, 2022) (preliminarily approving class action settlement in which the "class administrator will mail a settlement check to each class member who submits a timely, valid claim form and does not exclude himself or herself from the class" and settlement fund was to be allocated on a pro-rata basis).

**IV.**    **THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

    **A.**    **The Proposed Settlement Class Meets the Requirements Under *Amchem* for Certification of a Settlement Class**

    Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the Court should determine whether the class proposed for settlement is

appropriate under Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632. "To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). . . . These prerequisites are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006). Here the proposed settlement Class meets all the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). Therefore, the Parties now request that the Court provisionally certify the proposed settlement class for settlement purposes only.

The parties recognize that they have engaged in adversarial and protracted litigation on the propriety of certifying a class for these claims and that the Eighth Circuit reversed certification for the broader classes. However, the Eighth Circuit decision does not forestall the approval of the settlement class for two reasons: First, the class is meaningfully different because it limits the class to only individuals who were jailed for five or more days; and second, because when class certification is sought for settlement purposes only, that fact "is relevant" to the Rule 23(a) and 23(b) analysis and must play "a factor in the calculus[.]" *Amchem*, 521 U.S. at 619, 622. Put simply, although the class must satisfy Rule 23(a) and Rule 23(b), "the certification inquiry is not the same in the settlement context as it is when certification is for the purpose of trial[.]" *Newberg and Rubenstein on Class Actions* § 4:63 (6th ed); Fed. R. Civ. P. 23(e)(1) advisory committee note to 2018 amendment ("Although the standard for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record.").

### B.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Numerosity

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Aquila ERISA Litig.*, 237 F.R.D. at 207 (quoting Fed. R. Civ. P 23(a)(1)). There are an estimated 17,000 potential Class Members. Thus, the existence of numerosity is readily apparent. *See, e.g.*, *Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) ("The proposed class numbers over one thousand persons. [Plaintiff] has satisfied Rule 23(a)(1).").

### 2.    Commonality

The proposed settlement Class also meets the commonality requirement of Rule 23(a)(2) for settlement purposes, which requires that "there are questions of law or fact common to the class." *Aquila ERISA Litig.*, 237 F.R.D. at 207. "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in the class action." *Id.* "Commonality may be satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.* (quotations omitted).

Here, there are numerous questions of fact and law common to the Class, as alleged in Plaintiffs' Complaint. These alleged common questions of law and fact include, among others:

a.    Whether the unsafe and unsanitary conditions at the Workhouse described in the Complaint violate the Eighth and Fourteenth Amendments to the United States Constitution;

b.    Whether the City's policies and practices subjected detainees to a substantial risk of harm from unsanitary conditions, and therefore constitute a violation of Plaintiff and Class Members' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

c.    Whether the City's policies and practices subjected detainees to a substantial risk of harm from extreme temperatures, and therefore constitute a violation of Plaintiffs and Class Members' rights under the Eighth and Fourteenth Amendments to the United States Constitution; and

      d.    Whether the City's acts and/or omissions in the failure to provide safe and sanitary conditions for detainees reflect deliberate indifference to the health and safety of detainees and inmates, and therefore constitute a violation of the Eighth and Fourteenth Amendments to the United States Constitution.

*See* ECF No. 333.

### 3.   Typicality

Plaintiffs also meet the typicality requirement for serving as settlement class representatives for settlement purposes. Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class[.]" Fed. R. Civ. P. 23(a)(3). "This subsection simply requires 'a demonstration that there are other members of the class who have the same or similar grievances as the [class representative].' The burden of demonstrating that Rule 23(a)(3) is met is 'fairly eas[y]...so long as other class members have claims similar to the named plaintiff.'" *Aquila ERISA Litig.*, 237 F.R.D. at 209 (citation omitted; alterations by *Aquila* court). Typicality, however, does not require that the claims be identical. "When finding a class representative's claims typical, it is not necessary to first find that all putative class members share identical claims." *Jones*, 257 F.R.D. at 187.

Here, Plaintiffs' claims are typical of the claims of the class. The representative plaintiffs and all class members allege they were detained pursuant to set of policies and practices by Defendant that resulted in Plaintiffs and putative class members' confinement in unconstitutional conditions. It is further alleged that the Defendant operated the jail in materially the same manner throughout the class period. Since every putative Settlement Class Member claims injury resulting from the same alleged misconduct, Plaintiffs' interest are co-extensive with those of the Settlement Class. In sum, Plaintiffs have shown their claims "emanate from the same legal theory or offenses as the claims of the class," thereby satisfying the typicality requirement. *Doran v. Missouri Dep't of Soc. Servs.*, 251 F.R.D. 401, 405 (W.D. Mo. 2008).

