**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

JAMES CODY, *et al.*, individually and on behalf of other similarly situated individuals, )
)
)
Plaintiffs, )
)
v. )                    Case No. 4:17-cv-2707-AGF
)
CITY OF ST. LOUIS, )
)
Defendant. )
)

**AMENDED MEMORANDUM IN SUPPORT OF CONSENT MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

INTRODUCTION ................................................................................................................. 3

I.    BACKGROUND AND PROCEDURAL HISTORY ...................................................... 4

II.    THE TERMS OF THE SETTLEMENT ......................................................................... 6

   A.    The Settlement Class .................................................................................................... 6

   B.    Establishing membership in the Class ......................................................................... 7

   C.    Benefits to the Class .................................................................................................... 7

   D.    Class Member Releases ................................................................................................ 8

III.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES AND PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................... 8

   A.    The primary concerns of the Eighth Circuit are addressed through limitations to the class and the fact of settlement ....................................................................................................................... 9

   B.    The law favors class action settlements ...................................................................... 10

   C.    Predominance is satisfied  ........................................................................................... 11

      1.    The predominance inquiry shifts on individualized and common issues ................... 13

      2.    The Settlement Class satisfies predominance ......................................................... 16

   D.    This settlement agreement is similar, if not identical, to other 23(b)(3) damages class actions approved by the Eastern District of Missouri ................................................................................... 18

   E.    The remaining Rule 23(a) and 23(b) requirements are satisfied ................................... 25

      1.    Numerosity .............................................................................................................. 26

      2.    Typicality ................................................................................................................ 26

      3.    Adequacy ................................................................................................................. 27

      4.    Superiority ............................................................................................................... 28

IV. THE SETTLEMENT SATISFIES RULE 23(e) ............................................................... 29

   A.    The Settlement is fair .................................................................................................. 32

   B.    The Settlement is adequate .......................................................................................... 35

   C.    The Settlement is reasonable and treats class members equitably ................................. 36

V.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS IS APPROPRIATE .......................................................................................................................... 37

   A.    Class notice and settlement administration .................................................................. 37

   B.    The proposed notice is reasonable under Rule 23(e) ..................................................... 38

CONCLUSION ...................................................................................................................... 41

## INTRODUCTION

Plaintiffs,[1] on behalf of themselves and all others similarly situated, with consent of Defendant City of St. Louis ("the City" or "Defendant") (collectively, the "Parties") seek preliminary approval of a proposed class action settlement of claims against the City arising out of the City's alleged violations of the Eighth and Fourteenth Amendments related to the conditions at City's Medium Security Institution ("MSI"). For the reasons set forth herein, the Motion should be granted.

Plaintiffs submitted a prior motion to preliminarily approve an earlier version of this settlement. Docs. 421–22. After the June 12, 2025 hearing with the Court, the Parties have extensively conferred. The Parties agreed upon a modification to the Settlement Agreement to limit the class to people who were jailed for three consecutive days. Plaintiffs have also revised the claims form to allow class members to attest to experiencing "multiple overlapping conditions" to recover.  Finally, Plaintiffs provide below comparator settlements from the Eastern District of Missouri and specific case law demonstrating this Court's authority to approve the settlement.

The Parties believe the Settlement is fair, reasonable, and adequate, and meets the requirements of the Federal Rules of Civil Procedure. The Parties therefore respectfully request that this Court preliminarily approve the Settlement, certify the Settlement Class for settlement purposes only, and order that Notice be distributed to the Settlement Class.

The Settlement Agreement, attached as **Exhibit 1**, if approved, will establish a non-reversionary common fund of $4,000,000 (the "Settlement Fund"). After payment of fees and costs, including reasonable attorneys' fees and costs, Settlement Administration Costs, and Class

---

[1] The named Plaintiffs are Plaintiffs James Cody, Callion Barnes, Jasmine Borden, Michael Mosley, Eddie Wiliams, and Diedre Wortham (collectively "Plaintiffs" and each a "Plaintiff").

Representative Service Awards, all available funds will be distributed by check or other cash-equivalent form of payment to the Settlement Class Members who make claims.[2]

Pursuant to this Court's March 27 order, *see* Doc. 416, this memorandum fully addresses: (1) whether notice of the proposal must be given to the proposed class under Rule 23(e)(1), including whether the Court will likely be able to certify the proposed settlement class (Sections III, *infra*); (2) Rule 23(e)(2)'s fairness and reasonableness standards (Section IV, *infra*); (3) the form and method of providing notice (Section V, *infra*; Ex. 1, Settlement Agreement, Section VIII; Exhibits 1A (Proposed Postcard Notice), 1B (Proposed Long Form Notice), and 1C (Proposed Claim Form)); and (4) attaches proposed schedules and procedures for (a) class members to opt out or object and (b) the filing of a motion for final approval and for a final approval hearing (Section V.B, *infra*; Ex. 1, Settlement Agreement, Section X–XI; Ex. 2, Proposed Order).

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 13, 2017, Plaintiffs filed an action captioned *Cody et al. v. City of St. Louis*, Case No. 4:17CV02707, asserting claims under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the First, Eighth, and Fourteenth Amendments to the United States Constitution. *See* Doc. 1 (Complaint); *see also* Doc. 22 (Amended Complaint); Doc. 333 (Second Amended Complaint). Plaintiffs brought six claims, all of which related to the physical conditions in MSI. In Counts I and II, Plaintiffs alleged that the conditions at MSI were cruel and unusual, in violation of the Fourteenth and Eighth Amendments, respectively. Doc. 333 ¶¶ 178–83. Plaintiffs specifically challenged the City's practice failing to maintain the facility such that detainees endured poor ventilation, extreme heat, insect and rodent infestations, overflowing sewage, black mold, and overcrowding. *Id.* ¶¶ 179, 182. In Count IV, Plaintiffs alleged that the City's failure to supervise

---

[2] All capitalized terms have the same meaning as used in the Parties' Settlement Agreement, attached as **Exhibit 1**.

and train correctional officers and other MSI employees constituted a deliberate indifference to the rights of detainees, and resulted in the detainees living in unsanitary conditions described in Counts I and II. *Id.* ¶¶ 187–89. In Count III, Plaintiffs alleged that the City retaliated against detainees who raised grievances about the cruel and unusual conditions. *Id.* ¶¶ 184–86. Counts V and VI challenged specifically the extreme heat conditions. *Id.* ¶¶ 190–202.

The parties have undergone extensive motion briefing as to the appropriateness of class certification for Plaintiffs' claims. Plaintiffs filed an initial motion for class certification which this Court denied on December 27, 2021. Docs. 248, 302. On January 10, 2022, Plaintiffs filed a renewed motion for class certification, proposing narrower class definitions. Docs. 307, 308. On May 25, 2022, the Court certified the pretrial and post-conviction general conditions classes of all individuals detained at MSI during the class period beginning November 13, 2012, and the parallel heat subclass for individuals detained on days when St. Louis's ambient air temperature equaled or exceeded 88 degrees. Doc. 335. Defendant appealed the Court's certification order, and on June 3, 2024, the Eighth Circuit reversed the order and remanded for further proceedings. *Cody v. City of St. Louis*, 103 F.4th 523 (8th Cir. 2024).

On remand, the Court granted Plaintiffs leave to file a second renewed motion for class certification. Doc. 398. Thereafter, on October 31, 2024, Plaintiffs filed their second motion proposing narrower class definitions and requesting class certification. Docs. 399–401. Specifically, Plaintiffs requested certification of pretrial and post-conviction classes of detainees who were detained in dormitories in MSI between November 13, 2012, and July 24, 2017. for seven or more days where the ambient air temperature in St. Louis, Missouri equaled or exceeded 88 degrees Fahrenheit. Doc. 401, at 2. The Parties completed briefing on Plaintiffs' second renewed motion for class certification on December 23, 2024. *See* Docs. 405, 412.