### 4.    Adequacy

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones*, 257 F.R.D. at 191 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982)).

Here, there are no conflicts of interest or other antagonisms between Plaintiffs and Settlement Class Members. *See Jones*, 257 F.R.D. at 192. All are individuals with the mutual incentive to establish the alleged unconstitutionality of Defendant's policies and practices and vindicated the constitutional rights to which they are entitled, if any were abridged. All Settlement Class Members were allegedly impacted by the alleged policies and practices at issue in the same manner.

In addition, Class Counsel has provided fair and vigorous representation for the Class. As addressed above, Plaintiffs are represented by attorneys from ArchCity Defenders, who have experience with the functioning of jails in the City of St. Louis and in surrounding municipalities. Plaintiffs are also represented by attorneys from DLA Piper LLP (US), who have experience litigating complex civil rights matters in federal court. *See White v. Martin*, No. 02-4154-CV-C-NKL, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action."); *see also* ECF No. 400-9, Strode Decl. (for ArchCity Defenders); Ex. 4, Dudic Decl. (for DLA Piper LLP).

C.      **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

1.      **Common questions of law and/or fact predominate**

Finally, and for settlement purposes only, the proposed Settlement Class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) "provides that a class action may be maintained if the court finds the questions of law and fact common to members of the class predominate over the questions affecting only individual class members, and a class action is a superior method for fair and efficient adjudication of the dispute." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). "The requirement of Rule 23(b)(3) that common questions predominate over individual questions 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem*, 521 U.S. at 623). "The common questions need not be determinative, but the efficiency and economy of class adjudication must outweigh the difficulties and complexity of individual treatment of class member claims." *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D. Mo. 1979). The "fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004).

Rule 23(b)(3)'s predominance inquiry is subject to a different analysis when class certification is sought for settlement purposes only. For example, when settlement-only certification is requested, "the proposal is that there be no trial," so a court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem*, 521 U.S. at 620; Rule 23(b)(3)(d). Additionally, because a settlement necessarily "obviate[s] the difficulties inherent in proving the elements of varied claims at trial, . . . courts are more inclined to find the predominance test met in the settlement context." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424 (E.D. Mich. 2021) (cleaned up); *Heldt v. Payday Financial, LLC*, No. 3:13-

cv-03023-RAL,2016 WL 96156, at *12 (D.S.D. Jan. 8, 2016) ("In settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well.") (quoting *Newberg and Rubenstein on Class Actions* § 4:63)); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) ("A [23(b)(3)] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."). For instance, in the settlement-only certification case *In re Diet Drugs*, the district court found that the defendant's "conduct and knowledge" were the predominant issues—even where individual issues existed with respect to causation, injury, and damages. 2000 WL 1222042, at *42-43 (E.D. Penn. Aug. 28, 2000). The court reasoned that such individual issues "bec[a]me irrelevant" and "disappear[ed]" in light of "the settlement's objective criteria provid[ing] for an objective scheme of compensation." *Id.* at *43. The same conclusion is warranted here.

As described above, Plaintiffs allege injury by a set of policies and practices common to all putative Settlement Class Members. These allegations provide the common issues required to ensure predomination of common questions over individual issues. The common questions of law and fact listed above, which focus on the defendant's alleged conduct and knowledge of that conduct, are dispositive questions in the case of every member of the Class. The question of liability can therefore be determined on a class-wide basis. Class-wide treatment of liability is a far superior method of determining the content and legality of Defendant's policies and practices than individual suits by hundreds or thousands of people arrested or incarcerated by the City of St. Louis. The question of settlement damages and compensation is suited for class-wide determination as well, as it will be driven by common and objective considerations, including in

particular the duration of incarceration. Moreover, the settlement obviates the need to litigate many individualized issues. To the extent that individual damages vary, they will vary solely based upon the amount of time a person was detained in MSI at or above five cumulative days during the class period. Under the terms of the Settlement, Class Members who submit a valid claim will receive compensation on a pro-rata basis in proportion to the number of days they spent in MSI.

**2.    A class action is the superior means to adjudicate the claims at issue**

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification for settlement purposes here.

**a.    Most Settlement Class Members have an insufficient interest to justify individual lawsuits**

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by

aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual, as well as the indigence of many members of the proposed class, present an insurmountable hurdle to vindication of constitutional rights. Aggregate litigation is therefore indispensable to the protection of citizens against the alleged unconstitutional policies and practices by the Defendant. The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of putative Settlement Class Members.