On February 24, 2025, while Plaintiffs' second renewed motion for class certification was pending and following a period of thorough examination and investigation of the facts and law relating to the matters in this litigation, including a November 25, 2024, mediation, the Parties reached an agreement to settle the case, with the material terms memorialized in a Term Sheet dated February 24, 2025. This Court approved the Parties' joint notice of settlement and motion to stay proceedings on February 25, 2025. Docs. 413, 414. The Parties subsequently reached a full Settlement Agreement, subject to this Court's approval.

The Parties have concluded that Settlement is desirable to avoid the time, expense, and inherent uncertainties of defending prolonged litigation and to resolve finally and completely all pending and potential claims relating to the conduct alleged in the litigation. The Parties further believe this Settlement Agreement offers significant benefits to all Class Members and is fair, reasonable, adequate, and in the best interest of the Classes.

Notwithstanding its agreement to settle, Defendant has denied and continues to deny Plaintiffs' claims and allegations in the litigation. Defendant denies any wrongdoing or liability of any kind to Plaintiffs or to any Class Member. Nothing in the Settlement Agreement or this Motion is intended to be or shall be deemed as Defendant's admission or concession to the contrary for any purpose other than settlement.

## II.     THE TERMS OF THE SETTLEMENT

### A.     The Settlement Class

The Settlement resolves the claims of one Settlement Class (hereinafter, the "Settlement Class" or the "Class") for which the Parties seek certification under Federal Rule of Civil Procedure 23(b)(3), for settlement purposes only:

All persons who were detained in the St. Louis Medium Security Institute for three or more consecutive days between November 13, 2012 and June 30, 2022.

Settlement Agreement ¶ 20.

### B.    Establishing membership in the Class

To establish membership in the class, class members must complete a claims form in which members must attest that they were jailed in MSI for at least three consecutive days in the class period and that they were exposed to at least one of the specific conditions alleged in the Second Amended Complaint. *See* Exhibit 1C.

### C.    Benefits to the Class

The Settlement Agreement provides monetary benefits in the form of a non-reversionary Settlement Fund of $4,000,000. Settlement Agreement ¶¶ 21, 57–59. All payments to Settlement Class Members and Settlement Administration Costs, as well as any Service Awards awarded to Class Representatives and attorneys' fees and costs awarded to Class Counsel, shall be paid from the Settlement Fund. *Id.* ¶¶ 21, 93.

Each member of the Class who has not opted out of the Settlement and who files a valid claim will receive a cash payment. Subject to potential adjustments described in the Settlement, the payments to Settlement Class Members will be made as follows:

The Settlement Fund—that is, the $4,000,000 allocated to the Class minus proportional deductions for (a) the Court-approved attorneys' fees and costs awarded to Class Counsel, (b) any Settlement Administration Costs and/or Expert Costs, and (c) any Court-approved Service Awards to the Class Representatives (*id.* ¶ 21)—shall be distributed *pro rata* to the members of the Class using the following calculation: (a) calculate the total number of days spent in jail by Settlement Class Members in the Settlement Class who have filed a valid claim by adding together all calendar dates during the class periods on which the jailing records

7

indicate a person was in custody, (b) divide the dollar amount of the Settlement Class Fund by the total number of days spent in jail by Settlement Class Members, as calculated in subsection (a) above, which yields a per-jailed-day amount, (c) multiply the per-jailed-day amount by the total number of days jailed for each Settlement Class Member. *Id.* ¶ 93(d)(iii). This results in a Settlement Class Member Payment for each Settlement Class Member. *Id.*

The Settlement Agreement also sets out a specific procedure for disposition of any residual funds, including a procedure for a secondary distribution and a process for proposing a *cy pres* recipient. *Id.* ¶¶ 95–98. In no event shall any portion of the Settlement Fund revert to Defendant. *Id.* ¶ 99.

### D.    Class Member Releases

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released the Released Parties from:

> any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period as described in the Second Amended Complaint in this Action that were or could have been alleged in the Action, including but not limited to claims related to the Medium Security Institution and the conditions of confinement and any other claims or causes of action related to the conditions of the Releasing Parties' detention inside MSI at any time during the Class Period.

*Id.* ¶ 100. The release is appropriately tailored and, as covered infra in Section III.D, mirrors almost exactly release language used for other 23(b)(3) civil rights classes in the Eastern District of Missouri. It covers claims arising from the identical factual predicate to the claims asserted in the operative Complaints.

### III.    THE REVISED PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES AND PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The Parties are conscious that they are coming to the Court asking the Court to approve a class that is like (but different in important ways from) a class decertified by the Eighth Circuit in this very case. But after extensive examination, negotiation, and discussion, the Parties strongly believe that the proposed amended settlement classes can be certified for the purpose of settlement by this Court.

This is true for several key reasons: 1) the concerns of the Eighth Circuit are addressed; 2) a full examination of the controlling case law supports that this class satisfies predominance for settlement-only purposes; and 3) the proposed class mirrors other damages classes that have been approved and successfully administered. Plaintiffs lay out each reason below, as well as present argument as to how this proposed settlement class meets all other requirements of Rule 23.

### E.    The primary concerns of the Eighth Circuit are addressed through limitations to the class and the fact of settlement

Plaintiffs respectfully suggest that the concerns that led the Eighth Circuit to decertify the General Conditions class originally certified by this Court are addressed in the revised class definition and given the settlement agreement between the Parties.

The Eighth Circuit identified two key issues related to the prior certification of the general conditions class here. First, the Eighth Circuit faulted the original certification order for lacking 'rigorous analysis' showing that Rule 23's requirements were satisfied, and in particular, showing that the elements of a *Monell* claim against the City (the sole Defendant) "can be established on a class-wide basis" for a Rule 23(b)(3) class. *Cody*, 104 F.4th at 531. Second, the Eighth Circuit was concerned the original class certification order "erred in describing the standard for liability." *Id.* Because liability will turn on, "both the severity of the conditions each plaintiff faced, and the length of exposure to those conditions," the Eighth Circuit faulted the class for not having a duration requirement or establishing "particular conditions establishing constitutional violations."

*Id.* The Eighth Circuit explicitly stated that "we do not hold that *no* class addressing Plaintiffs' conditions complaints could ever be properly certified." *Id.* at 533. Plaintiffs address each in turn.

First, whether Plaintiffs can establish evidence sufficient for the finding of *Monell* liability for the entire class is not relevant where, for the purpose of settlement alone, the City joins Plaintiffs in asking this Court to certify a class. While the City of course does not concede it is liable, *see* Settlement Agreement ¶ 3, there is no longer an issue of how Plaintiffs could present evidence of entity liability. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013) (because the parties had agreed to settle, the court no longer needed to consider "the common evidence needed to establish the defendants' liability to class members" nor "the available evidence" nor "the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial" (quotations omitted)). For the standard of liability, the Parties have included a major alteration to the class examined by the Eighth Circuit in that the class now has a duration requirement. To recover, an individual must attest (and class data must confirm) that he or she was incarcerated in MSI for three consecutive days or longer. Settlement Agreement ¶ 20. This means people will not be able to recover damages for the conditions of confinement until that individual experienced those conditions for at least 72 hours, which the parties selected as the outside edge based on Eighth Circuit case law. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (holding stints of 72 hours in a filthy cell with no time out established possibility jury could find for plaintiff on conditions of confinement claim). Finally, the claims form that must be completed by class members asks the class members to attest to experiencing "particular conditions establishing constitutional violations." *Cody*, 104 F.4th at 533.