> **b.     The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendant asserting the claims in dispute here. Therefore, this factor supports settlement class certification.

> **c.     This Court is an appropriate forum for resolution of the claims in dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties, and, because the proposed notice provided in this case will be constitutional sufficient, that personal jurisdiction extends to members of the Settlement Class under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Shutts*, 472 U.S. at 811–12.

> **d.     Manageability is not a relevant consideration.**

The manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *In re Prudential Ins. Co. of America Sales Prac. Litig.*, 148 F.3d 283, 316 n. 57. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

## V. THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS IS APPROPRIATE

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222–23 (6th Cir. 1981), *modified on other grounds on rehearing,* 670 F.2d 71 (6th Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6. The notice should "inform class members of the terms of the settlement and of the steps required to be taken to file claims or to object to or exclude themselves from the settlement." *EEOC v. Fairbault Foods, Inc.*, Nos. 07-3976, 07-3986, 07-3977, 07-3985, 2008 WL 879999, at *1 (D. Minn. Mar. 28, 2008). In this case, after careful discussion and consideration, the Parties have agreed on the content and methods of notice, as addressed below.

As provided by the proposed Settlement Agreement, the Notice program will be executed by Atticus Administration, LLC, which will mail each Class Member a Short-Form postcard notifying them of their membership in the Class. The postcard will provide a link to a website, www.stlmediumsecurityinstitutionclassaction.com, through which Class Members can opt in to the settlement via an online Claim Form, request a paper Claim Form, request a Long-Form paper notice, and learn how to object to the proposed settlement. Records have been provided by the Defendant and third parties to acquire the name and address of each Class Member. The Class Notice and Claim Form will also be online at the Class Administration website. Notice will also be made available through publications in the *St. Louis Post-Dispatch* and *St. Louis American*

on at least one day per week for three consecutive weeks commencing on the Notice Date, and published in one monthly edition of *Prison Legal News*, a non-profit magazine which is distributed to incarcerated individuals in state and federal corrections facilities. The Claims Administrator will also operate a toll-free number that will inform potential Class Members of their options. The Parties believe the Short-Form and Long-Form Class Notice set forth in the Settlement Agreement represents the best practicable notice in the context of the claims in dispute. Copies of the proposed Postcard and Long Form Class Notice are appended to the Settlement Agreement as Exhibits 1A and 1B, respectively.

As for the content of the Notice, Rule 23(c)(2)(B) provides:

> The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the class member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

 The proposed Long-Form notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of putative settlement class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so; and warns of the binding effect of the settlement approval proceedings on people who remain in the Class. In addition, the Notice describes the terms of the proposed settlement, provides contact information for Class Counsel, and identifies the fee Class Counsel propose to request from the Court. The Notice also discloses the time and place of the Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing at the hearing. The contents of the Notice therefore satisfy all applicable requirements.

In addition, a Claim Form will be available for individuals to request in paper format, or to complete online. A copy of the proposed Claim Form is appended as Exhibit 1C to the Settlement Agreement.

## VI. CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court (1) preliminarily approve the Parties' proposed class action Settlement; (2) provisionally certify pursuant to Rule 23(b)(3) the Class for settlement purposes only; (3) approve the proposed Notice and direct that it should issue; (4) set the date and time of a Final Approval Hearing; and (5) grant such other relief as the Court deems necessary and appropriate.

Dated:  May 6, 2025                    Respectfully submitted,

**ARCHCITY DEFENDERS, INC.**

By: /s/ *Nathaniel R. Carroll*
Blake A. Strode (MBE #68422 MO)
Jacki J. Langum (MBE #58881 MO)
Maureen G. V. Hanlon (MBE #70990 MO)
Nathaniel R. Carroll (MBE #67988 MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-248 ext. 1040
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
mhanlon@archcitydefenders.org
ncarroll@archcitydefenders.org

and      **DLA PIPER LLP (US)**
Dennis Kiker (*Pro hac vice*)
2525 East Camelback Road, Ste. 1000
Phoenix, AZ 85016
480-606-5100
480-606-5101 (fax)
Dennis.kiker@us.dlapiper.com

Shannon Dudic (*Pro hac vice*)

2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067
310-595-3000
310-595-3300 (fax)
Shannon.dudic@us.dlapiper.com

*Attorneys for Plaintiffs and Proposed Class Counsel*