**F.    The law favors class action settlements**

"The law strongly favors settlements. Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). "Class actions, in general, 'place an enormous burden of costs and expense upon [ ] parties.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). Settlement avoids protracted litigation and conserves resources. *See In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (expense of continued litigation "weigh[s] in favor of" approving settlement); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 866, 899 (6th Cir. 2019) ("Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.").

The fact that the parties have chosen to settle "should be given significant weight." *In re. Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542-VSB, 2020 WL 7389330, at *2 (S.D.N.Y. Dec. 16, 2020). This Court may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement," *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013).

### G.    Predominance is satisfied

In Plaintiffs' first Memorandum in Support of Consent Motion for Preliminary Approval of Class Action Settlement, *see* Doc. 422 at 22–23, Plaintiffs cited several cases asserting that, in a context settlement, where the "proposal is that there be no trial[,]" a district court need not

11

consider whether the case would present intractable management problems at trial, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); Fed. Rule Civ. Pro. 23(b)(3)(D). Those cases recognized, as did this Court at the June 12 hearing, some issues at the intersection of trial management and predominance—such as variations in state laws or an unwieldly number of subclasses—are less likely to frustrate predominance in a settlement-context. *See* Doc. 422 at 22-23 (citing *Heldt v. Payday Financial, LLC*, No. 3:13-cv-03023-RAL, 2016 WL 96156, at *12 (D.S.D. Jan. 8, 2016)); *see also In re Bisphenol-A (BPA) Polycarbonate Plastics Prods. Liability Litig.*, 276 F.R.D. 336, 342 (W.D. Mo. 2011). Indeed, the Supreme Court suggested as much in *Amchem* when it noted that "[s]ettlement is relevant to a class certification." *Amchem*, 521 U.S. at 619.

Following *Amchem*, courts across the country have repeatedly found that the predominance inquiry in a settlement context *also* shifts as it relates to the calculus of common compared to individual questions. *Newberg and Rubenstein on Class Actions § 4:63* ("[P]redominance [is] the main focus of manageability"). "[I]ndividualized issues" that "may bar certification for adjudication because of predominance-related manageability concerns . . . do not bar certification for settlement." *Id*. As one district court noted, "individual issues relating to causation, injury, and damage," all of which may bar class certification in a *trial* for tortious conduct, "become irrelevant" and "disappear" in a settlement-context "because the settlement's objective criteria provide for an objective scheme of compensation." *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Penn. August 28, 2000).

Although there is not an Eighth Circuit case to directly address this issue,[3] Plaintiffs believe that caselaw from courts around the country suggest that (1) the analysis shifts as it relates to the

---

[3] Although the issue does not appear to have been presented to the Eighth Circuit, Plaintiffs detail in Section III.D, *infra*, that many Rule 23(b)(3) classes challenging the conditions of confinement have been certified for settlement-only purposes in the United States District Court for the Eastern District of Missouri.

predominance of common issues for this Settlement Class and (2) under that new analysis, predominance is satisfied here.[4] Plaintiffs address each in turn.

### 1. In a settlement-context, the predominance inquiry shifts on individualized and common issues

As noted above, the class definition here has been amended to address the Eighth Circuit's predominance concerns. *See* Section II.A, *supra*. But even if the class definition had remained unchanged, courts across the country have repeatedly certified for settlement-only purposes classes that, under identical definitions, were not previously certifiable for failure to satisfy predominance. *3 Newberg on Class Actions § 7:35* (5th ed) (Courts "will certify settlement classes although they had previously denied certification of the same class for litigation purposes."). This is because the courts have found that individualized issues that may impede predominance in a trial context recede in importance in a settlement.

For instance, in *Pena v. Taylor Farms Pacific, Inc.*, No. 2:13-cv-01282-KJM-AC, 2020 WL 6392576 (E.D. Cal. Nov. 2, 2020) (hereafter, *Pena I*), after the Ninth Circuit declined certification for many of the plaintiffs' classes, the parties reached a settlement and moved to certify for settlement-only purposes. *Id.* at *1. The settlement-only class definition was broadly drawn and "included subclasses for which the court had previously denied certification." *Id.* at *2–3; *Pena v. Taylor Farms Pacific, Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 WL 916257, at *1 (E.D. Cal. March 10, 2021) (hereafter, *Pena II*). One such subclass challenged the

---

[4] As further discussed in this section, the Settlement Class satisfies Rule 23(a)'s commonality requirement as well as Rule 23(b)(3)'s predominance requirement. *Cf. Amchem*, 521 U.S. at 609 (the predominance inquiry subsumes the commonality analysis in a Rule 23(b)(3) class). Predominance requires that "common questions predominate over individual questions," and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem*, 521 U.S. at 623). "The common questions need not be determinative, but the efficiency and economy of class adjudication must outweigh the difficulties and complexity of individual treatment of class member claims." *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D. Mo. 1979). The "fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004).

defendants' failure to compensate plaintiffs for time spent applying and removing protective gear. *Pena I*, 2020 WL 6392576, at *4. For trial-purposes, the court cited numerous factual questions that varied across class members, leading to predominance concerns: "Not all employees are required to wear the same protective equipment. . . . Dressing and removing the equipment took place in difference locations at different times, required more time of one employee than another, and employees became more efficient over time." *Id.* Thus, the court reasoned, the "plaintiffs' injury cannot be shown via evidence common to the class[,]" and, "[e]ven if plaintiffs had established the existence of an unofficial policy, in light of such disparate application, each class member would be required to make an individual case to establish the defendants' liability." *Id.*

But for *settlement*-only purposes, the subclass was certified because "individualized questions and conflicts do fade away when the parties agree to settle." *Id.* at *5. The court noted, there was "no reason to suspect that the [subclass members] have different interests," as "every member of [the subclass] is making the same type of claim as every other, even if their individual awards are different[,]" in that all were challenging the policy failure of the defendant. *Id.* at *6. Even recognizing differences across class members that "separate some subclass members from others" and which "might make it very difficult for some subclass members to prove they were underpaid" in a trial setting, the class satisfied predominance for settlement. *Id; see also In re DRAM Antitrust Litig.*, 2013 WL 12333442, at *56 (although predominance was not satisfied for a *trial* class because no common proof could establish all plaintiffs—each a government entity of a different size and with different resources—suffered the same injury, the *same* class was certifiable for settlement-only purposes).

Similarly, in *Hill v. County of Montgomery*, 9:14-cv-00933 (BKS/DJS), 2020 WL 5531542 (N.D.N.Y. Sept. 15, 2020), the court revisited in a settlement-context a class that, due

to predominance concerns, it had previously certified only for liability purposes. *Hill*, 2020 WL 5531542, at *4. The class included "[a]ll persons who have been placed into the custody of the Montgomery County Jail and were detained for at least two consecutive weeks from July 15, 2011 to December 31, 2018." *Id.* Plaintiffs argued predominance was satisfied for settlement-purposes because they challenged a single policy by a single defendant to which all detainees were exposed, and the court agreed, reasoning that issues that may have necessitated individualized proof at trial were not relevant given the settlement's objective criteria for measuring and calculating damages. *Id.; see also In re Diet Drugs*, 2000 WL 1222042, at *42–43 (E.D. Penn. Aug. 28, 2000) (finding in a settlement-only context that the defendant's "conduct and knowledge" were the predominant issues, even where individual issues existed with respect to causation, injury, and damages).

These settlement-only classes stand in contrast to the class proposed in *Amchem*, which "encompasse[d] hundreds of thousands, perhaps millions of individuals" exposed to the asbestos products of twenty different defendants. *Amchem*, 521 U.S. at 597. Critically, although the class sought to remedy harms resulting from asbestos exposure, the definition included people who had yet to experience any symptoms or illness, for whom any future-damages were entirely speculative. *Id.* at 602. And, for future-damages class members, though the degree of their future injury was not yet known (or even certain), the settlement both limited their possible recovery and made no accounting for inflation that may impact the cost of medical care. *Id.* at 603 –04. The Court identified two key predominance issues. First, Rule 23(b)(3)'s intent was "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," and thus was difficult to satisfy in matters where the "stakes" of individual members were "high," as they were for *Amchem* class members facing serious personal injury or death. *Id.* at 616–17, 625 (quotations omitted). Second, "disparities among

15

class members [were] great," as the class dealt with backward-looking real harm and future-looking speculative harms, resulting in "factual differences" among putative class members that "translate[d] into significant legal differences." *Id.* at 609–10, 625 (citation omitted); *see id.* at 623 n.18 ("In this respect, the predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that the 'claims or defense' of the named representatives must be 'typical of the claims or defenses of the class.'").

*Amchem* shows the limits of a certifiable settlement-class: in a sprawling class against multiple defendants, where the individual stakes are high and interests divergent, then "individualized questions and conflicts" are less likely to "fade away when the parties agree to settle." *See Pena I*, 2020 WL 6392576, at *5 (discussing predominance issues with the *Amchem* class). In contrast, predominance is satisfied where there is a common defendant, the litigation focuses on one common course of defendant's conduct, and when the class members' interest and claims seek to redress a common, non-speculative injury. *See also In re Diet Drugs*, 2000 WL 1222042, at *43; *Hill*, 2020 WL 5531542, at *4; *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("[C]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members[.]"); *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) (collecting cases).

### 2.  The Settlement Class satisfies predominance

Predominance is satisfied here. The proposed settlement class does not present an *AmChem* problem: it challenges the conduct of a single defendant and a single course of conduct of that defendant that led to MSI being maintained in such a state of disrepair as to expose class members to black mold, sewage, rodent infestations, extreme temperatures, and overcrowding. Each class member's claim concern injuries suffered in the past, and this Court need not speculate about

potential future harms that may otherwise frustrate predominance.[5] As described in more detail in Section III.E.4.a, *infra*, the individual monetary damages of many class members are relatively low, suggesting the class's alignment with the intent of Rule 23(b)(3). *See Amchem*, 521 U.S. at 617.

Here, as in *Pena*, every member of the subclass is making the same type of claim as every other regarding extended exposure to the unconstitutional conditions at MSI, and an objective scheme of compensation will determine the damages for each class. *See Pena I*, 2020 WL 6392576, at *6. Even if there was some variation among class members about how the City's policy impacted individual members, this settlement class is one where "individualized questions and conflicts" that may have presented predominance issues at trial can "fade away." *See id.*

Moreover, the revised definition addresses the Eighth Circuit's predominance concerns: it adds a durational requirement of three consecutive days. And assuming, even in a settlement-context, that the class must specify the "specific conditions" to which each member was exposed, *see Cody*, 103 F.4th at 531, Plaintiffs have done so here by recounting the specific conditions challenged in the Second Amended Complaint and thus contemplated by the class definition (i.e., sewage, black mold, overcrowding, extreme temperatures, inadequate ventilation, and rodent infestations). The Claim Form also requires each class member to certify that they were exposed to at least one of the conditions challenged in the Second Amended Complaint. *See* Exhibit 1C.

The class is sufficiently cohesive to warrant adjudication by settlement. The common issues that predominate include:

---

[5] And, of course, the class is a fraction of the "humongous" size of the *Amchem* class and does not compare to the Court's descriptor of the class size: "No settlement class called to our attention is as sprawling as this one." *Amchem*, 521 U.S. at 610, 624. Moreover, the parties in *Amchem* had not litigated any of the issues and the class settlement was the Parties' efforts to "devis[e] an administrative scheme for disposition" of claims "not yet in litigation." 521 U.S. at 601. There, unlike here, the issue of tying together all class members was, simply, the settlement itself, not a common course of conduct of a single defendant or a united harm.

a. Whether the unsafe and unsanitary conditions at the Workhouse described in the Complaint violate the Eighth and Fourteenth Amendments to the United States Constitution;

b. Whether the City's policies and practices subjected detainees to a substantial risk of harm from unsanitary conditions, and therefore constitute a violation of Plaintiff and Class Members' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

c. Whether the City's policymakers were aware of the conditions in the Workhouse;

d. Whether, despite the City's knowledge of the conditions within the Workhouse, the City failed to redress the harms;

e. Whether the class member was exposed to the condition for at least three consecutive days.

See Doc. 333.

## H.    This settlement agreement is similar, if not identical, to other 23(b)(3) damages class actions approved by the Eastern District of Missouri

As discussed at the June 12, 2025, hearing, Plaintiffs present four similar 23(b)(3) damages class action settlements which were approved by district courts in the Eastern District of Missouri. Three explicitly contain conditions of confinement claims, and one is similar in that it settled damages for excessive force claims on behalf of a class (which have traditionally experienced difficulties in establishing predominance).

Jennings Debtor's Prison Class Settlement

*Jenkins v. Jennings* was the earliest in a series of class actions challenging incarceration in municipal jails in St. Louis County. Settlement Agreement at 1, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ (E.D. Mo. Dec. 14, 2016), Doc. 35-1. The class action brought claims that individuals were incarcerated because they could not afford to pay debts and that while in the jail individuals were subjected to inhumane conditions of confinement. *Id.* The Class in *Jenkins v. Jennings* was defined as:

All persons who were placed and/or kept in the custody of the City of Jennings Jail after being detained pursuant to a warrant issued by the City of Jennings Municipal Court arising from the nonpayment of a previously imposed fine or court costs and who were allegedly subjected to inhuman conditions of confinement in the City of Jennings Jail. The Class Period is from February 8, 2010 to September 16, 2015.

18

Order Granting Final Approval of Settlement, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ (E.D. Mo. Dec. 14, 2016), Doc. 40.

In the settlement agreement, the class members agreed to the following release on behalf of the class:

> By this Settlement Agreement and specifically as provided in this Paragraph, Defendant, and all of its respective affiliates, predecessors, operating units, related corporations, successors and assigns, officers, agents, representatives, insurers, and all of their past, present, and future employees, supervisors, officers, directors, agents, elected and appointed officials, municipal administrators, correction officers, municipal judges, jailers, attorneys and any person or entity which can be held jointly and severally liable with any of them ("Released Parties"), are released from any and all claims, causes of action, liabilities, demands, and causes of action, fixed or contingent, that were, could have been, or should have been asserted by the Plaintiffs or any member of the Class against the Released Parties based upon or related in any way to the arrest and jailing policy, unpaid court debts, and conditions of confinement in the City of Jennings Jail that are the subject of the Litigation and for any claim asserted, or that could have the arrest and jail policy, unpaid court debts, and conditions of confinement in the City of Jennings Jail ("Released Claims").

Settlement Agreement at 14–15, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ (E.D. Mo. Dec. 14, 2016), Doc. 35-1.

The district court found the proposed settlement met the requirements of Rule 23 and could proceed for settlement purposes as a class action. Order Granting Preliminary Approval of Class Action at 4, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ, Doc. 33. No class members objected or opted out. Order Granting Final Approval of Settlement, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ (E.D. Mo. December 14, 2016), Doc. 40.  The Court approved the final settlement. *Id*. No parties appealed, and the class was successfully administered. Order Dismissing Action, *Jenkins v. City of Jennings*, 4:15-CV-00252-CEJ (E.D. Mo. December 14, 2016), Doc. 44.

<u>St. Ann Debtor's Prison and Jail Conditions Class Settlement</u>

Like *Jennings*, *Thomas v. City of St. Ann* and *Walker v. City of St. Ann*[6] brought claims that individuals held in the St. Ann municipal jail for non-payment of fines were subjected to inhumane conditions of confinement. Settlement Agreement, *Thomas v. City of St. Ann*, 4:16-cv-01302-SEP (E.D. Mo. July 31, 2023), Doc. 299-1. The case was settled prior to any contested certification briefing, but the parties agreed to ask the court to certify it for the purpose of settlement. Memorandum in Support of Motion for Preliminary Approval at 3, *Thomas v. City of St. Ann*, 4:16-cv-01302-SEP (E.D. Mo. July 31, 2023), Doc. 299.   The two settlement classes for St. Ann were defined as follows:

> Debtor Prison Class: All persons who were, at any time since August 9, 2011, to November 14, 2022, held in jail by or on behalf of the City of St. Ann for nonpayment of a monetary sum arising out of a Municipal Ordinance Violation, excluding persons who were held in the St. Ann jail solely on behalf of the City of Normandy and/or the City of Edmundson.

> Jailed Class: All persons who were, at any time since August 9, 2011, to November 14, 2022, detained in the St. Ann Jail.

Settlement Agreement at ¶ 16, 26, Thomas v. City of St. Ann, 4:16-cv-01302-SEP (E.D. Mo. July 31, 2023), Doc. 299-1.

In the settlement agreement, the named plaintiffs agreed to the following release on behalf of the class:

> As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period as described in the Complaints in these Actions that were or could have been alleged in the Actions, including but not limited to "sham warrant" claims and claims for injunctive relief ("Released Claims").

---

[6] The claims were originally filed in *Thomas et al. v. City of St. Ann et al.*, Case No. 4:16-cv-1302. Settlement Agreement at ¶ 1, *Thomas v. City of St. Ann*, 4:16-cv-01302-SEP (E.D. Mo. July 31, 2023), Doc. 299-1. The Court severed Plaintiffs' jail conditions claim and opened a new case in which that claim was refiled captioned *Walker et al. v. City.*, No. 4:18-cv-1699. Id. at ¶ 3. However, the cases were settled collectively. *Id.* at ¶ 6.

*Id.* ¶ 105.

The district court preliminarily approved the settlement, finding that the settlement meets the requirements of Rule 23 and specifically that common issues will likely predominate over individual issues. Order Granting Preliminary Approval at 3, Thomas v. City of St. Ann, 4:16-cv-01302-SEP (E.D. Mo. Oct. 17, 2023), Doc. 299-1. There were no exclusions or timely opt-outs, and only two objections. Order Granting Final Approval, at ¶ 5 (Thomas v. City of St. Ann, 4:16-cv-01302-SEP (E.D. Mo. Mar. 7, 2024), Doc. 311. The district court finally approved the settlement on March 7, 2024. Id. at 6. No parties appealed and the claims were successfully administered. Order Dismissing Case, Thomas v. City of St. Ann, 4:16-cv-01302-SEP (E.D. Mo. Aug. 8, 2025), Doc. 318.

<u>Ferguson Debtor's Prison and Jail Conditions Class Settlement[7]</u>

In *Fant v. Ferguson*, the plaintiffs alleged that the defendant City of Ferguson violated the United States Constitution in connection with its arrest and detention policies and, specifically, that the City violated the Fourteenth and Eighth Amendments by keeping individuals in inhumane jail conditions.

The plaintiffs named the following settlement classes in their Settlement Agreement:

Bearden Settlement Class: All persons who have, at any time from February 8, 2010 through December 30, 2022, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay.

Modified Gerstein Settlement Class (a subclass of the Bearden Settlement Class): All persons who have, at any time from February 8, 2010 through December 30, 2022, been held in jail by the City of Ferguson after a warrantless arrest with no finding of probable cause by a neutral magistrate for their arrest and continued detention.

---

[7] As this Court was the approving court in *Fant v. Ferguson*, the Court is no doubt aware of two key distinctions: 1) the class which was approved for settlement had previously been certified after extensive adversarial briefing (*see Fant v. Ferguson*, 4:15-cv-00253-AGF, Docs. 519, 535, 573); and 2) the defendants had filed a 26(f) appeal, and the Eighth Circuit had declined to consider the class certification (Judgment Denying Permission to Appeal, *Fant v. Ferguson*, 4:15-cv-00253-AGF (E.D.Mo. July 18, 2022), Doc. 529). Nonetheless, Plaintiffs offer this for the reasons explained below.

> Warrant Settlement Class (a subclass of the Bearden Settlement Class): All persons who have, at any time from February 8, 2010 through December 30, 2022, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City.
>
> Post-Judgment Settlement Class (a subclass of the Bearden Settlement Class): All persons who have, at any time from February 8, 2010 through December 30, 2022, been jailed by the City of Ferguson because of their non-payment in connection with a prior judgment.
>
> Jail-Conditions Settlement Class: All persons who, at any time since February 8, 2010 through December 30, 2022, were held in the City of Ferguson jail.

Settlement Agreement at ¶ 3, *Fant v. Ferguson*, 4:15-cv-00253-AGF (E.D. Mo. May 13, 2024), Doc. 679-1. These classes were modified from the classes certified by this Court during the contested class certification motions. *Id.* (citing Docs. 519, 535, 573, orders granting class certification).

In the settlement agreement, the named plaintiffs agreed to the following release on behalf of the class:

> As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action ("Released Claims").

Settlement Agreement at ¶ 13.1., *Fant v. Ferguson*, 4:15-cv-00253-AGF (E.D. Mo. May 13, 2024), Doc. 679-1.

This Court found the amended settlement classes, like the previously certified classes, satisfied requirements of Rule 23. Order Granting Preliminary Approval at 4, *Fant v. Ferguson*, 4:15-cv-00253-AGF (E.D. Mo. Feb. 27, 2024), Doc. 675. There were no objections or opt outs from class members. Order Granting Final Approval at ¶ 9, *Fant v. Ferguson*, 4:15-cv-00253-AGF (E.D. Mo. June 18, 2024), Doc. 684. This Court granted final approval of the settlement on

June 18, 2024. *Id.* at 5.  No parties appealed, and the settlement is in the process of being administered.

Street v. O'Toole Excessive Force Class Settlement

In *Street v. O'Toole*, five named plaintiffs brought a class action following a mass arrest in the City of St. Louis, with claims that all those arrested were unreasonably seized and suffered from excessive force during the arrest. Settlement Agreement at 1, *Street et al. v. O'Toole et al.*, 4:19-cv-02590-CDP (E.D. Mo. Jan 26, 2023), Doc. 105-1. The parties asked the court to certify a settlement class, which was defined as follows:

> All people who were arrested on September 17, 2017, near the intersection of Tucker Boulevard and Washington Avenue, in the City of St. Louis who have not previously settled all of their claims related to this event.

*Id.* at 2.

In the Settlement Agreement, the named plaintiffs agreed to the following release on behalf of the class members:

> By this Settlement Agreement and specifically as provided in this Paragraph, Plaintiffs and the Class Members agree that the Defendants and the City of St. Louis and the City of St. Louis' former, current, and future employees, officers, agents, servants, assigns, supervisors, representatives, elected and appointed officials, municipal judges, prosecutors, and any and all other persons or entities associated in any way with the City of St. Louis and any and all other persons or entities which might be held jointly and severally liable with any of them are released from any and all claims, causes of action, liabilities, known or unknown which could have been asserted by the Plaintiffs or Class Members against the Released Parties arising out of events that occurred near the intersection of Washington and Tucker on September 17, 2017.

*Id.* at ¶ 6.1

Judge Perry issued a preliminary approval order, finding the proposed classes met all standards under Rule 23, including that common questions of law predominated over individual ones. Order Granting Preliminary Approval, *Street et al. v. O'Toole et al.*, 4:19-cv-02590-CDP (E.D. Mo. Feb. 6, 2023), Doc. 106. There were no objections or opt outs from class members

Order Granting Final Approval at 3, *Street et al. v. O'Toole et al.*, 4:19-cv-02590-CDP (E.D. Mo. June 18, 2024), Doc. 106. This Court granted final approval of the settlement. *Id.* No parties appealed, and the settlement was successfully administered. Stipulation of Dismissal, *Street et al. v. O'Toole et al.*, 4:19-cv-02590-CDP (E.D. Mo. Aug. 3, 2023), Doc. 116.

To be sure, Plaintiffs do not mean to imply that a local standard of practice negates this Court's duties to carefully evaluate settlements that affect absent class members, nor to evade our responsibility to establish that this instant settlement meets the requirements of Rule 23. And Plaintiffs acknowledge that none of these cases were in the same circumstance of having a previously certified class decertified on appeal.

But Plaintiffs believe these examples could be helpful to the Court's consideration for two reasons.

First, Plaintiffs respectfully suggest these orders from a variety of other federal judges finding similar language meets the requirements of Rule 23 is persuasive evidence that this Court could grant Plaintiffs' motion to certify this class for the purpose of settlement as well. In three separate jail-conditions settlements—*Jenkins, Walker*, and *Fant*—the  definition for the class of people recovering for conditions of confinement included every single person who was in the jail for the entire time period that person was there, with no temporal limits and no identification of specific conditions. All three are thus broader classes than what the Parties propose here, and may have experienced the same challenges identified by the Eighth Circuit at summary judgment or in trial in establishing municipal liability for unconstitutional conditions for every member of the class. Yet all three were certified for settlement by three different district court judges. In *Street,* the plaintiffs asked to certify a damages class of excessive force claims, which insofar as it requires individualized inquiry as to the circumstances behind an assault is difficult to meet standards of commonality and predominance. *See Elizabeth M. v. Montenez*, 458 F.3d 779, 786–

87 (8th Cir. 2006). Yet in *Street* Judge Perry found the differences in types of force, actions by officers or individual class members, or injuries were not a barrier to finding commonality and predominance requirements were met in the settlement posture.

Second, Plaintiffs offer these similar settlements to demonstrate to the Court the examples that the parties drew on for settlement negotiations and discussions and to frame what the parties would still be contending with if the parties were to go back to negotiating. Defendant City of St. Louis relied heavily on these prior settlements in formulating its position as to what the City could expect in terms of class definition and releases.

## I.    The remaining Rule 23(a) and 23(b) requirements are satisfied

Before granting preliminary approval of a settlement in a case where a class has not yet been certified, the Court should determine whether the class proposed for settlement is appropriate under Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632. "To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). . . . These prerequisites are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006). Here the proposed settlement Class meets all the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). Therefore, the Parties now request that the Court provisionally certify the proposed settlement class for settlement purposes only. Although the class must satisfy Rule 23(a) and Rule 23(b), "the certification inquiry is not the same in the settlement context as it is when certification is for the purpose of trial[.]" *Newberg and Rubenstein on Class Actions* § 4:63 (6th ed); Fed. R. Civ. P. 23(e)(1) advisory committee note to 2018 amendment ("Although the standard for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record.").

### 1. Numerosity

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Aquila ERISA Litig.*, 237 F.R.D. at 207 (quoting Fed. R. Civ. P 23(a)(1)). There are an estimated 17,000 potential Class Members. Thus, the existence of numerosity is readily apparent. *See, e.g.*, *Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) ("The proposed class numbers over one thousand persons. [Plaintiff] has satisfied Rule 23(a)(1).").

### 2. Typicality

Plaintiffs also meet the typicality requirement for serving as settlement class representatives for settlement purposes. Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class[.]" Fed. R. Civ. P. 23(a)(3). "This subsection simply requires 'a demonstration that there are other members of the class who have the same or similar grievances as the [class representative].' The burden of demonstrating that Rule 23(a)(3) is met is 'fairly eas[y]...so long as other class members have claims similar to the named plaintiff.'" *Aquila ERISA Litig.*, 237 F.R.D. at 209 (citation omitted; alterations by *Aquila* court). Typicality, however, does not require that the claims be identical. "When finding a class representative's claims typical, it is not necessary to first find that all putative class members share identical claims." *Jones*, 257 F.R.D. at 187.

Here, Plaintiffs' claims are typical of the claims of the class. The representative plaintiffs and all class members allege they were detained pursuant to set of policies and practices by Defendant that resulted in Plaintiffs and putative class members' confinement in unconstitutional conditions. It is further alleged that the Defendant operated the jail in materially the same manner throughout the class period. Since every putative Settlement Class Member claims injury resulting from the same alleged misconduct, Plaintiffs' interest are co-extensive with those of the Settlement Class. In sum, Plaintiffs have shown their claims "emanate from

the same legal theory or offenses as the claims of the class," thereby satisfying the typicality requirement. *Doran v. Missouri Dep't of Soc. Servs.*, 251 F.R.D. 401, 405 (W.D. Mo. 2008).

### 3.  Adequacy

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones*, 257 F.R.D. at 191 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982)).

Here, there are no conflicts of interest or other antagonisms between Plaintiffs and Settlement Class Members. *See Jones*, 257 F.R.D. at 192. All are individuals with the mutual incentive to establish the alleged unconstitutionality of Defendant's policies and practices and vindicated the constitutional rights to which they are entitled, if any were abridged. All Settlement Class Members were allegedly impacted by the alleged policies and practices at issue in the same manner.

In addition, Class Counsel has provided fair and vigorous representation for the Class. As addressed above, Plaintiffs are represented by attorneys from ArchCity Defenders, who have experience with the functioning of jails in the City of St. Louis and in surrounding municipalities. Plaintiffs are also represented by attorneys from DLA Piper LLP (US), who have experience litigating complex civil rights matters in federal court. *See White v. Martin*, No. 02-4154-CV-C-NKL, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action."); *see also* Doc. 400-9, Strode Decl. (for ArchCity Defenders); Doc. 422-7, Dudic Decl. (for DLA Piper LLP).

### 4. Superiority

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of the class action.

As noted in Section III.C, *supra*, the manageability of a class action at trial is irrelevant in the context of a proposed settlement class. *See Amchem*, 521 U.S. at 620. All remaining factors support certification for settlement purposes here.

### a.    Most Settlement Class Members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

28

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual, as well as the indigence of many members of the proposed class, present an insurmountable hurdle to vindication of constitutional rights. Aggregate litigation is therefore indispensable to the protection of citizens against the alleged unconstitutional policies and practices by the Defendant. The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of putative Settlement Class Members.

### b.    The extent and nature of any other litigation commenced by class members

There are no other pending class actions against Defendant asserting the claims in dispute here. Nor, to Plaintiffs' knowledge, are there any pending individual claims asserting the claims in dispute. Therefore, this factor supports settlement class certification.

### c.    This Court is an appropriate forum for resolution of the claims in dispute

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties, and, because the proposed notice provided in this case will be constitutional sufficient, that personal jurisdiction extends to members of the Settlement Class under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Shutts*, 472 U.S. at 811–12.

## IV. THE SETTLEMENT SATISFIES RULE 23(e)

At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms[.]" *Manual for Complex Litigation* § 21.633 (4th ed.) (hereafter "*Manual*"). The Eighth Circuit "begin[s] with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). "The court's role in reviewing a negotiated class settlement is 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Id.* (quoting *In re Wireless*, 396 F.3d at 934). Courts in the Eighth Circuit have held a settlement agreement is valid where, as here, "the settlement was reached through mediation with a third-party neutral, and only after substantial discovery had taken place." *Hashw v. Dep't − Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016).

Under Federal Rule of Civil Procedure 23(e), in deciding whether to approve a class action settlement, the Court should consider whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Other factors courts consider are "defendant's financial condition," *Risch v. Natoli Eng'g Co., LLC*, 2012 WL 3242099, at \*2 (E.D. Mo. Aug. 7, 2012) (quoting *In re Wireless*, 396 F.3d at 932–33), "the existence of fraud or collusion behind the settlement," "the stage of the proceedings and the amount of discovery completed," and "the opinions of the class counsel, class representatives, and absent class members," *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308, at \*3 (E.D. Mo. Sept. 11, 2013). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Approval of a class action settlement involves a two-step process. The court first makes a preliminary fairness evaluation. *See Manual* § 21.632. If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court directs that notice be given to class members and sets a fairness hearing, at which arguments and evidence may be presented in support of or against the settlement. *Id.* § 21.633; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Under this framework,

> the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase.

*Newberg on Class Actions* § 13:13 (5th ed.) (citing cases).[8]

---

[8] At the conclusion of the Notice period, and after any objections have been resolved, the Court will address whether final approval is warranted.

Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

Here, the Class was adequately represented by the Class Representatives—who do not have any conflicts with the Class—and by experienced Class Counsel. The settlement negotiations occurred at arms' length before an experienced mediator and after significant discovery and motions practice. The recovery to the Class is readily within the range of approval, particularly in light of the substantial risks of trial and the costs associated with further litigation. And the Settlement treats Class Members equitably relative to each other. Therefore, the proposed Settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising Class Members of their opportunity to participate in, opt out of, or object to the Settlement.

### J.    The Settlement is fair

The proposed Settlement is entitled to a presumption of fairness. *See, e.g.*, 4 *Newberg on Class Actions* § 11:41, at 90; *see also Little Rock Sch. Dist.*, 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor"). Here, the Settlement is fair.

First, the Settlement is the product of arms' length negotiations between the Parties following extensive class certification briefing and several mediations, including, most recently, a mediation on November 25, 2024. There, Judge Booker T. Shaw actively participated as a neutral mediator and, while the Parties did not reach an agreement during the mediation, the Parties negotiated many of the material terms that formed the basis of the

Settlement Agreement. Accordingly, this factor weighs in favor of granting preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(B).

The Settlement has none of the "hallmarks" of collusion or other problematic settlement terms, such as reversion of funds to the defendant. *Rouse v. Language Line Servs.*, *Inc.*, No. 4:22-CV-0204-DGK, 2023 WL 6200072, at *4 (W.D. Mo. Sept. 22, 2023) (discussing concerns with reversion provisions). Moreover, the active assistance of a neutral mediator is a strong indicator of a lack of collusion. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge presided over the settlement negotiations and that the district court had prior experience with this type of litigation. Such multiple layers of scrutiny further militate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (approving settlement as "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator").

Second, the Class was adequately represented by Class Representatives and experienced Class Counsel, who are well-informed about the merits and risks of the case and who litigated zealously on behalf of the Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Prior to settlement, the Parties engaged in extensive motions practice, including briefing on the City's motion for summary judgment and multiple rounds of class certification briefing. *See, e.g.*, Docs. 232, 237, 244, 249, 262, 280, 308, 316, 324, 401, 405, 412. In addition, both ArchCity Defenders and Class Counsel from DLA Piper LLP (US) have experience litigating complex civil rights matters like this one in federal court. *See* Doc. 400-9, Declaration of Blake Strode (for ArchCity Defenders); Doc. 422-7, Declaration of Shannon Dudic (for DLA Piper LLP). Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action

33

settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)).

Third, there is no question that discovery in this case is "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1334 (E.D. Mo. 1995). The Parties completed significant discovery, including depositions of more than a dozen witnesses, review and analysis of tens of thousands of pages of documents, and production of expert reports.

Fourth, the terms of the proposed award of attorneys' fees and costs and Service Awards are also fair and demonstrate that the Settlement is the product of arms' length negotiation.

Class Counsel have not been paid for their extensive efforts or reimbursed for costs incurred. The Settlement Agreement contemplates an award of reasonable attorneys' fees to Class Counsel in the amount of $ 1,162,229.00—which is approximately 29 percent of the total Settlement Fund—plus reimbursement of litigation costs in the amount of $170,971.00 (for expert witness fees, court reporter charges, third party class data costs, document review platform charges, and the like), for a total of $ 1,333,222.00. Settlement Agreement ¶ 93(a). Such award is subject to this Court's approval and will serve to compensate for the time, risk, and expense Class Counsel incurred pursuing claims on behalf of the Classes. Defendant agrees not to oppose Class Counsel's request for attorneys' fees and litigation costs in the amount of $ 1,333,200.00 Id. Any approved award of attorneys' fees and costs will be paid from the Settlement Fund prior to the distribution of payments to the Settlement Class Members.  The Settlement Agreement also states Defendant will not oppose Plaintiff seeking approval from this Court for each Class Representative to receive a Service Award of up to $10,000. Id. ¶ 93(b). The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Awards only after reaching agreement on all other material terms of this Settlement. The Settlement Agreement also states

34

Defendant will not oppose Plaintiff seeking approval from this Court for each Class Representative to receive a Service Award of up to $10,000. Id. ¶ 93(b).

The Parties actively litigated these cases for over seven years before a settlement was reached, including significant motions practice and discovery. In light of the substantial time and resources invested by Class Counsel over several years, the requested award of attorneys' fees and litigation costs is fair and reasonable. Moreover, Settlement Class Members will have an opportunity to review these requests and challenge them at the Final Approval Hearing. Importantly, the Court's failure to approve, in whole or in part, any award of attorneys' fees or the requested Service Awards "shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination." Settlement Agreement ¶¶ 102, 105.

### K.    The Settlement is adequate

As the Eighth Circuit has explained, "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn*, 840 F.2d at 607); *see also* Fed. R. Civ. P. 23(e)(2)(C). The Settlement here provides for substantial monetary relief of $4,000,000 to the Class, as well as additional valuable relief and consideration. This amounts to a sizeable recovery in a constitutional class action.

By contrast, the risks of continued litigation are substantial. While Plaintiffs believe that they would ultimately prevail on their claims, they are cognizant that continued litigation entails non-trivial legal risks. Plaintiffs face risks that summary judgment could be granted against them, that they will not prevail at trial, or that the City of St. Louis would appeal a trial judgment. And, even if Plaintiffs prevail on liability, a jury might not award Plaintiffs and the Class the full amount of requested damages. Given the risks Plaintiffs would face at trial, Plaintiffs and Class Counsel believe the proposed Settlement is fair, reasonable, and adequate.

In short, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011). The Parties naturally dispute the strength of the Plaintiffs' case, and the Settlement Agreement reflects the Parties' compromise, weighing the likelihood of various potential outcomes. This case carries significant risks for all Parties and would consume a great deal of time and expense if litigated to the end. In light of the risk and delay of litigation, weighed against the substantial benefits the Settlement will provide to the Class Members, the proposed resolution is a fair, reasonable, and adequate compromise and should be preliminarily approved. *See DeBoer*, 64 F.3d at 1178 ("The very purpose of compromise is to avoid the delay and expense of . . . a trial . . . . Accordingly, while it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes, . . . and the value of the settlement need not be determined with absolute precision.") (internal quotations and citations omitted); *see also In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 ("The court 'does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement. . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial.'" (quoting *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993)).

## L.    The Settlement is reasonable and treats class members equitably

The allocation of the Settlement between Settlement Class Members is fair and reasonable, and treats "class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D).

The proposed method of distributing relief to the Settlement Class Members is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the Settlement. *See* Settlement Agreement ¶ 47, Section

VII–68. Class Members need only fill out a simple form—either in paper form or electronically through the Settlement website—to submit a claim. *Id.* ¶¶ 51, 74. The Settlement Agreement also anticipates that late claims may be filed and provides a process for allowing late claims to be processed. *Id.* ¶ 75. Courts in this District have preliminarily approved similar proposed class action settlements as fair. *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2022 WL 3643669, at *3 (E.D. Mo. Aug. 23, 2022) (preliminarily approving class action settlement in which the "class administrator will mail a settlement check to each class member who submits a timely, valid claim form and does not exclude himself or herself from the class" and settlement fund was to be allocated on a pro-rata basis).

## V. THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS IS APPROPRIATE

### M. Class notice and settlement administration

Subject to Court approval, the Settlement Administrator is Atticus Administration, LLC ("Atticus"), a qualified and experienced settlement administrator. *See* Doc. 422-6, Declaration of Bryn Bridley. Under the Parties' supervision, Atticus will issue Notice, receive exclusion requests, respond to inquiries, issue settlement checks, and conduct other activities relating to Class Notice and Settlement Administration. *See generally id.* at Section VII. As set forth in detail in Section VIII of the Settlement Agreement, the Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law, and shall otherwise be in the manner and form approved by the Court. Subject to Court approval, Notice will be accomplished as set forth in Section VIII of the Settlement Agreement.

Notice will be provided to the Class by direct mailing of the Postcard Notice (Settlement Agreement, Ex. 1), along with a Claim Form and return envelope, to all potential Class Members

at their last known or readily ascertainable address. Settlement Agreement ¶ 67. The Postcard Notice will inform Class Members how they may request a copy of the Long Form Notice (Settlement Agreement, Ex. 1).

The Settlement Administrator will also distribute Publication Notice of the Settlement Agreement through print publication in the *St. Louis Post-Dispatch* and *St. Louis American*. Settlement Agreement ¶ 71. The Publication Notice shall inform Settlement Class Members how they may request copies of the Long Form Notice and a Claim Form. *Id.*

Finally, the Settlement Administrator also will provide a copy of the Postcard Notice, Long Form Notice, and Claim Form to any person who inquires by written communication or telephone call to the toll-free telephone number established by the Settlement Administrator. *Id.* ¶ 70. The Settlement Administrator also will upload downloadable and printable copies of the Postcard Notice, Long Form Notice, and Claim Form to the Settlement Website. *Id.* The Settlement Agreement requires the Settlement Administrator to maintain a database showing mail addresses to which each Notice was sent and any Notices that were not delivered. *Id.* ¶ 72. In addition to weekly updates to the Parties regarding the progress of the Notice Program and the declaration or affidavit by the Settlement Administrator in advance of the Final Approval Hearing and in support of the motion for Final Approval, the Settlement Administrator shall provide a summary report of the Notice Program to the Parties three days prior to the Final Approval Hearing. *Id.* Finally, the database maintained by the Settlement Administrator regarding the Notices shall be available to the Parties and the Court upon request. *Id.*

### N.    The proposed notice is reasonable under Rule 23(e)

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method. *See Franks v. Kroger Co.*, 649

38

F.2d 1216, 1222–23 (6th Cir. 1981), *modified on other grounds on rehearing,* 670 F.2d 71 (6th

Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6. The notice should "inform class members of the

terms of the settlement and of the steps required to be taken to file claims or to object to or

exclude themselves from the settlement." *EEOC v. Fairbault Foods, Inc.*, Nos. 07-3976, 07-

3986, 07-3977, 07-3985, 2008 WL 879999, at *1 (D. Minn. Mar. 28, 2008). In this case, after

careful discussion and consideration, the Parties have agreed on the content and methods of

notice, as addressed below.

As provided by the proposed Settlement Agreement, the Notice program will be executed

by Atticus Administration, LLC, which will mail each Class Member a Short-Form postcard

notifying them of their membership in the Class. The postcard will provide a link to a website,

www.stlmediumsecurityinstitutionclassaction.com, through which Class Members can opt in to

the settlement via an online Claim Form, request a paper Claim Form, request a Long-Form paper

notice, and learn how to object to the proposed settlement. Records have been provided by the

Defendant and third parties to acquire the name and address of each Class Member. The Class

Notice and Claim Form will also be online at the Class Administration website. Notice will also

be made available through publications in the *St. Louis Post-Dispatch* and *St. Louis American*

on at least one day per week for three consecutive weeks commencing on the Notice Date, and

published in one monthly edition of *Prison Legal News*, a non-profit magazine which is

distributed to incarcerated individuals in state and federal corrections facilities. The Claims

Administrator will also operate a toll-free number that will inform potential Class Members of

their options. The Parties believe the Short-Form and Long-Form Class Notice set forth in the

Settlement Agreement represents the best practicable notice in the context of the claims in

dispute. Copies of the proposed Postcard and Long Form Class Notice are appended to the Settlement Agreement as Exhibits 1A and 1B, respectively.

As for the content of the Notice, Rule 23(c)(2)(B) provides:

> The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the class member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Long-Form notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of putative settlement class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so; and warns of the binding effect of the settlement approval proceedings on people who remain in the Class. In addition, the Notice describes the terms of the proposed settlement, provides contact information for Class Counsel, and identifies the fee Class Counsel propose to request from the Court. The Notice also discloses the time and place of the Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing at the hearing. The contents of the Notice therefore satisfy all applicable requirements.

The Class Notice will advise Settlement Class members of their right to opt-out of the Settlement or to object to the Settlement. Settlement Agreement, Ex. 1. Settlement Class members may opt-out of the Settlement by mailing a written request to the Settlement Administrator by the Opt-Out Date. Settlement Agreement ¶ 77. Only Class Members who have submitted a Valid Claim may object to the Settlement. *Id.* ¶ 83. Settlement Class Members may object to the Settlement by filing with the Court and serving upon counsel for

the Parties a written notice of objection by the Objection Date. *Id.*  ¶ 84. Written objections must include the name, address, and telephone number of the person, as well as a detailed statement of each objection asserted, including the grounds for objection and reasons for appearing and being heard, together with any documents said person wishes to be considered in support of the objection. *Id.* Settlement Class Members or their attorneys intending to make an appearance at the Final Approval Hearing must, no later than fifteen days prior to the Final Approval Hearing, file with the Court and serve Class Counsel and Defendant's Counsel with a Notice of Intention to Appear. *Id.* ¶ 86.

In addition, a Claim Form will be available for individuals to request in paper format, or to complete online. A copy of the proposed Claim Form is appended as Exhibit 1C to the Settlement Agreement.

## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court (1) preliminarily approve the Parties' proposed class action Settlement; (2) provisionally certify pursuant to Rule 23(b)(3) the Class for settlement purposes only; (3) approve the proposed Notice and direct that it should issue; (4) set the date and time of a Final Approval Hearing; and (5) grant such other relief as the Court deems necessary and appropriate.

Dated:  October 22, 2025                    Respectfully submitted,

                                               **ARCHCITY DEFENDERS, INC.**

                                               By: */s/ Maureen Hanlon*
Blake A. Strode (MBE #68422 MO)
Jacki J. Langum (MBE #58881 MO)
Maureen G. V. Hanlon (MBE #70990 MO)
Nathaniel R. Carroll (MBE #67988 MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-248 ext. 1040

314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
mhanlon@archcitydefenders.org
ncarroll@archcitydefenders.org

**DLA PIPER LLP (US)**
Dennis Kiker (*Pro hac vice*)
2525 East Camelback Road, Ste. 1000
Phoenix, AZ 85016
480-606-5100
480-606-5101 (fax)
Dennis.kiker@us.dlapiper.com

Shannon Dudic (*Pro hac vice*)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067
310-595-3000
310-595-3300 (fax)
Shannon.dudic@us.dlapiper.com

*Attorneys for Plaintiffs and Proposed Class Counsel*